*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| *In re* GUANTANAMO DETAINEE CASES | ) Civil Action Nos.:  02-CV-828 (CKK),<br>) 02-CV-1130 (CKK), 04-CV-1136 (JDB),<br>) 04-CV-1137 (RMC), 04-CV-1144 (RWR),<br>) 04-CIV-1227 (RBW), 02-CV-0299 (CKK),<br>) 04-CV-2046 (CKK), 04-CV-2035 (GK),<br>) 04-CV-1254 (HKK), 04-CV-1194 (HKK)<br>)<br>) ORAL ARGUMENT REQUESTED |

## MOTION FOR LEAVE TO TAKE DISCOVERY AND FOR PRESERVATION ORDER

Petitioners move for leave to take limited discovery from respondents (the "government"). The government recently produced records in a Freedom of Information Act ("FOIA") suit that contain eyewitness accounts by agents of the Federal Bureau of Investigation of torture, mistreatment, and abuse of detainees now at Guantanamo by military interrogators that left some detainees "curl[ed] into a fetal position on the floor and crying in pain." The heavily redacted records also refer to protests and requests for investigations by FBI agents of this outrageous conduct, as well as disagreements between the FBI and the Defense Department over the continued imprisonment or release and repatriation of an undisclosed number of detainees. Petitioners should be allowed to discover this information in full and unredacted form, and share it with the Court, because it is vital to their claims that they are being unlawfully detained and suffering inhumane treatment.

Although the government has produced hundreds of pages of redacted documents about detainee torture, mistreatment, and abuse in the FOIA suit, its counsel has advised petitioners' counsel, in accordance with LCvR 7.1(m), that the government will oppose this motion even if, as petitioners offered, any classified or protected information is produced only at the secure facility established by the Court for reviewing such information. The reasons for this motion, including petitioners' request for a preservation order, follow.

**Statement**

Petitioners contend that they are imprisoned without any lawful basis. The government has sought to justify this imprisonment in "factual returns" that rely on statements allegedly made by petitioners and presented by the military to its Combatant Status Review Tribunals ("CSRTs"). However, many petitioners claim that they have been tortured and mistreated. At the hearing on the government's motion to dismiss these cases, government counsel represented that, although there were several instances in which military personnel acted contrary to Department of Defense policy and were disciplined or retrained, there had not been any torture of the detainees. Transcript of Proceedings, December 1, 2004, at 130-131.

Recently, however, plaintiffs in *ACLU v. Dep't of Defense*, Civil Action No. 04-4151 (AKH) (S.D.N.Y.) released FBI records they obtained under FOIA from the government that confirm petitioners' allegations. These records disclose that FBI agents have participated in the interview of at least 747 detainees at Guantanamo (*see* Detainee Interview (Abusive Interrogation Issues), undated, attached as Exhibit A), and that for several years the FBI's Behavioral Analysis Unit objected to and complained to the military commander at Guantanamo about interrogation tactics employed there by the military. The FBI records include eyewitness accounts by FBI agents of "extreme interrogation techniques"[1] used against detainees at Guantanamo. The identities of the detainees and most of the details about what the FBI agents saw, to whom they reported, and what was done as a result, were redacted from the records. But even the fragments that have been released contain shocking revelations.

Specifically, FBI agents observing interrogations of detainees at Guantanamo reported the following incidents:

---

[1]    *See* e-mail marked as "Detainees-3132," attached as Exhibit B.

- A female interrogator named Sergeant Lacey, renowned for leaving detainees "curling into a fetal position on the floor and crying in pain," ordered a soldier to place a curtain over the two-way mirror between the interrogation room she was using and an observation room while she grabbed the genitals of a detainee who was shackled with his hands cuffed to the waist and bent his thumbs back, causing him to grimace in pain and pull away and against the restraints.  *See* Letter from Deputy Assistant Director T.J. Harrington to General Donald J. Ryder, attached as Exhibit C.

- A detainee was gagged and much of his head wrapped with duct tape as a punishment for chanting the Koran.  When a Special FBI Agent asked how the duct tape would be removed, he got no response.  *Id*.

- Military personnel used dogs "in an aggressive manner" to intimidate a detainee. The same detainee was totally isolated for a period of three months in a cell constantly flooded with light, by the end of which the detainee was showing signs of "extreme psychological trauma," such as talking to non-existent people and crouching in the corner of his cell covered by a sheet for hours on end.  *Id*.

- Detainees in interrogation rooms were left chained "hand and foot in a fetal position on the floor, with no chair, food or water," for periods of 18, 24 hours or more, with the result that the detainees had "urinated or defecated on themselves."  *See* e-mail to Valerie Caproni dated August 2, 2004, attached as Exhibit D.

