*PREVIOUSLY FILED WITH CSO*
*AND CLEARED FOR PUBLIC FILING*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* GUANTANAMO DETAINEE CASES | ) Civil Action Nos.: 02-CV-828 (CKK),<br>) 02-CV-1130 (CKK), 04-CV-1136 (JDB),<br>) 04-CV-1137 (RMC), 04-CV-1144 (RWR),<br>) 04-CIV-1227 (RBW), 02-CV-0299 (CKK),<br>) 04-CV-2046 (CKK), 04-CV-2035 (GK),<br>) 04-CV-1254 (HKK), 04-CV-1194 (HKK)<br>)<br>) ORAL ARGUMENT REQUESTED |

**REPLY TO RESPONDENTS' OPPOSITION TO MOTION**
**FOR LEAVE TO TAKE DISCOVERY AND FOR PRESERVATION ORDER**

**Introduction and Summary**

Discovery is about truth-seeking. Petitioners allege that they have been tortured, severely mistreated, and abused throughout their detention, including during their interrogation by government agents. The "factual returns" filed by the government to show the lawfulness of petitioners' detention rely on statements by petitioners or other detainees obtained by interrogation. Nowhere in its 27-page Memorandum in Opposition to Petitioners' Motion for Leave to Take Discovery and for Preservation Order ("Opp.") does the government deny that it has documents and information regarding (i) the torture, severe mistreatment, and abuse of detainees during interrogations at Guantanamo and (ii) recommendations by government agencies that petitioners' detention should be terminated. If petitioners are granted leave to discover and share with the Court these documents and this information, the truth of their allegations and the unlawfulness of their detention – the core issue in these habeas cases – may be established. But instead of disclosing the truth the government seeks to hide it, arguing that discovery is "premature," "inappropriate per se," and without "good cause." Opp. at 6, 7, 13. Meanwhile petitioners, who have never been charged with wrongdoing or put on trial, begin their *third year* of imprisonment under conditions the worst criminals in U.S. jails do not endure.

The government's arguments have no merit.  First, discovery is not premature despite the pendency of the government's motion to dismiss.  *See* Opp. at 6-7.  Since November and throughout the pendency of the government's motion, petitioners' counsel have been developing facts by interviewing petitioners at Guantanamo.  The only purpose of this fact-gathering is to present evidence to this Court in support of petitioners' habeas claims.  Yet, far from preventing such fact gathering, the Court has assisted it by issuing orders governing access by petitioners' counsel to their clients and safeguarding classified and protected information.  Similarly, the government has not attempted to stop this process or to argue that it is premature because of the pendency of its motion to dismiss.  There is no reason to defer further fact-gathering by petitioners' counsel through limited and targeted discovery.

Second, the nature of these habeas cases does not render discovery inappropriate.  *See* Opp. at 7-13.  Contrary to the government's contention, petitioners are not calling upon the Court to intervene in or even review a quintessentially Executive or military decision.  They are calling upon the Court to follow the mandate of the Supreme Court in *Rasul v. Bush*, 124 S. Ct. 2686 (2004) and perform a quintessentially Judicial function, namely, determine under authority of the Great Writ whether petitioners are imprisoned without lawful basis.  The Supreme Court ruled in *Harris v. Nelson*, 394 U.S. 286 (1969) that discovery in aid of this Judicial function is not only appropriate but often essential.

Third, petitioners have demonstrated good cause for their motion to pursue discovery.  The government claims "the central issue in these habeas cases is whether there is some evidence to support the Military's determinations of enemy combatant status."  Opp. at 14-15.  By framing the central issue this way, the government argues that evidence of torture, severe mistreatment, and abuse of detainees would be relevant only "if all the stars in the sky lined up just so."  *Id*. at 17.

But the Supreme Court in *Rasul* has framed the central issue in these habeas cases differently. That issue is whether petitioners, who allege that, "although they have engaged neither in combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing," are in "'custody in violation of the Constitution or laws or treaties of the United States.'" 124 S. Ct. at 2698 n. 15. Evidence that the government has used torture, severe mistreatment, and abuse to extract statements by petitioners and other detainees upon which it relies to justify petitioners' imprisonment and that some government agencies have recommended that petitioners' detention be terminated goes to the heart of the central issue identified by the Supreme Court in these habeas cases. The government's concerns about the potential overbreadth or burdensomeness of petitioners' proposed discovery are speculative and in any event can be handled by the normal discovery processes of negotiation and Court supervision.

