IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>PETITIONERS SEEKING<br>HABEAS CORPUS RELIEF<br>IN RELATION TO<br>PRIOR DETENTION AT<br>GUANTANAMO BAY | ) Misc. No. 08-mc-444 (TFH)<br>)<br>) Civil Action Nos.<br>)<br>) 02-cv-1130, 04-cv-1135, 04-cv-1144, 04-cv-1194, 04-cv-1227,<br>) 04-cv-1254, 05-cv-0023, 05-cv-0345, 05-cv-0490, 05-cv-0520,<br>) 05-cv-0526, 05-cv-0584, 05-cv-0586, 05-cv-0640, 05-cv-0665,<br>) 05-cv-0714, 05-cv-0723, 05-cv-0764, 05-cv-0765, 05-cv-0878,<br>) 05-cv-0833, 05-cv-0887, 05-cv-0888, 05-cv-0891, 05-cv-0998,<br>) 05-cv-1001, 05-cv-1009, 05-cv-1124, 05-cv-1237, 05-cv-1242,<br>) 05-cv-1243, 05-cv-1246, 05-cv-1311, 05-cv-1487, 05-cv-1493,<br>) 05-cv-1505, 05-cv-1509, 05-cv-1635, 05-cv-1667, 05-cv-1678,<br>) 05-cv-1714, 05-cv-1779, 05-cv-1806, 05-cv-1864, 05-cv-1894,<br>) 05-cv-2029, 05-cv-2104, 05-cv-2197, 05-cv-2216, 05-cv-2336,<br>) 05-cv-2367, 05-cv-2369, 05-cv-2384, 05-cv-2385, 05-cv-2386,<br>) 05-cv-2452, 05-cv-2458, 05-cv-2466, 05-cv-2479, 06-cv-1675,<br>) 06-cv-1677, 06-cv-1678, 06-cv-1679, 06-cv-1683, 06-cv-1687,<br>) 06-cv-1763, 06-cv-1768, 06-cv-1769, 08-cv-0864, 08-cv-0987,<br>) 08-cv-1104, 08-cv-1185, 08-cv-1221, 08-cv-1223, 08-cv-1628,<br>08-cv-1733 |

**GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING PETITIONERS
TRANSFERRED OR RELEASED FROM GUANTANAMO BAY**

**PRELIMINARY STATEMENT**

Respondents respectfully submit this supplemental brief to address two questions posed by the Court's Order of October 9, 2009 in light the D.C. Circuit's recent opinions relating to the habeas rights of Guantanamo Bay detainees: (1) whether petitioners' habeas rights are statutory based; and (2) if so, whether that affects arguments previously advanced by the Government in support of its position that petitioners' transfer and release from U.S. custody in Guantanamo Bay to a foreign government mooted their habeas petitions.

As discussed below, the D.C. Circuit in *Kiyemba v. Obama*, 561 F.3d 509, 512, n. 2 (D.C. Cir. 2009) (*Kiyemba II*), has answered the first question in the affirmative. Accordingly, the law

of the Circuit appears to be contrary to respondents' prior argument that petitioners' habeas rights are based on the Constitution only, and more specifically, that the "collateral consequences" doctrine developed in interpreting the federal habeas statute is inapplicable to these habeas proceedings.  The majority of respondents' prior arguments, however, remain unaffected because those arguments assumed the applicability of the "collateral consequences" doctrine and demonstrated that petitioners cannot show under the doctrine that they continue to suffer concrete injuries of a type redressable by this Court.  In fact, *Kiyemba II* now fully confirms respondents' argument, recognizing that petitioners are entitled to no relief beyond what they have already received, *i.e.*, termination of U.S. custody.  Petitioners are not entitled to maintain their habeas cases to attempt to address matters that are the result of discretionary acts by foreign governments or third parties.  In sum, regardless whether petitioners' habeas rights are characterized as based in statute or the Constitution, the habeas petitions at issue no longer present a case or controversy under Article III, § 2 of the Constitution, and should be dismissed.

## ARGUMENT

### THE TRANSFERRED PETITIONERS' HABEAS PETITIONS ARE MOOT EVEN IF PETITIONERS' RIGHT TO HABEAS RELIEF IS BASED ON THE FEDERAL HABEAS STATUTE

In their prior briefing (*see* dkt. Nos. 88 and 92), Respondents demonstrated that petitioners who have been transferred to a foreign government have already procured all the remedy that this Court could provide because the United States has completely relinquished all legal and physical custody over them.  In response to petitioners' claim that they continue to suffer "collateral consequences" of their prior detention at Guantanamo Bay, respondents further argued that the "collateral consequences" doctrine – developed to determine whether a habeas

petitioner is "in custody" within the meaning of the federal habeas statute despite his release from actual custody – is inapplicable here because "[a]fter *Boumediene*, it is clear that the transferred petitioners' right to habeas corpus, if any, is based on the Constitution only."[1]  Dkt. No. 88 at 4.  The Court of Appeals determined in *Kiyemba II*, however, that *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), in invalidating the jurisdiction-limiting provision of 28 U.S.C. § 2241(e)(1), "necessarily restored the status quo ante, in which detainees at Guantanamo had the right to petition for habeas under § 2241." *Kiyemba II*, 561 F.3d at 512 (citing *Rasul v. Bush*, 542 U.S. 466 (2004)).  Respondents recognize that this holding is the law of the Circuit and is binding on this Court.

