# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KHALID AHMED QASSIM,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **No. 04-cv-01194 (TFH)** |
| | ) | |
| **DONALD J. TRUMP,** *et al.,* | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## PETITIONER'S PREHEARING BRIEF

Petitioner Khalid Ahmed Qassim is in his 16th year of detention at the Guantánamo Bay prison camp.  He has never been charged with any crime and is being detained without legal or factual justification.  Moreover, Qassim has been denied any adequate means to contest his detention in our courts.

Although the Supreme Court ruled almost ten years ago in *Boumediene v. Bush*, 553 U.S. 723 (2008), that the detainees at Guantánamo have a constitutional right to a meaningful opportunity to contest their detention through the writ of habeas corpus, panels of the D.C. Circuit subsequently entered a series of decisions that eviscerated that right and shut down habeas corpus as an effective remedy for Qassim and the others still detained at Guantánamo. Although the Guantánamo detainees may have a procedural right to a habeas corpus hearing, those panel decisions held that, they have no substantive right to Due Process of Law, and that presumptions may be established against them in favor of the government's evidence.

Those D.C. Circuit panel decisions are inconsistent with *Boumediene* and contrary to constitutional law.  By wrongly denying Qassim the right to Due Process of Law, these decisions deprive him of the ability even to view the government's evidence and effectively rebut the

presumptions against him. Following the dictates of *Boumediene*, this Court should disregard those decisions and grant petitioner the right to Due Process of Law and to a meaningful opportunity to contest his detention and obtain release, which is his only effective remedy.

## BACKGROUND

### A.  Procedural History

Qassim filed a habeas petition in this Court (Pet. for Writ of Habeas Corpus, ECF No. 1) and subsequently amended it (Am. Pet. for Writ of Habeas Corpus, ECF No. 22; Further Am. Pet. for Writ of Habeas Corpus, ECF No. 130).  Respondents Donald J. Trump, *et al.* (the "government") filed a Factual Return on October 6, 2004 (Resp. to Pet. for Writ of Habeas Corpus, ECF No. 34) and an Amended Factual Return on September 9, 2008 (Resp'ts' Mot. for Leave to File Amended Factual Return, ECF No. 234), which was entered with the Court's leave on November 7, 2008 (Order, ECF No. 287).  The parties subsequently agreed to stay the action, and a stay was entered on December 12, 2008 (Stipulation to Stay Pets., ECF No. 312).

After the parties conferred regarding a course forward, the Court held a hearing on bNovember 15, 2017.  The Court granted Qassim's oral motion to lift the stay of his petition and ordered the parties to meet and confer to set a proposed merits trial schedule. (Order, ECF No. 1107).  Following extensive communications between the parties and pursuant to the Court's Order of January 2, 2018, Qassim and the government filed Joint Factual Stipulations Governing Adjudication of Petition for Writ of Habeas Corpus on February 21, 2018.  (ECF No. 1130 ("Joint Stipulation")).

### B.  *Boumediene* and the D.C. Circuit Decisions

On June 12, 2008, the Supreme Court held in *Boumediene* that the Guantánamo detainees are protected by the Suspension Clause of the Constitution and therefore constitutionally entitled

to pursue habeas relief in federal courts.  553 U.S. at 771.  The Court held that detainees must receive a "meaningful opportunity" to challenge their detentions before a neutral Article III judge.  *Id*. at 779.

Following *Boumediene*, panels of the D.C. Circuit Court entered a series of four major decisions that each, and together as a whole, eviscerate any such "meaningful opportunity."

- In 2009, the panel in *Kiyemba* held that although the Guantánamo detainees may have the constitutional right to habeas corpus, because they are aliens "without property or presence in the sovereign territory of the United States," they have no constitutionally protected right to due process of law.  *Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009), *vacated and remanded*, 559 U.S. 131 (2010), *judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010), *cert denied*, 563 U.S. 954 (2011).

- In 2010, the panel in *Al-Bihani* ruled that the detainees are entitled to even less process in their habeas proceedings than convicted felons seeking to attack their prior convictions after trial in civilian courts.  *Al-Bihani v. Obama*, 590 F.3d 866,  876 (D.C. Cir. 2010).  The panel, among other things, (i) approved of the use of a preponderance standard by which to judge the government's evidence, and left the door open for the application of an *even lower* burden of proof and (ii) announced that hearsay (which often itself contains additional levels of hearsay) is *always* admissible in cases where Guantánamo detainees seek to challenge their detention.  *Id.* at 878-79.