- A detainee was left in an unventilated interrogation room with the air conditioning turned off making the temperature "probably well over 100 degrees."  The detainee is described as being "almost unconscious on the floor, with a pile of hair next to him.  He had apparently been literally pulling his own hair out throughout the night."  *Id*.

- Another detainee was left in an interrogation room where the air conditioning was turned to a point where "the temperature was so cold in the room that the barefoot detainee was shaking with cold."  The FBI observer states "When I asked the MP's what was going on, I was told that interrogators from the day had ordered this treatment, and the detainee was not to be moved."  *Id*.

- A detainee was left in an interrogation room where "the temperature [was] unbearably hot" and "extremely loud rap music was being played in the room, and had been since the day before, with the detainee chained hand and foot in the fetal position on the tile floor."  *Id*.

The FBI agents who observed these incidents and others were greatly concerned by and generally denounced the use of such tactics.  One FBI observer described the interrogation techniques he witnessed being employed by military personnel, government contractors, and other individuals as "aggressive" and "personally very upsetting."  *See* e-mail dated July 12, 2004,

3

attached as Exhibit E.  Another FBI agent complained that "these tactics have produced no intelligence of a threat neutralization nature to date," they "have destroyed any chance of prosecuting this detainee," and that, "if the detainee were ever released or his story made public in any way" the FBI would be left "holding the bag," because the Defense Department interrogators often posed as FBI personnel.  *See* e-mail to Gary Bald dated December 5, 2003, attached as Exhibit F.

The FBI records include "repatriation" memoranda.  *See* Memorandum dated April 8, 2004, attached as Exhibit G.  These memoranda by the FBI, and presumably similar memoranda by the Defense Department and other agencies, make recommendations to an inter-agency "Transfer Review Board" regarding whether specific detainees should continue to be imprisoned or if their detention should be terminated and the detainees repatriated to their home countries. The identities of the detainees, the reasons behind the recommendations, and details of the results of the recommendations have been redacted from the FBI records.

**Argument**

1. In her Memorandum Opinion of August 13, 2004 for this Court in the *Al Odah* case ("Memo"), Judge Kollar-Kotelly held that, under *Harris v. Nelson*, 394 U.S. 286 (1969), the Court has discretion to allow petitioners in these habeas corpus proceedings to obtain discovery from the government.[2]  Memo at 2-3.  In *Harris v. Nelson* the Supreme Court upheld the power of the federal courts to allow discovery by habeas petitioners pursuant to the All Writs Act, 28 U.S.C. § 1651, and declared it to be "the inescapable obligation of the courts" to grant leave in appropriate

---

[2] Petitioners seek leave to conduct limited discovery only with respect to their habeas claims and only with respect to the issue of the torture, mistreatment, and abuse of detainees.  Petitioners preserve the right to make future habeas discovery requests concerning other issues.  Petitioners and the government have not conducted "meet and confer" sessions or devised discovery plans required by Fed.R.Civ.P. 26(a) regarding petitioners' non-habeas claims, and none of the judges have conducted pretrial conferences under Fed.R.Civ.P. 16(f) related to non-habeas discovery.  Petitioners reserve the right to make future habeas and non-habeas discovery requests.

circumstances. 394 U.S. at 299. The Supreme Court empowered the lower courts to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," to allow a habeas petitioner to "secur[e] facts where necessary to accomplish the objective of the proceedings * * * ." *Id*. at 299.

As Judge Kollar-Kotelly also noted, the holding of *Harris v. Nelson* has been codified with respect to state habeas corpus petitioners in Rule 6(a) of the Rules Governing § 2254 Cases. Memo at 2. Rule 6(a) states that "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." Although Rule 6(a) applies on its face to state habeas corpus proceedings, the federal courts have applied Rule 6(a) in federal habeas corpus proceedings brought under 28 U.S.C. § 2241, thus allowing discovery to the extent contemplated in the Federal Rules of Civil Procedure. *See, e.g., Bostic v. Carlson,* 884 F.2d 1267 (9th Cir. 1988); *Momennia v. Estrada,* 2003 WL 21318323 (N.D.Tex. 2003).

In addition, the Supreme Court in *Hamdi v. Rumsfeld,* 124 S. Ct. 2633, 2644 (2004), declared that "all agree that section 2241 and its companion provisions provide at least a skeletal outline of the procedures to be afforded a petitioner in federal habeas review . . . section 2246 allows the taking of evidence in habeas proceedings by deposition, affidavit, or interrogatories." *See also Ali v. Ashcroft*, Civ. Action No. 04-1258 (D.D.C. Dec. 16, 2004) (allowing discovery of jurisdictional facts).