Finally, petitioners have made a sufficient showing for a preservation order. Internal government documents suggest that a "cover up" of U.S. torture and severe mistreatment already is in progress. Petitioners, the Court, and the American people need an assurance that evidence of such torture and severe mistreatment will not disappear before petitioners can obtain it.

## Argument

**A. Petitioners' Motion for Discovery is Not Premature**

The government argues that it is premature for the Court to consider whether petitioners should be granted leave to take discovery because its motion to dismiss these habeas cases, which raises "core separation-of-powers concerns about judicial interference with the Executive's exercise of war powers," is pending. Opp. at 6. This argument has no merit.

3

The Court has allowed fact-gathering by petitioners to go forward for three months notwithstanding the pendency of the government's motion to dismiss. Indeed, after accepting the parties' written submissions and hearing oral argument the Court hammered out a detailed protective order and procedures for counsel access to petitioners at Guantanamo for the sole purpose of enabling petitioners' counsel to develop facts that may be presented to the Court in support of petitioners' habeas claims. This factual development is going on right now, with the approval and participation of the government, even though the government's legal position is that it is irrelevant. There is no reason why additional factual development through limited and targeted discovery should not proceed as well.

Relying on *Kremens v. Barley*, 431 U.S. 119, 128 (1997), the government argues that the Court should deny petitioners leave to take discovery to "avoid[] premature and potentially unnecessary decisions of constitutional questions 'of great gravity and delicacy.'" Opp. at 6. But *Kremens* does not deal with discovery and is inapposite. *Kremens* was a class action brought on behalf of children "voluntarily" committed to mental hospitals and like institutions against their will by their parents, an issue which raised a plethora of constitutional issues. Because a law was passed rendering the action moot for all of the children 14 years of age or older, the Supreme Court held that the case should be remanded to district court for the reconsideration of class status, the exclusion of persons whose claims had been mooted, and the substitution of class representatives with live claims before the major constitutional issues were addressed.

In contrast, petitioners' motion for leave to take discovery does not present "constitutional questions of great gravity and delicacy." It does not present constitutional questions at all. The Supreme Court in *Hamdi v. Rumsfeld,* 124 S. Ct. 2633 (2004) rejected the government's argument that the Executive has absolute power to detain persons under its own conditions and that no

4

factual inquiry can be made into its actions. It explicitly mandated inquiry into the facts "by deposition, affidavit, or interrogatories," and the opportunity to rebut those facts with evidence. *Hamdi*, 124 S.Ct. at 2644. *See* 28 U.S.C. § 1651 (the "All Writs Act"), 29 U.S.C. § 2246, Rule 6(a) of the Rules Governing § 2254 Cases, and the case law interpreting and applying these statutes. The only issue presented by petitioners' motion is what sort of discovery should be allowed pursuant to the statutory rules at the present stage of these cases. *Kremens* does not speak to that issue at all.

The government mistakenly relies on *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987) and *Transunion Corp v. Pepsico*, 811 F.2d 127 (2d Cir. 1987) to support the proposition that discovery should not be authorized until all other preliminary motions are determined. Opp. at 6 n. 6. However, the courts of appeals in those cases merely held that the trial courts did not abuse their discretion in staying discovery under the particular facts before them. In neither of these cases did the courts of appeals hold that trial courts may not allow discovery to proceed during the pendency of a motion to dismiss.

Here, discovery of government documents and information regarding the torture, severe mistreatment, and abuse of detainees now at Guantanamo should be permitted now rather than later. The Supreme Court has made it clear that habeas corpus proceedings should be expedited and adjudicated with all possible "speed, flexibility, and simplicity." *Hensley v. Municipal Court,* 411 U.S. 345, 350 (1973)**.** Because petitioners' liberty is at stake, discovery is not premature.[1]

---

[1] Even if the Court believes that discovery should not commence until it resolves the government's motion to dismiss the Court should adjudicate petitioners' motion now. Such an adjudication will avoid further delay if the Court denies the government's motion to dismiss and will not prejudice either party.