That petitioners' right to habeas relief is now statute-based, however, does not change respondents' prior argument that this Court can give petitioners no further relief beyond what petitioners have already obtained – namely termination of U.S. custody.  As respondents have demonstrated in their prior briefing, in order to invoke the "collateral consequences" doctrine, petitioners bear the burden of showing that they continue to suffer concrete injuries of a type redressable by this Court – *i.e.*, consequences imposed by operation of law based on the prior detention.  Yet, the injuries of which petitioners complain – such as detention, prosecution, or other restriction on their freedom by a foreign sovereign or injuries to their reputation – are the results of the discretionary acts of a foreign government or third parties beyond the control of this Court.  The Government's declarations demonstrated that although the United States engages in a

---

[1] Respondents' argument was based in part on Justice Souter's observation that "[the MCA] eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all." *Bouemdiene*, 129 S. Ct. at 2278 (Souter, J., concurring).

diplomatic dialogue with the receiving government prior to the transfer to ascertain what security measures that government is likely to take to ensure that the detainee will not pose a continuing threat to the United States or its allies, *see* Declaration of Ambassador Clint Williamson, ¶ 6; Declaration of Deputy Assistant Secretary of Defense Sandra Hodgkinson Hodgkinson ¶ 5, "[i]n all cases of transfer, the detainee is transferred entirely to the custody and control of the other government." Hodgkinson Decl., ¶ 5.  In other words, "once transferred, [the detainee] is no longer in the custody and control of the United States," and if a receiving government imposed any restrictions on the transferred detainee, it did so "based on the determinations and laws of [that] government." *Id.*

The Court of Appeals in *Kiyemba II* fully credited these Government declarations.[2]  In rejecting certain Guantanamo detainees' attempt to obtain advance notice of transfer in order to have the opportunity to seek to enjoin the transfer based on the expectation that a recipient country would detain or prosecute them, the Court of Appeals observed that:

> After their release from the custody of the United States, any prosecution or detention the petitioners might face would be effected "by the foreign government pursuant to its own laws and not on behalf of the United States."  Decl. of Matthew C. Waxman, Deputy Assistant Secretary of Defense for Detainee Affairs ¶ 5, June 2, 2005.

*Kiyemba II*, 561 F.3d at 515.  The Court of Appeals further noted that:

> In view of the Government's sworn declarations, and of the detainees' failure to present anything that contradicts them, we

---

[2] The Hodgkinson and Williamson declarations were prepared for use in the Guantanamo habeas litigation and are the updated versions of the Waxman and Prosper declarations credited by the Court of Appeals in *Kiyemba II*. While Ms. Hodgkinson currently serves in a different position in the Department of Defense and Ambassador Williamson has recently left office, the transfer policies and practices set forth in their declarations remain in effect.

> have no reason to think the transfer process may be a ruse— and a fraud on the court—designed to maintain control over the detainees beyond the reach of the writ.

*Id.* at 515 n. 7.

Importantly, *Kiyemba II* also confirms that this Court has no power to redress the transferred petitioners' alleged injuries at the hands of a recipient country, as the Court of Appeals noted that "[i]t is a longstanding principle of our jurisprudence that '[t]he jurisdiction of [a] nation, within its own territory, is necessarily exclusive and absolute.'" *Id.* at 515 (quoting *Schooner Exch. v. McFadden*, 11 U.S. (7 Cranch) 116, 136 3 L.Ed. 287 (1812)). The Court of Appeals further reasoned, based on the Supreme Court's decision in *Munaf v. Geren*, that "the 'same principles of comity and respect for foreign sovereigns that preclude judicial scrutiny of foreign convictions necessarily render invalid attempts to shield citizens from foreign prosecution.'" *Kiyemba II*, 561 F.3d at 515 (quoting *Munaf*, 128 S. Ct. 2207, 2225 (2008)). The Court of Appeals thus concluded that *Munaf* "bars a court from issuing a writ of habeas corpus to shield a detainee from prosecution and detention by another sovereign according to its laws;" indeed, [j]udicial inquiry into a recipient country's basis or procedures for prosecuting or detaining a transferee from Guantanamo" would implicate "norms of international comity" and offend "separation of powers principles." *Id.*

If a habeas court can grant no relief based on a Guantanamo detainee's *expectation* that a recipient country will detain or prosecute him, then it necessarily follows that this Court can grant no relief to petitioners who are no longer in the legal or physical custody of the United States and whose disposition is entirely within the discretion of a foreign sovereign under the domestic laws of that country. The holding of *Kiyemba II*, thus, removes any doubt that the

5

transferred petitioners' habeas petitions are moot.  Indeed, Judge Richard L. Leon recently so held in habeas cases involving Guantanamo detainees who have been transferred to a foreign government.  *Rumi v. Bush*, 06-cv-618 (RJL) (dkt. No. 81); *Al Khaiy v. Bush*, 05-cv-1239 (RJL) (dkt. No. 66); *Mammar v. Bush*, 05-cv-573 (RJL) (dkt. No. 96).

## CONCLUSION

For the foregoing reasons and the reasons set forth in Respondents' prior briefing (dkt. Nos. 88 and 92), this Court should dismiss the transferred petitioners' habeas petitions as moot.

Dated: November 10, 2009                    Respectfully submitted,

TONY WEST
Assistant Attorney General

JOSEPH H. HUNT
Branch Director

TERRY M. HENRY
JAMES J. GILLIGAN
Assistant Branch Directors

      /s/ *Jean Lin*
ANDREW I. WARDEN
JEAN LIN
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-3716

Attorneys for Respondents