- In 2010, the panel in *Al-Adahi* adopted a "conditional probability analysis" and held that items of evidence presented by the government, even if unreliable when viewed individually, must be viewed cumulatively and considered probative as a whole.  *Al-Adahi v. Obama*, 613 F.3d 1102, 1105-06 (D.C. Cir. 2010).  It also set a precedent under

which the Circuit Court may challenge the District Court's conclusions concerning what weight to ascribe to individual pieces of evidence. *Compare Al-Adahi v. Obama*, 2009 WL 2584685 at*10 (D.D.C. Aug. 21, 2009) (concluding that Al-Adahi's "admission that he trained at Al Farouq is not sufficient to carry the Government's burden of showing that he was part, or a substantial supporter, of enemy forces") *with Al-Adahi*, 613 F.3d at 1109) (casting doubt on the conclusion that even training, standing alone, did not justify Al-Adahi's detention).

- And in 2011, the panel in *Latif* added that government intelligence reports on the detainees, even if prepared in the fog of war, pursuant to a secret process, filtered through interpreters of unknown abilities, and/or subject to transcription errors are entitled to a "presumption of regularity," wherein it is presumed that the report "accurately identified the source and accurately summarized [the] statement . . . ." *Latif v. Obama*, 677 F.3d 1175, 1179-1182 (D.C. Cir. 2011).

Taken together, these decisions have established a legal regime that precludes Qassim, and all similarly situated Guantánamo detainees from obtaining habeas relief. However, none of these decisions, which have effectively – and improperly – overruled *Boumediene*, has been reviewed or approved by the D.C. Circuit *en banc*. Now, nearly 16 years after Qassim was brought to and detained at Guantánamo Bay, and even longer since the events purportedly providing the impetus for his detention, the time has come to review these decisions and grant Qassim and all others like him the process due to him under the Constitution, so that he may proceed with a just and meaningful review of his detention via the Great Writ.

## ARGUMENT

### A.      Guantánamo Detainees Are Entitled to Due Process

Before Guantánamo, the uncontroversial assumption was that federal courts conducting an inquiry compelled by habeas were bound by the Due Process Clause.  This assumption persisted even as earlier Guantánamo cases were litigated in the Supreme Court.  As Justice O'Connor stated in *Hamdi v. Rumsfeld*, 542 U.S. 507, 533-538 (2004) (plurality opinion): "a court that receives a petition for writ of habeas corpus from an alleged enemy combatant must itself ensure that the minimum requirements of due process are achieved" with a "fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker."  As she emphasized:  "Any process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the alleged combatant to demonstrate otherwise falls constitutionally short."  *Id.* at 537. She also reiterated—and *Boumediene* confirmed—that the place of detention, whether in Guantánamo Bay or the United States, should not make a "determinative constitutional difference."  *Hamdi,* 542 U.S. at 524; *see also Boumediene*, 533 U.S. at 765 (rejecting the contention that the Constitution stops where *de jure* sovereignty ends, even  as applied to non-citizens, and concluding that "[o]ur basic charter cannot be contracted away like this. . . . Even when the United States acts outside its borders, its powers are  . . . subject 'to such restrictions as are expressed in the Constitution.'") (quoting *Murphy v. Ramsey*, 114 U.S. 15, 44 (1885)).

The petitioner in *Hamdi* was, of course, a U.S. citizen.  But Justice O'Connor's statements speak not to the citizenship of the petitioner but to the integrity and fairness of the process that must be followed in a habeas proceeding in a federal court.  And in *Boumediene*, the Supreme Court held that application of the Suspension Clause did not turn on the citizenship of

the petitioner or the locale of detentions.   Neither should the application of the Due Process

Clause of the Fifth Amendment.  Habeas proceedings in federal court must be conducted in

accordance with due process of law.[1]

### B.  Without Due Process of Law, Qassim Has No Meaningful Habeas Right

Although Qassim may retain a procedural right to file habeas petition, and even proceed

to a hearing, without due process, Qassim—and others like him—is stripped of the evidentiary

and procedural protections that are necessary to the functioning of the writ.  Under the D.C.