Therefore, the Court should allow petitioners to secure, in full and unredacted form, factual information that FBI records indicate the government possesses so they may properly support their habeas corpus petitions and achieve the objective of these proceedings. Evidence of the severe mistreatment and abuse of detainees at Guantanamo speaks directly to petitioners' claims that they

are being held in violation of the Constitution, laws, and treaties of the United States and have been denied fundamental due process.  The government will attempt to justify petitioners' detention on the basis of statements made by petitioners during interrogations and already presented to the CSRTs.  Evidence that the statements presented to the CSRTs were the product of torture and therefore are intrinsically unreliable would refute one of the government's principal justifications for petitioners' continued imprisonment.

Moreover, in some instances the petitioner-detainee explicitly advised the CSRT that he had been tortured.  In one such case the CSRT apparently did not investigate the allegation but it did refer the matter to the CSRT Assistant Legal Advisor, who is "the OARDEC [Office for the Administrative Review of the Detention of Enemy Combatants] Liaison to the Criminal Investigation Task Force and JTF-GTMO [Joint Task Force – Guantanamo]." *See Habib v. Bush*, No. 02-CV-1130 (CKK), Factual Return at Enclosure (1), p. 3.  The government has indicated that investigations into such allegations are underway.  Presumably, these investigations have been undertaken in good faith and the records of their findings likely would bear directly on whether petitioners were tortured or mistreated to extract information or confessions.  Thus, these records are likely to assist the Court in determining whether petitioners' statements during interrogation justify their continued incarceration.  Similarly, any instructions given to the CSRT about how respond to allegations of torture or abuse are relevant to determine whether, and to what extent, the CSRT considered the reliability of the reported torture in its evaluation of the evidence against the petitioner-detainee.

Petitioners submit that the government's misconduct constitutes torture under the Department of Justice's current definition of that term.[3] However, for purposes of this discovery motion it does not matter whether the government's repulsive "extreme interrogation techniques" meet the Justice Department's present definition of torture or not. What matters is that the government has evidence that the military used such techniques forcibly to extract statements from petitioners at Guantanamo and elsewhere. Petitioners should be allowed to discover and share this evidence with the Court, in full and unredacted form, so that petitioners may be able to persuade the Court that it should not ratify the government's misconduct by allowing it to use the fruits of this misconduct to justify petitioners' continued imprisonment.

2. The discovery petitioners will seek consists primarily of: (i) interrogatories asking for the names of individuals who witnessed, received reports, or have investigated the torture, mistreatment, or abuse of the detainees now at Guantanamo while they were in the custody of the United States, and a list of all documents containing such information; (ii) requests to produce all documents relating to the torture, mistreatment, or abuse of detainees now at Guantanamo while they were in the custody of the United States, (iii) requests to produce all documents relating to recommendations by government agencies regarding the continued imprisonment or the release and repatriation of the detainees, and (iv) depositions of government officials who have information about the torture, mistreatment, or abuse of the detainees and recommendations by government agencies regarding their continued imprisonment or their release and repatriation.[4]

---

[3] On December 30, 2004, the Department of Justice released a memorandum, attached as Exhibit H, openly disavowing its earlier memorandum that defined torture very restrictively and broadening the range of conduct that constitutes torture and should be prosecuted criminally.

[4] Petitioners have attached to this motion, as Exhibit I, the petitioners' "Draft Requests to Produce Documents" to be served on the government should the Court grant petitioners leave.

7

The government already has produced in the FOIA suit many of the documents petitioners seek, albeit in heavily redacted form. Accordingly, petitioners' discovery should not be very burdensome, time-consuming, or expensive.

The government can make no issue of national security concerning this discovery. Petitioners' counsel have been given "secret" security clearances, and the Court Security Officer has informed them that these clearances can be upgraded to "top secret" with the stroke of a pen. To the extent the information petitioners seek leave to discover in full and unredacted form is classified or protected, the government may produce it at the secure facility established by the Court in these cases expressly for this purpose.

3. Finally, the Court should issue an order compelling the government to preserve the information petitioners seek to discover. This Court is empowered to enter such a preservation order when circumstances warrant it. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, n. 8 (2004); *United States v. Philip Morris USA, Inc.,* 327 F.Supp.2d 21, 23 (D.D.C. 2004). Circumstances warrant the entry of a preservation order when there is substantial concern that evidence may be damaged or destroyed, the party seeking the evidence may be irreparably harmed if the evidence is damaged or destroyed, and the burden on the party required to preserve the evidence is not great. *Capricorn Power Co. v. Siemens Westinghouse Power*, 220 F.R.D. 429, 433-434 (W.D. Pa. 2004).