5

### B. Discovery is Appropriate in These Habeas Corpus Cases

Contrary to the government's assertion that discovery is "inappropriate per se" in these habeas corpus cases, Opp. at 7, petitioners have a right to investigate and present evidence to this Court contesting the lawfulness of their detention. The government's assertion that discovery is inappropriate is grounded on the false premise that "petitioners ask the Court to review the United States Military's determination that they are enemy combatants who must be detained pursuant to the President's war powers," that such determinations are "a quintessentially military function" committed "to the Executive Branch," and that "[i]n this context, discovery is wholly improper because it inserts the Judiciary further into the province of the Executive than is constitutionally permissible and thereby violates core separation-of-powers principles." Opp. at 7-8. Petitioners are not asking this Court to review military determinations or to invade the province of the Executive. Petitioners are asking the Court simply to follow the mandate of the Supreme Court in *Rasul*, which is "to consider in the first instance the merits of petitioners' claims." *Rasul*, 124 S. Ct. at 2699. This is quintessentially a Judicial function. The Court's allowance for and supervision of discovery is an appropriate exercise of this Judicial function. *Harris v. Nelson*, 394 U.S. 286 (1969).

The government persists in ignoring the Supreme Court's conclusion in *Hamdi*, 124 S.Ct. at 2648, that aliens detained as enemy combatants have the right to petition for habeas corpus and must be given a fair and meaningful opportunity to present evidence and rebut the government's factual assertions purportedly justifying their detention. It contends that "there should be no evidentiary hearing in this Court," and that "it is not the Court's role to develop or weigh in the first instance the mix of facts that tend to show or not to show " that petitioners are lawfully detained. Opp. at 8-9.

6

But the plurality in *Hamdi* expressly rejected this contention. It observed that, "even in cases in which the detention of enemy combatants is legally authorized, there remains the question of what process is constitutionally due;" a question it resolved by holding that a detainee must receive a fair hearing, may present evidence, and may challenge the government's evidence before a neutral decision maker. *Hamdi*, 124 S.Ct. at 2643, 2647. The Court said that "any process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the alleged combatant to demonstrate otherwise falls constitutionally short." *Id*. at 2651. It held: "[W]e necessarily reject the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts." *Id*. at 2650**.**

None of the other cases upon which the government relies in opposing discovery is remotely relevant because not one involves the discovery issues presented here. *See* Opp. at 9-11. Discovery was not at issue in *Ex Parte Quirin,* 317 U.S. 1 (1942), where petitioners conceded the relevant facts that they were German spies who had entered the U.S. by stealth, carrying explosives, with the intent to sabotage the war effort, nor was it at issue in *Application of Yamashita*, 327 U.S. 1 (1946) or *Johnson v. Eisentrager*, 339 U.S. 763 (1950). *Milton v. Wainwright*, 407 U.S. 371 (1972) concerned the courts' proper role in a habeas proceeding where petitioner has already been convicted in state court.

In *Burns v. Wilson*, 346 U.S. 137 (1953), the Court determined the proper standard to apply in a habeas case concerning members of the armed forces who have been tried and convicted by a court martial. In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and *United States ex rel. Vajtauer v. Comm'r*, 273 U.S. 103 (1927), the Supreme Court determined that the 'some evidence' standard could be applied in the context of a prison disciplinary hearing (where the defendant had already been fully tried and convicted) and a deportation hearing (where the person was not going

7

to be indefinitely detained but rather denied the right to remain in this country) respectively. As noted by the *Hamdi* Court, while the 'some evidence' standard may be lawfully applied when a court is examining an administrative record developed after an adversarial proceedings, it has no place in habeas cases such as the present ones. *See Hamdi*, 124 S.Ct. at 2651.

All the administrative cases cited by the government are equally inapplicable to petitioners' motion for leave to take discovery. These cases, *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971), *Florida Power & Light Co. v. Lorien,* 470 U.S. 729 (1985), *United States v. Morgan*, 313 U.S. 409 (1941), *Commercial Drapery Contractors, Inc. v. United States,* 133 F.3d 1 (D.C. Cir. 1998), *Sierra Club v. Costle*, 657 F.2d 298 (D.C.Cir. 1981) and *Neuma Corp. v. Small Bus. Admin.*, 713 F.Supp. 1 (D.D.C. 1989) concern the proper standard of review for an agency action based on an administrative record. In contrast, as noted previously, petitioners' habeas cases are before this Court "to consider in the first instance the merits of petitioners' claims." *Rasul*, 124 S. Ct. at 2699.