Circuit panel decisions, Qassim, who has never had on opportunity to challenge the factual basis

for his detention before a judicial tribunal, is given even *less* process than that routinely granted

to even those who have already had an opportunity to contest the allegations against them at a

full and open trial and are subsequently adjudged guilty by a neutral magistrate or a jury of their

peers.  *See Al-Bihani v. Obama*, 590 F.3d 866, 876 (D.C. Cir. 2010); Fed. R. Evid. 1101 advisory

committee's note (explaining that Rule 1101, which applies the Federal Rules of Evidence to

civil cases and proceedings "does not exempt habeas corpus proceedings" and "subdivision (e)

---

[1] *See, e.g., Smith v. Bennett,* 365 U.S. 708, 712-13 (1961) ("Over the centuries [habeas corpus] has been the common law world's 'freedom writ' by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free"); *Lonchar v. Thomas*, 517 U.S. 314, 322 (1996) ("the writ has evolved into an instrument that now demands . . . application of basic constitutional doctrines of fairness . . . "); *Harris v. Nelson*, 394 U.S. 286, 292 (1969) ("There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law"); *Blackledge v. Allison*, 431 U.S. 63, 72-73 (1977) ("arrayed against the interest in finality is the very purpose of the writ of habeas corpus to safeguard a person's freedom from detention in violation of constitutional guarantees") (citation omitted); *Bracy v. Gramley*, 520 U.S. 899. 908-09 (1997) ("In *Harris,* we stated that 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is…entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry'") (citing *Harris v. Nelson*, 394 U.S. 286, 300).

applies the rules to habeas corpus proceedings to the extent not inconsistent with the statute").

Instead, Qassim must rely on the discretion of the Executive Branch to access information and

must make his case under the weight of a presumption that the government documents setting

forth the evidence against him have done so accurately, *see Latif*, 677 F.3d at 1180-181, all the

while being denied access to information necessary to challenge and overcome this presumption.

The consequence of the denial of Due Process of Law, on which the effective functioning

of the writ of habeas corpus depends, and the legal framework set forth by the D.C. Circuit panel

decisions summarized above, subverts the role of the judiciary and undermines the separation of

powers on which our constitutional system is based.  But these decisions do more than create a

philosophical crisis for our system of justice.  The practical effect on Qassim and other

Guantánamo Bay detainees' ability to obtain meaningful review of their detention is

catastrophic, as the historic record makes evident.   After *Boumediene,* but before entry of those

panel decisions, the D.C. district courts heard and decided 53 habeas petitions by detainees.

They granted the writ in 38 of those cases – more than 70 percent of the time.  By contrast, since

those decisions were entered, not a single habeas petition contested by the government has been

granted; and every previous district court grant of habeas appealed by the government has been

reversed by this Court.[2]

Qassim disputes the facts set forth in the government's brief and the Joint Stipulation.

However, without the right of Due Process of Law, and having to accord each of the

presumptions and rulings in favor of the government permitted by current D.C. Circuit caselaw

to the government's evidence, Qassim cannot mount a challenge sufficient to overcome even the

---

[2] Only one habeas petition has been granted since July 2010, with the government's consent, to allow an extremely ill and elderly detainee to be released.  The government mooted three appeals by transferring the detainees.

minimal preponderance of evidence standard by which the government must prove its case.

Application of these precedents here is improper, for they are directly contrary to the Supreme

Court's decision in *Boumediene* and they eviscerate Qassim's opportunity to challenge his

detention in any meaningful way.

## <u>CONCLUSION</u>

The Court should grant Qassim's petition and order his release.


Respectfully submitted,

/s/ Thomas B Wilner

| | |
|---|---|
| Clive Stafford Smith | Thomas B. Wilner |
| Shelby Sullivan-Bennis | Neil H. Koslowe |
| Reprieve US | Kimberly Ferguson |
| 405 Lexington Avenue, Suite 62 | Shearman & Sterling, LLP |
| New York, NY 10174 | 401 9th Street, N.W., Suite 800 |
| Telephone: 401-885-4214 | Washington, DC 20004 |
| E-mail: clive.stafford.smith@reprieve.org.uk | Telephone: 202-508-8050 |
| E-mail: shelby.sullivan-bennis@reprieve.org | E-mail: twilner@shearman.com |
| | E-mail: nkoslowe@potomaclaw.com |
| | E-mail: kimberly.ferguson@shearman.com |

*Attorneys for Petitioner Khalid Ahmed Qassim*