Here, petitioners are legitimately and substantially concerned that the government will not maintain the very sensitive evidence it now possesses about the torture, mistreatment, and abuse of

the detainees now at Guantanamo.  The FBI records produced in the FOIA suit document efforts by the military to "cover up" evidence of the physical abuse of detainees.  *See* Urgent Report, dated June 25, 2004, attached as Exhibit D.  The loss of this evidence could irreparably harm petitioners by depriving them of proof that their present imprisonment is unlawful and thus depriving them of their liberty.  In contrast, it would be no burden at all on the government to preserve this evidence.  Therefore, the Court should enter an order requiring the government to preserve all information about the torture, mistreatment, and abuse of the detainees now at Guantanamo, as well as all information regarding recommendations to continue their imprisonment or release and repatriate them.

## CONCLUSION

For these reasons petitioners respectfully request that the Court grant them leave to take discovery from the government regarding torture, mistreatment, and abuse of detainees at the Guantanamo Bay detention facility and enter a preservation order requiring the government to maintain the information petitioners seek to discover.

Respectfully submitted,

*Counsel for Al Odah, et al.*
*Civil Action No. 02-CV-0828 (CKK)*

      /s/     Neil H. Koslowe
Thomas B. Wilner (D.C. Bar #173807)
Neil H. Koslowe (D.C. Bar #361792)
Kristine A. Huskey (D.C. Bar #462979)
Jared A. Goldstein (D.C. Bar #478572)
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile:  (202) 508-8100

9

*Counsel for Mamdouh Habib, et al.*
*Civil Action No. 02-CV-1130 (CKK)*

_____/s/_____
Joseph Margulies, to be admitted *pro hac vice*
Margulies & Richman, PLC
2520 Park Avenue, South
Minneapolis, MN 55404
Tel: (612) 872-4900
Fax: (612) 872-4967

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for O.K.*
*Civil Action No. 04-CV-1136 (JDB)*

_____/s/_____
Richard J. Wilson  (D.C. Bar #425026)
Muneer K. Ahmad (D.C. Bar #483131)
International Human Rights Law Clinic
American University – Washington College of Law
4801 Massachusetts Avenue, N.W.
Washington, D.C. 20016
Tel. (202) 274-4147
Fax: (202) 274-0659

*Counsel for Moazzam Begg, et al.*
*Civil Action No. 04-CV-1137 (RMC)*

_____/s/_____
John J. Gibbons
Lawrence S. Lustberg
Gitanjali S. Gutierrez
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel: 973-596-4493
Fax: 973-639-6243

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Shayana Kadidal
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for Jamil El-Banna, et al.*
*Civil Action No. 04-CV-01144 (RWR)*

_____/s/_____
George Brent Mickum IV (D.C. Bar No. 396142)
Douglas J. Behr (D.C. Bar No.163998)
Keller and Heckman LLP
1001 G Street, N.W., Suite 500W
Washington, D.C.  20001
Tel: (202) 434-4100
Fax: (202) 434-4646

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

Joseph Margulies, to be admitted *pro hac vice*
Margulies & Richman, PLC
2520 Park Avenue, South
Minneapolis, MN  55404
Tel: (612) 872-4900
Fax: (612) 872-4967

*Counsel for Isa Ali Abdulla Almurbati, et al.*
*Civil Action No.: 04-CV-1227 (RBW)*

_____/s/_____
Stewart D. Aaron
Joshua Colangelo-Bryan
Dorsey & Whitney LLP
250 Park Avenue
New York, NY  10177-1500
Tel: (212) 415-9200
Fax: (212) 953-7201

Ralph A. Taylor Jr. (D.C. Bar No. 225219)
Dorsey & Whitney LLP
Suite 400 South
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2533
Tel: (202) 442-3000
Fax: (202) 442-3199

*Counsel for Ahcene Zemiri*
*Civil Action No. 04-CV-2046 (CKK)*

_____/s/_____
John W. Lundquist (MN # 65286 )
James E. Dorsey (MN # 137893)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
Tel: (612) 492-7000
Fax: (612) 492-7077

Barbara Olshansky (NY0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for Jarallah Al Marri et al.*
*Civil Action No. 04-CV-2035 (GK)*

_____/s/_____
Lawrence S. Lustberg
Mark A. Berman
Jonathan L. Hafetz
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102
(973) 596-4500

*Counsel for Hicks*
*02-CV-00299 (CKK)*

_____/s/_____
Mark Goldman
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005-3823
202-639-6000 (tel)
202-639-6066 (fax)

*Counsel for Abdah, et al.,*
*Civil Action No. 04-CV-1254 (HKK)*

_____/s/_____
David H. Remes (D.C. Bar No. 370782)
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
202-662-5212 (tel)
202-778-5212 (fax)

Marc D. Falkoff, pro hac vice
Covington & Burling
1330 Avenue of the Americas
New York, NY 10019
212-841-1166 (tel)
646-441-9166 (fax)

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

***Counsel for Anam, et al.,***
***04-CV-1194 (HHK)***

_____/s/_____
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
212-610-6300 (tel)
212-610-6399 (fax)

14