The government gives the back of its hand to the decision that *is* directly relevant to petitioners' motion, namely, this Court's decision in *Al Odah v. United States*, 329 F.Supp.2d 106 (D.D.C. 2004). Although the Court in *Al Odah* granted the government's motion to quash a notice of deposition served by petitioners several months ago on procedural grounds, it rejected the same arguments the government is advancing now about the inappropriateness of discovery in these habeas cases. Relying extensively on *Harris v. Nelson*, the Court noted that it is "entitled to permit discovery at any point in the proceedings" and that the Supreme Court envisioned discovery in habeas actions "in the context of factual development to inform the district court's ultimate determination on the merits of the habeas petition." 329 F.Supp.2d at 108.

The government claims that *Harris v. Nelson* stands for the proposition that "the norm in habeas cases is that discovery is not permitted." Opp. at 10 n. 9. That blatantly misstates the Supreme Court's conclusion in that case. In *Harris v. Nelson* the Supreme Court proclaimed that it is the "inescapable obligation of the courts" to allow discovery by habeas petitioners in appropriate circumstances. 394 U.S. at 299. The Supreme Court further mandated that "taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, [a] habeas corpus proceeding must not be allowed to founder in a 'procedural morass'" *Id.* at 291-292. Continuing, the Supreme Court explained that, although the Federal Rules of Civil Procedure and the discovery provisions authorized by those Rules do not apply "completely and automatically" to habeas proceedings, this "is not to say that there is no way in which a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of hearing, of the facts relevant to disposition of a habeas corpus petition . . . [T]he courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," to allow habeas petitioners to "secur[e] facts where necessary to accomplish the objective of the proceedings***." *Id*. at 298-99.

Thus, discovery is appropriate in these habeas cases and the Court is empowered to allow the limited discovery petitioners seek. *See Ali v. Ashcroft,* Civil Action No. 04-1258 (JB) (D.D.C. 2004) (allowing discovery of jurisdictional facts prior to resolution of motion to dismiss).

**C. Petitioners' Motion is Supported by Good Cause**

In a last ditch effort to defeat discovery, the government claims that petitioners "seek to engage in a fishing expedition in hopes of finding lurid tales that they can spin to paint the United States' military detention operations in a negative light, but that have zero relevance" to the issues

in these habeas cases. Opp. at 14. The government trivializes the heavily redacted reports by FBI agents that have been produced in *ACLU v. Dep't of Defense*, Civil Action No. 94-CV-4151 (AKH) (S.D.N.Y.) which vividly describe torture and severe mistreatment of detainees during interrogations at Guantanamo, suggesting that they were written by a "tiny minority" of 26 FBI agents in a "tiny minority" of cases. *Id*. at 16. Curiously, the government is silent about the other heavily redacted reports by FBI agents referring to recommendations that the imprisonment of an unknown number of unidentified detainees at Guantanamo be terminated and they be repatriated to their home countries.

But petitioners have good cause to discover and share with the Court documents and information in the government's possession about the torture, severe mistreatment, and abuse of detainees now at Guantanamo during interrogation by government agents and about recommendations for the termination of their detention because such documents and information go to the very core of petitioners' habeas claims. The government's effort to belittle the significance of these documents and this information will not succeed. Statements extracted by torture from even a single detainee during an interrogation may relate to or have ramifications for the lawfulness of the detention of dozens or even hundreds of others.

This morning's newspapers disclose that, on the basis of the documents in the government's possession, "[t]he Justice Department has opened a wide-ranging investigation into reports from the Federal Bureau of Investigation about the military's use of coercive and abusive tactics against prisoners held in American custody at Guantanamo Bay and in Iraq." *Justice Dep't Opens Inquiry Into Abuse of U.S. Detainees*, N.Y. Times at A14 (January 14, 2005). The investigation is not going to be limited to the conduct of military interrogatories but will include the conduct of FBI agents, too, during interrogations of detainees at Guantanamo. Anyone who

10

knows anything about how the government works knows it is absolutely astonishing that 26 FBI agents would have gone on the record and signed their names to reports making such serious accusations against fellow government officials. Petitioners and this Court have a greater need for these reports than do government investigators.

The government also speculates about a parade of horribles that will follow the grant of petitioners' motion. Opp. at 17-23. It complains it cannot figure out what discovery petitioners seek, although it is certain that it will be overbroad and burdensome. *Id*. But petitioners have precisely defined the limited scope of the discovery it seeks: (i) documents and information about the torture, severe mistreatment, and abuse of detainees now at Guantanamo during interrogation by government officials and (ii) documents and information regarding recommendations that the detainees' imprisonment be terminated and they be repatriated to their home countries. Petitioners furnished the Court and the government with seven sample document requests to comply with the spirit of Rule 6 of the Rules Governing § 2254 Cases, not to confuse the government. Any potential issues concerning overbreadth and burdensomeness can be handled by the parties and the Court in the usual manner, through negotiations, Court supervision, and, if necessary, protective orders. Petitioners motion should not be denied because the government is afraid of discovery.

### D. The Court Should Issue a Preservation Order

A preservation order is appropriate because there is reason to doubt the government will maintain the documents and information petitioners seek to discover. The government argues that it is entitled to a presumption that it will "act properly and according to law." Opp. at 25 (citing *Federal Communications Comm'n v. Schreiber*, 381 U.S. 279 (1965). Although such a presumption usually is appropriate, that is so only when there is no indication that the evidence or material is at risk. In all the cases cited by petition in favor of such a presumption, *Shreiber*,

11

*Hester v. Bayer Corp.*, 206 F.R.D. 683 (M.D.Ala. 2001), and *Pepsi-Cola Bottling Co. of Olean v, Cargill, Inc.,* 1995 WL 783610 (D.Minn. 1995), the courts denied the requested order because the movant had made no showing that the material involved was at risk.  The *Cargill* court also noted that in the context of most types of civil litigation, such as commercial litigation, consequences such as the application of the "spoliation of evidence" doctrine or similar doctrines generally are compelling enough deterrents.

Here, however, petitioners have demonstrated there is a genuine risk of destruction.[2] Although the FBI "Urgent Report" reproduced as Exhibit J to petitioners' motion, which states that certain persons where engaging in a "cover-up" of the abuses and apparently discusses at length the specific cover-up efforts, refers to abuses in Iraq, petitioners contend that if government or military personnel were engaging in a cover-up of systematic abuse or torture in one or more facilities, it is likely that such cover-up efforts were being made elsewhere as well.  Moreover, because the government argues (Opp. at 22) that the requested documents are irrelevant to petitioners' habeas claims, it is apparent the government would not feel compelled to preserve such materials and evidence under Rule 26 of the Federal Rules of Civil Procedures.

---

[2]     The government argues that petitioners must meet the requirements for a preliminary injunction to obtain a preservation order.  Opp. at 26.  That argument is contrary to the majority viewpoint in the courts.  As the Court of Federal Claims explained in *Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133 (Fed. Cl. 2004): "A document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery. *See Mercer v. Magnant,* 40 F.3d 893, 896 (7th Cir. 1994). Although such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), the decisional law shows that, in issuing them, courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. *See Reich v. Muth,* 1993 WL 741997, at *1-2 (E.D.Va. July 28, 1993); *Fed. Election Comm'n v. GOPAC, Inc.,* 897 F.Supp. 615, 617-18 (D.D.C. 1995); *see also Casey v. Planned Parenthood of Southeastern Pa.,* 14 F.3d 848, 854 (3d Cir. 1994) (distinguishing such pretrial orders from injunctions for appeal purposes); *Matter of Establishment Inspection of Skil Corp.,* 846 F.2d 1127, 1129 (7th Cir. 1988) (same).  In the court's view, such an approach [requiring the movant to meet the burden normally required for an injunction] would be decidedly to put the cart before the horse."

Finally, in the context of a habeas petition such as this one, traditional consequences or penalties for spoilation of evidence or the like may not be sufficient. These issues are very sensitive, and the revelation of more torture, severe mistreatment, and abuse of detainees at Guantanamo may cause severe damage to the image of the United States quite apart from these habeas proceedings. In these circumstances, petitioners' request for a preservation order is warranted and should be granted.

## CONCLUSION

For these reasons and the reasons given in petitioners' opening motion papers, petitioners' motion for leave to take discovery and for a preservation order should be granted.

Respectfully submitted,

*Counsel for Al Odah, et al.*
*Civil Action No. 02-CV-0828 (CKK)*

      /s/    Neil H. Koslowe
Thomas B. Wilner (D.C. Bar #173807)
Neil H. Koslowe (D.C. Bar #361792)
Kristine A. Huskey (D.C. Bar #462979)
Jared A. Goldstein (D.C. Bar #478572)
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100

*Counsel for Mamdouh Habib, et al.*
*Civil Action No. 02-CV-1130 (CKK)*

    /s/
Joseph Margulies, to be admitted *pro hac vice*
Margulies & Richman, PLC
2520 Park Avenue, South
Minneapolis, MN  55404
Tel: (612) 872-4900
Fax: (612) 872-4967

13

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for O.K.*
*Civil Action No. 04-CV-1136 (JDB)*

_____/s/_____
Richard J. Wilson  (D.C. Bar #425026)
Muneer K. Ahmad (D.C. Bar #483131)
International Human Rights Law Clinic
American University – Washington College of Law
4801 Massachusetts Avenue, N.W.
Washington, D.C. 20016
Tel. (202) 274-4147
Fax: (202) 274-0659

*Counsel for Moazzam Begg, et al.*
*Civil Action No. 04-CV-1137 (RMC)*

_____/s/_____
John J. Gibbons
Lawrence S. Lustberg
Gitanjali S. Gutierrez
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel: 973-596-4493
Fax: 973-639-6243

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Shayana Kadidal
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

14

*Counsel for Jamil El-Banna, et al.*
*Civil Action No. 04-CV-01144 (RWR)*

_____/s/_____
George Brent Mickum IV (D.C. Bar No. 396142)
Douglas J. Behr (D.C. Bar No.163998)
Keller and Heckman LLP
1001 G Street, N.W., Suite 500W
Washington, D.C.  20001
Tel: (202) 434-4100
Fax: (202) 434-4646

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

Joseph Margulies, to be admitted *pro hac vice*
Margulies & Richman, PLC
2520 Park Avenue, South
Minneapolis, MN  55404
Tel: (612) 872-4900
Fax: (612) 872-4967

*Counsel for Isa Ali Abdulla Almurbati, et al.*
*Civil Action No.:  04-CV-1227 (RBW)*

_____/s/_____
Stewart D. Aaron
Joshua Colangelo-Bryan
Dorsey & Whitney LLP
250 Park Avenue
New York, NY  10177-1500
Tel: (212) 415-9200
Fax: (212) 953-7201

Ralph A. Taylor Jr. (D.C. Bar No. 225219)
Dorsey & Whitney LLP
Suite 400 South
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2533
Tel: (202) 442-3000
Fax: (202) 442-3199

*Counsel for Ahcene Zemiri*
*Civil Action No. 04-CV-2046 (CKK)*

_____/s/_____
John W. Lundquist (MN # 65286 )
James E. Dorsey (MN # 137893)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
Tel: (612) 492-7000
Fax: (612) 492-7077

Barbara Olshansky (NY0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for Jarallah Al Marri et al.*
*Civil Action No. 04-CV-2035 (GK)*

_____/s/_____
Lawrence S. Lustberg
Mark A. Berman
Jonathan L. Hafetz
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ  07102
(973) 596-4500

*Counsel for Hicks*
*02-CV-00299 (CKK)*

_____/s/_____
Mark Goldman
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005-3823
202-639-6000 (tel)
202-639-6066 (fax)

*Counsel for Abdah, et al.,*
*Civil Action No. 04-CV-1254 (HKK)*

_____/s/_____
David H. Remes (D.C. Bar No. 370782)
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
202-662-5212 (tel)
202-778-5212 (fax)

Marc D. Falkoff, pro hac vice
Covington & Burling
1330 Avenue of the Americas
New York, NY 10019
212-841-1166 (tel)
646-441-9166 (fax)

Barbara Olshansky, to be admitted *pro hac vice*
Jeffrey E. Fogel, to be admitted *pro hac vice*
Michael Ratner, to be admitted *pro hac vice*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Counsel for Anam, et al.,*
*04-CV-1194 (HHK)*

_____/s/_____
Pamela Rogers Chepiga
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 610-6300
Fax: (212) 610-6399