IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
SUHAIL ABDU ANAM, et al.,           CA No. 1:04-cv-01194

            Petitioners,           Washington, D.C.
v.                                 Wednesday, July 11, 2018
                                   11:00 a.m.

DONALD J. TRUMP, et al.,

            Respondents.
- - - - - - - - - - - - - - - x
_____

                TRANSCRIPT OF ORAL ARGUMENT
      HELD BEFORE THE HONORABLE THOMAS F. HOGAN
               UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the Petitioners:      Baher Azmy, Esq.
                          Pardiss Kebriaei, Esq.
                          Shayana D. Kadidal, Esq.
                          CENTER FOR CONSTITUTIONAL RIGHTS
                          666 Broadway, 7th Floor
                          New York, NY 10012
                          (212) 614-6452

                          George M. Clarke, III, Esq.
                          BAKER MCKENZIE
                          815 Connecticut Avenue, NW
                          Washington, DC 20006
                          (202) 835-6184

                          Thomas A. Durkin, Esq.
                          DURKIN & ROBERTS
                          2446 N. Clark Street
                          Chicago, IL 60614
                          (312) 913-9300

For the Respondents:      Ronald J. Wiltsie, Esq.
                          Terry M. Henry, Esq.
                          U.S. DEPARTMENT OF JUSTICE
                          Federal Programs Branch
                          20 Massachusetts Avenue, NW
                          Washington, DC 20530-0001
                          (202) 307-1401

APPEARANCES VIA TELECONFERENCE:

For the Petitioners:        Martha Rayner, Esq.
                            FORDHAM UNIVERSITY SCHOOL OF LAW
                            150 West 62nd Street, 9th Floor
                            New York, NY 10023
                            (212) 636-6941

                            Darold W. Killmer, Esq.
                            KILLMER, LANE & NEWMAN, LLP
                            1543 Champa Street, Suite 400
                            Denver, CO 80202
                            (303) 571-1000

                            John R. Holland, Esq.
                            HOLLAND, HOLLAND, EDWARDS &
                            GROSSMAN, P.C.
                            1437 High Street
                            Denver, CO 80218
                            (303) 860-1331

                            Shelby Sullivan-Bennis, Esq.
                            REPRIEVE
                            P.O. Box 3627
                            New York, NY 10163
                            (929) 376-8446


Court Reporter:             Timothy R. Miller, RPR, CRR, NJ-CCR
                            Official Court Reporter
                            U.S. Courthouse, Room 6722
                            333 Constitution Avenue, NW
                            Washington, DC 20001
                            (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1                    <u>**P R O C E E D I N G S**</u>

2                    THE DEPUTY CLERK:  Your Honor, this morning, this

3      is in re:  Suhail Abdu Anam, et al., v. Donald J. Trump, et

4      al., Civil Action No. 04-1194.

5                    I ask the parties to step forward; identify

6      yourselves for the record, please.

7                    THE COURT:  Starting with petitioners, please.

8                    MR. AZMY:  Good morning, Your Honor.  Baher Azmy,

9      A-Z-M-Y --

10                   THE COURT:  You've got to get to this mic up here,

11     please.

12                   MR. AZMY:  Good morning, Your Honor.  Baher Azmy,

13     A-Z-M-Y, from the Center for Constitutional Rights.  At

14     counsel table, I'm joined by my -- for Petitioner Sharqawi

15     Al Hajj, and with the consent of all counsel, will be

16     appearing for the eight petitioners that have been

17     consolidated before Your Honor.  At counsel table with me

18     for Petitioner Sharqawi Al Hajj are Pardiss Kebriaei and

19     Shayana Kadidal; and for Petitioner Tofiq Al-Bihani, a

20     cleared detainee, George Clarke; and for Petitioner Abdu

21     Latif Nasser, another cleared petitioner, Thomas Durkin.

22                   THE COURT:  All right.  Thank you.  I appreciate

23     it.

24                   MR. WILTSIE:  Good morning, Your Honor.  For the

25     Government, Ronald Wiltsie, and with me at counsel table is

1    Terry Henry.

2              THE COURT:  All right.  Thank you.

3              All right.  We're gathered today.  There are, on

4    line -- on the phone line, several other counsel who are

5    appearing in these cases.  They can introduce themselves.

6    Additionally, there are three other counsel representing

7    other detainees not before me today.  They're listening to

8    the argument, as the public can listen to the argument.  But

9    those who are appearing today for various individuals before

10   me can introduce themselves, please, for the record.

11             MS. RAYNER:  Hi.  Martha Rayner.  This is Martha

12   Rayner, appearing on behalf of Defendant Al Kazimi.

13             THE COURT:  Okay.  Would you spell your name.  We

14   can't -- the sound is not very good for us here.

15             MS. RAYNER:  Certainly.  It's R-A-Y-N-E-R.

16             THE COURT:  Okay.

17             MS. RAYNER:  First name is Martha.

18             THE COURT:  All right.  Thank you, Ms. Rayner.

19             Next, please.

20             MR. KILLMER:  Good morning, Your Honor.  This is

21   Darold Killmer, K-I-L-L-M-E-R, in Denver, Colorado, with

22   Killmer, Lane & Newman, on behalf of Petitioner Suhail Anam

23   Sharabi, ISN 569.

24             THE COURT:  All right.  Thank you.

25             MR. HOLLAND:  And John Holland on behalf of Abdul

 1      Rabbani, Your Honor, from Denver, Colorado, also.

 2              THE COURT:  All right.  Thank you.

 3              All right.  Today, we have the motions for an

 4      order granting writ of habeas corpus.

 5              Is there any other counsel I haven't heard from

 6      who are actually representing parties before me on the

 7      phone?

 8              MS. SULLIVAN-BENNIS:  Yes.  Sorry, Your Honor.

 9      This is Shelby Sullivan-Bennis representing Ahmed Rabbani,

10      Abdul Malik Bajabu and Tofiq Al-Bihani.

11              THE COURT:  All right.  All right.  Thank you.

12              The order requested for grant of writ of habeas

13      corpus and it's a -- contains a -- upon my review, multiple

14      challenges for these group of habeas petitioners about --

15      they're raising issues as to the constitutional

16      considerations of due process applying to these petitioners

17      more than they've had; and raising issues as to the

18      individual cases and their status, particularly at the

19      prolonged detention without end; and, finally, as to the

20      procedures the courts have used here -- this court -- since

21      the beginning of these cases under our orders as to how the

22      trials will be conducted in habeas corpus hearings with the

23      presumptions for the -- and the evidentiary rulings that

24      have been made.

25              So we'll hear from the petitioners first as to

1    these matters with the Government to respond and then a

2    reply brief.

3              Additionally, I'd had a request of oral

4    accessibility by the petitioners themselves in Guantanamo

5    that just recently came in.  It was impractical to arrange

6    that in such short notice to have all the petitioners moved

7    and brought to a room where there was ability to hear these

8    arguments.  The Government has indicated and I have agreed

9    that they will be having either a playback of this argument

10   for them each to be played or they will have a transcript of

11   these arguments made available to them properly translated

12   for their consideration so that they can understand the

13   proceedings we're in today.

14             And so with that, I'm ready to proceed with these

15   matters.  I have had a chance to read all the briefing

16   materials submitted by the Government, as well.

17             And I'll start with Mr. Azmy, then.

18             MR. AZMY:  Thank you, Your Honor.

19             Before I get into the details of the due process

20   and AUMF argument, I'd like to offer a brief overview of

21   where we stand now after 16 years which is that all of these

22   petitioners were apprehended in a time and place very

23   different from today.  They have endured 16 years of

24   indefinite detention without charge or trial which is a

25   duration of detention typically associated with the high end

1    of felony convictions, including material support for

2    terrorism, and which have been secured by the government on

3    the basis of thin and attenuated evidence and a burden of

4    proof that's typically associated with a personal injury

5    case.

6            Now, petitioners do not come before the Court to

7    challenge the legal facts -- sorry, the factual basis for

8    their original detention because --

9            THE COURT:  I want to make clear if I could review

10   as correct a question I raised when I read through these

11   materials.  None of these petitioners have yet gone through

12   a habeas hearing before a court on their individual cases?

13           MR. AZMY:  No, they have, Your Honor.  Some of --

14   many of them have gone through --

15           THE COURT:  Some of them have had trials here?

16           MR. AZMY:  Yes, Your Honor.  And at this point --

17           THE COURT:  The records I've reviewed are --

18           MR. AZMY:  No, many of them have, but --

19           THE COURT:  I'm talking about the named

20   petitioners here before me.

21           MR. AZMY:  Yes.

22           THE COURT:  All right.  I'll look at that.  I

23   didn't see that.

24           MR. AZMY:  But, Your Honor, what's important is

25   that they are no longer interested in challenging the

```
 1    original factual basis of their detention because,

 2    regrettably, as Judge Tatel observed, that contest has been

 3    called in the Government's favor.  They're here now because,

 4    in our view, any of the --

 5              THE COURT:  Not all of them.

 6              MR. AZMY:  Hmm?

 7              THE COURT:  Not all of them.  There are several

 8    that were ordered to be conditionally released.

 9              MR. AZMY:  By the PRBs, Your Honor, but the

10    problem is -- and here is --

11              THE COURT:  By trial before this court.  There

12    have been judges that ordered some of these to be released.

13              MR. AZMY:  They have been, Your Honor, but that's

14    been a long time since the rules regarding the

15    Government's -- and, you know, burdens of proof --

16              THE COURT:  Certain have disagreed, but the

17    District Courts --

18              MR. AZMY:  Yes.  Yes, the District Courts --

19              MS. RAYNER:  I'm sorry.  May I interrupt for a

20    moment?  This is Martha Rayner.  We've lost the audio of

21    you, Your Honor.  We're not able to hear you.

22              THE COURT:  All right.  I can't tell you why.  Is

23    this on?  (Indicating.)  My mic is on.  So we'll do the best

24    we can.  Let's go ahead.

25              MS. RAYNER:  That's much better.  Thank you.
```

```
 1              MR. AZMY:  They are here, Your Honor, because in
 2     our opinion, any veneer regarding the legality of Guantanamo
 3     has been stripped bare by this administration because unlike
 4     the past four presidential terms in which these petitioners
 5     had been detained, this administration has made very clear
 6     they're not releasing anyone.  And it's not only from the
 7     President's campaign promises.  He's issued an executive
 8     order reversing the Obama order to close the prison and
 9     ordering General Mattis to develop procedures for new
10     detainees.  Based on a submission from our supplemental
11     authority, Gitmo staff and Army command are preparing for,
12     quote, the perpetual detention of current detainees and
13     lifetime detention.  The concession the Government basically
14     made; that they're making no effort to clear any of -- clear
15     detainees, including the two petitioners before this Court,
16     at the same time that the Government has dismantled the
17     architecture for releasing detainees.  If I may, Your Honor,
18     read into the record an -- a, kind of, revealing and sad
19     email from Heather Heldman on February 16th, 2018, from the
20     State Department to Shelby Sullivan-Bennis, one of the
21     counsel for Ahmed Rabbani, it's an out-of-office message
22     that says, I have been directed to cease working on
23     Guantanamo detention-related matters.  The Office of
24     Guantanamo Closure is no longer staffed.  So please direct
25     any Guantanamo detention-related inquiries to the
```

1    appropriate regional bureau.

2            But there are no regional bureaus answering any

3    inquiries.  The Guantanamo officials have turned off the

4    lights and thrown away the key.  And the Government tries to

5    paper over this proclamation -- this policy -- by saying

6    that their authority to detain is bounded by the end of

7    active hostilities, but then they define the "end of active

8    hostilities" in an entirely self-serving way which is when

9    the Government itself has determined that al-Qaeda will

10   unconditionally surrender, and that is no boundary at all,

11   Your Honor, which is why, of course, Guantanamo staff is

12   preparing for lifetime detention, and our position is this

13   kind of perpetual detention violates the due process clause

14   and the AUMF.

15           With respect to due process, our position is that

16   the due process clause both applies to Guantanamo and

17   imposes substantive limitations.  We know it applies because

18   the Supreme Court in Boumediene said to ask whether

19   constitutional rights apply extraterritorially, you have to

20   ask whether it would be improper or anomalous to apply them

21   there.  And in Boumediene, of course, the Supreme Court said

22   it wouldn't be improper and anomalous to apply the

23   suspension clause and to hold meaningful habeas review for

24   hundreds of detainees.  The Government has no argument about

25   how applying due process limits of detention --

 1              THE COURT:  Wait, wait, wait a minute.  You're

 2     presuming now that there's more due process than the Supreme

 3     Court argued in -- ordered in Boumediene; right?

 4              MR. AZMY:  That the --

 5              THE COURT:  You're saying that the due process

 6     clause should be interpreted much broader to apply or their

 7     rights should be much broader than the habeas relief ordered

 8     in Boumediene?

 9              MR. AZMY:  Yes, Your Honor.

10              THE COURT:  All right.  And then what do I do with

11     my circuit cases about that?  You've got four -- at least

12     four circuit cases that said it's uncontested; does not

13     apply, the Fifth Amendment rights.

14              MR. AZMY:  Yes.  May I address --

15              THE COURT:  I think we have said that.  I

16     understand your arguments, it's dicta.  But how many times

17     do I have to have dicta to make it the law for me to follow?

18              MR. AZMY:  I understand, Your Honor.  And if

19     you -- if I could just be heard on this matter, because we

20     feel very strongly that this has been incorrectly

21     interpreted because, yes, the --

22              THE COURT:  I mean, you've got --

23              MR. AZMY:  -- proclamation in Kiyemba --

24              THE COURT:  You've got Kiyemba; you've got Ali;

25     you've got Nawar [ph]; you've got Al-Bihani; you've got Doe

 1   v. Mattis --

 2             MR. AZMY:  Respectfully, Your Honor, it's just --

 3             THE COURT:  -- and each one all say that.  Maybe

 4   they're repeating what someone else had already said, but I

 5   don't know what's clearer, and the District Court's at least

 6   taken that as binding.  Judge Huvelle, on a series of cases,

 7   started off saying it may not be -- it may be that

 8   there's -- more due process rights apply, and then after

 9   these cases came out, she's consistently written -- one of

10   our best judges -- in three opinions we're bound by these

11   statements.

12             MR. AZMY:  Your -- actually, in Basardh, Judge

13   Huvelle recognizes that Kiyemba is dicta because it only

14   deals with the ability to enter the United States --

15             THE COURT:  But then she went on in the next

16   case --

17             MR. AZMY:  And I believe there are other cases

18   that recognize it's dicta, including subsequent panels of

19   Kiyemba itself.  Kiyemba II and Kiyemba III --

20             THE COURT:  Right.

21             MR. AZMY:  -- cabin the holding to the possibility

22   of entry.  And I would note the four justices in Kiyemba who

23   dissented from the denial of cert also classified the

24   holding as narrow.  And the, you know -- the Government has

25   conceded in Al Bahlul in the D.C. Circuit that the ex post

1    facto clause applies and Judge Kavanaugh --

2              THE COURT:  And I agree, and then so that -- and I

3    agree Judge Kavanaugh, in a concurring opinion, left that

4    open.

5              MR. AZMY:  Well, he does, but -- and then the

6    majority opinion says five of the seven judges of this court

7    believe the ex post facto clause applied.  If Kiyemba had

8    been the law, the D.C. Circuit would not have said that.

9              THE COURT:  How do I treat the dicta where they

10   clearly say that?  Particularly, Judge Henderson clearly

11   says it does not apply -- she repeats that it does not apply

12   in the next two different opinions.

13             MR. AZMY:  Your Honor, I think the way to treat it

14   is to follow the Supreme Court's admonition in Boumediene to

15   identify whether or not it's improper and anomalous and ask

16   the Government if they have any arguments about why it would

17   be improper and anomalous any more so than the suspension

18   clause or the ex post facto clause --

19             THE COURT REPORTER:  Can you slow down, please.

20             MR. AZMY:  Sorry.

21             -- any more than the ex post facto or the due

22   process clause, and to recognize that five judges of the

23   D.C. Circuit agree that Kiyemba cannot be the law because

24   they have concluded that the ex post facto clause applies to

25   Guantanamo.  So that --

 1          THE COURT:  Was that a Government concession under

 2     a prior administration that may have changed their position

 3     at this time?

 4          MR. AZMY:  They may have changed their position,

 5     but I mean to stress that the -- had the Kiyemba dicta

 6     governed the D.C. Circuit, you would not have had a

 7     statement from Judge Kavanaugh saying the ex post facto

 8     clause clearly applies because Guantanamo's like Puerto

 9     Rico, and you would not have had a statement from the full

10     en banc court saying it appears that five of the seven

11     judges believe the ex post facto clause applies.  That

12     statement is totally inconsistent with the overreading of

13     Kiyemba, in our opinion.  So we would just -- all we can ask

14     is that Your Honor, you know, study that question for us and

15     then --

16          THE COURT:  I appreciate that.  But is part of

17     that request -- two things, if there's due process rights

18     that apply; and your beginning argument was that it's

19     indefinite without end, the detention.  The Government argue

20     it's indeterminate because it doesn't -- it depends upon the

21     war ending or not and that's why detention is lawful; that

22     there's still ongoing conflict.  And I mean, how do we make

23     that judgment?  How do I determine it's indefinite -- that

24     is, in perpetuity -- as opposed to indeterminate?  Just the

25     number of years alone or the fact the Government's closed

1    the State Department office or negotiating these releases?

2    I mean, what would amount to making this as an illegal

3    detention of these individuals?

4           MR. AZMY:   Thank you, Your Honor.   If I could

5    address the, sort of -- the -- that, kind of, factual

6    disposition and then talk about what flows legally from

7    that.

8           So the Government continues to talk about the

9    continuation of active hostilities.   They cite to troops on

10   the ground and the number of sorties which -- and yet they

11   define the end of hostilities as when al-Qaeda

12   unconditionally surrenders.   That itself suggests an

13   admission that the conflict will not end in anyone's

14   lifetime.   And what is remarkable, unlike any of the other

15   conflicts that inform the laws of war, is the Government

16   will always come back to this court every single year and

17   say there are sorties and bullets flying and it's totally

18   disconnected with the nature of the conflict before.

19          If I could just take from the Government's

20   submissions to this Court, they cite a Department of Defense

21   report that's full of a number of ground attacks, sorties,

22   etcetera, to suggest that the conflict is ongoing.   This is

23   at Page 20 of their opposition.   What they failed to cite is

24   that half of those ground actions were against ISIS; some

25   number were against the al-Qahtani -- al-Haqqani network;

1    and al-Qaeda is actually nowhere mentioned in that.  In

2    their exhibits to this which we studied, a number of things

3    come through.  All of the sources -- they cite, maybe, 25

4    different news articles, congressional testimony, press

5    briefings to say that circumstances are like they were

6    before.  The sources are almost entirely about the Taliban

7    and ISIS, al-Qaeda affiliate -- and al-Qaeda affiliates that

8    did not exist on 9/11.  So we're talking about a conflict

9    not only against al-Qaeda, but against spinoff groups who

10   have not yet even spun off.  It is totally boundless, Your

11   Honor, and what due process requires is some rationality;

12   some reason; some limits.  Now, in the non-criminal

13   detention context, this is where the due process clause

14   comes into play.  Governments cannot indefinitely detain

15   individuals based on past conduct or association.  There

16   have to be durational limits that are reasonably tied to the

17   purpose, and we've far exceeded that at this point and

18   particularly --

19        THE COURT:  How -- I understand that, but what --

20   you've got Al-Bihani's case and the court stated, The

21   determination of when hostilities have ceased is a political

22   decision.  That's one.  They defer to the Executive's

23   opinion on the matter, at least in the absence of an

24   authoritative congressional declaration purporting to

25   determine the -- that the war has been terminated.  And,

1    quote, In the absence of a determination by the political

2    branches that hostilities in Afghanistan have ceased,

3    Al-Bihani's continued detention is justified.  It's not

4    what's going on presently, but that -- as to Mr. Bihani

5    himself, but as to the continuation of the war that is a

6    factor that you have to consider and that if the war is

7    continuing -- and I understand it may be attenuated.

8    There's some question I have for the Government on a lot of

9    these areas.  Obviously, people from Africa, etcetera.  But

10   if the war is continuing, then if the petitioners were

11   released, that would undermine the purpose of the law of war

12   of detention; that is, you keep individuals from returning

13   to the field of battle.  I mean, that's the rationale.  What

14   is suspect about that --

15            MR. AZMY:  Several responses --

16            THE COURT:   -- with the Court of Appeals's opinion

17   in Al-Bihani?

18            MR. AZMY:  Right.  Several responses, Your Honor.

19            One, Al-Bihani was from eight years ago and the en

20   banc court subsequently disavowed that statement, but I

21   don't necessarily just want to rely on that technicality

22   because I want to make clear what our position is.  Our

23   position is that the test under the AUMF and the due process

24   clause is that any detention has to be connected to a

25   legitimate purpose.  In this context -- in the preventive

1    detention context, that purpose has to be to prevent a

2    return to the battlefield.  And, one, what the Government's

3    submissions reveal is not only are hostilities ongoing, but

4    they will never end in our lifetime and that implicates due

5    process; and, two, with respect to the nature of

6    hostilities -- and Your Honor has been dealing with these

7    cases for a long time.  And we know this is so unlike prior

8    conflicts that informed the laws of war for so many reasons.

9    One, it's not between -- it's longer than any conflict in

10   U.S. history; two, it's not between two state parties.  It

11   is one thing if the United States Government would

12   repatriate German POWs who, by law in Germany, would have to

13   re-enter the fight.

14            THE COURT:  Right.

15            MR. AZMY:  It's quite another -- we understand

16   what we're dealing with here, Your Honor.  We're -- the

17   Government talks about replenishing the enemy.  We're

18   talking about 40 people.  We've, sort of, crossed the

19   threshold of reality.

20            And then in addition, Your Honor, we also know why

21   this is unlike any other battlefield, not the, sort of,

22   paradigmatic World War II prisoner-of-war scenario.

23   These -- we know what happens to these petitioners.  The two

24   cleared petitioners, one had security arrangements

25   negotiated with Morocco --

1          THE COURT:  I understand.

2          MR. AZMY:  -- and the other one was, I believe,

3    going into custodial --

4          THE COURT:  Saudi Arabia.

5          MR. AZMY:  And the other -- so Mr. Nasser had

6    arrangements that were negotiated with the Moroccan

7    Government --

8          THE COURT:  Right.

9          MR. AZMY:  -- security arrangements.  He was not

10   going to be sent to a state party that would order him back

11   to fight.  And Mr. Al-Bihani was going to Saudi Arabia, and

12   we know Your Honor knows what that looks like.  We've --

13   this is why this has gone so far beyond the pale and we're

14   not depending upon the kind of political analysis here that

15   the Trump administration won't release anyone, although I

16   think that is certainly relevant.

17          And so just to round out the due process argument,

18   we think there have to be durational limitations and,

19   certainly, it could not be that an individual is detained

20   for this long and possibly in perpetuity based merely on a

21   preponderance of the evidence standard about what someone

22   did or who they were associated with 16 years ago.  There is

23   no Supreme Court jurisprudence that would support that.

24   Non-criminal -- criminal detention can be based on what one

25   has done.  Non-criminal detention has to be forward-looking;

1    it has to be connected to a legitimate preventative purpose;

2    and the fact that someone may have associated with

3    al-Qaeda/the Taliban 16 years ago is not sufficient proof

4    that they will return to the battlefield.

5             So if you're -- just to make clear how our

6    argument works, Your Honor, if you're not -- if you do not

7    agree that due process puts absolute temporal limits and

8    requires release, our secondary argument is it's -- this

9    duration of detention cannot be based on a mere

10   preponderance and that any analysis cannot only be

11   backward-looking which is -- only exists in the criminal

12   context; it has to be forward-looking, and so that

13   petitioners would be able to come to this court and present

14   evidence about why they are unlikely to return to the

15   battlefield and the Government would have to overcome

16   that --

17             THE COURT:  I've got --

18             MR. AZMY:  -- by clear and convincing evidence.

19             THE COURT:  I've got two questions about that.

20             MR. AZMY:  Yes.

21             THE COURT:  One is on the standard of the evidence

22   and the preponderance burden to the Government that I

23   adopted as part of the general rules of procedure this --

24   many years ago, 2008.

25             MR. AZMY:  Yes, Your Honor's opinion.  I know.

1           THE COURT:   Judge Randolph commented on that --

2   and Judge Kavanaugh actually was on that panel and didn't

3   say anything -- in a case called Al-Adahi v. Obama, 2010,

4   613 F.3d 1102.  He commented, The district judge in this

5   case adopted the preponderance standard; that is, the

6   burden's on the Government by a preponderance to show why

7   they should be kept.  Their rationale is unstated.

8   Actually, I had talked about it.  And they talked of how we

9   coordinated all the cases and I had to coordinate these --

10  all these matters.  The order stated, among other things,

11  that, quote, The Government should bear the burden of

12  proving by a preponderance of the evidence petitioner's

13  detention is lawful.  In support, the order cited

14  Boumediene.  But Boumediene held only that the, quote,

15  Extent of the showing required of the Government in these

16  cases is a matter to be determined.  That's what I did,

17  according to the Supreme Court's ruling.

18          Boumediene also held, in determining the scope of

19  the writ, the analysis may, or, quote, must begin with

20  precedents as of 1789, and the court has stated that at

21  absolute minimum, the clause protects the writ as it existed

22  when the Constitution was drafted and ratified.  Yet we are

23  aware of no precedents in which the 18th century English

24  courts adopted a preponderance standard.  Even in later

25  statutory habeas cases in this country, that standard was

 1   not the norm.  For years, in habeas proceedings contesting

 2   orders of deportation, the Government had to only produce

 3   some evidence to support the order.

 4        And then they say, After oral argument, we ordered

 5   the parties to file supplemental briefs discussing what

 6   factual showing, if any, the Government must make to justify

 7   detaining Al-Adahi.  The supplemental briefs we received are

 8   not exactly illuminating.  The Government was satisfied with

 9   the appropriate standard that we had set which was

10   preponderance.  Al-Adahi readily agreed with the Government

11   the preponderance standard should govern the case.  We are

12   thus left with no adversary presentation on an important

13   question affecting many pending cases in this court and in

14   the District Court.  Although we doubt, for the reasons

15   stated above, the suspension clause requires the use of the

16   preponderance standard, we will not decide the question in

17   this case.  As we did in Al-Bihani, we'll assume the --

18   arguendo the Government must show by a preponderance of the

19   evidence Al-Adahi was part of al-Qaeda.

20        So what you're asking for is much more than a

21   preponderance of the evidence.  You're asking clear and

22   convincing evidence, despite Judge Randolph, joined by

23   Henderson and Kavanaugh, saying even that standard is

24   questionable as being too much of a burden on the

25   Government.

1          MR. AZMY:  May I -- yeah.  If I may address that,

2     just to make clear what our argument is?

3          THE COURT:  All right.

4          MR. AZMY:  There are two ways in which our

5     argument is not foreclosed by that.

6          One, we're -- that is a preponderance standard

7     under the common law and under the, sort of, writ as it

8     exists in 1789, but if the due process clause applies --

9     which we understand will require some work from Your Honor

10    to get through -- then the due process clause requires more.

11    And after this much time, we think the due process clause

12    should apply.

13         The second argument which is very important is,

14    whatever standard one applies, clear and convincing or

15    preponderance, we believe that under the due process clause,

16    it cannot merely be a determination as the courts were doing

17    10 years ago of what someone did and who they were with 15

18    years ago.  The due process clause requires a connection to

19    a purpose -- non-criminal purpose for detention --

20    preventive detention and the AUMF, you'll recall, Your

21    Honor, Justice O'Connor said, has to be tied to a return to

22    hostility.  So even if we're using a preponderance standard,

23    we should be able to introduce evidence that individuals

24    will not return to the battlefield.  And I think, for the

25    cleared detainees, that is -- that's clear because the

1    United States Government has already determined that they

2    are no longer a threat.  And respectfully, Your Honor, I

3    don't think the United States Government should, through a

4    broad interagency process that they tout on the one hand as

5    being rigorous, say individuals are no likely -- no longer a

6    threat and arrange security agreements -- which, apparently,

7    they've now abandoned -- and then come into a United States

8    court and say, No, that doesn't mean they're not dangerous

9    and they are detainable.  There have to be some limits, Your

10   Honor, and that's what we're asking for.

11            THE COURT:  Let me ask a couple other questions

12   about the existing law and in conjunction with the executive

13   orders that are outstanding in this matter.

14            President Trump's Executive Order 13823 set aside

15   part of President Obama's order closing Guantanamo and --

16   but left into effect, as far as I can tell, the remaining

17   part of his orders -- the -- President Obama's orders, but

18   they requested within 90 days of the date of this order --

19   this order dated January 30th, this year, long ago --

20   Secretary of Defense, in consultation with Secretary of

21   State, the Attorney General, Secretary of Homeland Security

22   and the Director of National Intelligence and heads of other

23   appropriate agencies, etcetera, shall recommend policy to

24   the President regarding the disposition of individuals

25   captured in connection with armed conflict, including the

1       policies governing transfer of individuals to Guantanamo

2       Bay, and then they go on to continue about the periodic

3       reviews that shall be made, etcetera.

4               What is the result of that?  Do you know what --

5       the results of this 90-day study that was being done?  That

6       report by the Secretary of Defense to the President.

7               MR. AZMY:  We have little to no information, Your

8       Honor, because whatever Secretary Mattis prepared is

9       classified.  So we don't know what the result --

10              THE COURT:  There's been nothing released as to

11      that?

12              MR. AZMY:  Right.  But we also know from the

13      Government's submission that there have been no efforts to

14      effectuate the transfers that had been negotiated for any of

15      the cleared detainees, including the two petitioners.  We

16      know that the Guantanamo Special Envoy's office and,

17      therefore, the entire infrastructure of Guantanamo has been

18      destroyed.  So they're ending that staffing but beefing up

19      staffing for lifetime detention.

20              THE COURT:  On the petitioners -- not including

21      the two that have already been cleared for release -- who

22      were held by the review board, as I indicated, in 2010 when

23      they finally had a review for prosecution, are you aware if

24      any of them have been charged with any offense?

25              MR. AZMY:  They have not, Your Honor.  None of

 1   those petitioners.

 2              THE COURT:  That was 2010.

 3              MR. AZMY:  That's right.

 4              THE COURT:  So the Government's still deliberating

 5   what to do?

 6              MR. AZMY:  Apparently, Your Honor.  And under

 7   their capacious view of the law, they can take whatever time

 8   they want.  And, Your Honor, rest assured, the Government

 9   will, absent judicial review, and that's why we're before

10   the Court.

11              THE COURT:  When was the last individual

12   transferred out of Guantanamo?

13              MR. AZMY:  That would have been in the waning

14   weeks of the Obama administration.  I don't have the exact

15   date.

16              THE COURT:  One of the two that you --

17              MR. AZMY:  Oh, forgive me.  Forgive me, Your

18   Honor.  Sorry.  al-Darbi, a Saudi petitioner, was released

19   during the Trump administration.  I want to speak to that,

20   because --

21              THE COURT:  There had been one released during the

22   Trump administration that was arranged before the Trump

23   administration came into office.

24              MR. AZMY:  More than that, Your Honor, al-Darbi

25   had pled guilty to war crimes; had served a sentence; and,

1    therefore, was released by the binding terms of the sentence

2    and a negotiated agreement with Saudi Arabia and, to some

3    extent, that underscores the arbitrariness of this whole

4    process, because these individuals have been detained longer

5    than people who are charged with war crimes, and when we go

6    to our clients, it has nothing to do with what they are

7    presently doing or what their profile is.  Petitioner

8    Sharqawi Al Hajj told his PRB -- he's old.  He's 43.  That's

9    not so old.  I should not concede that myself, Your Honor,

10   having long passed it.  One hundred and eight pounds; sick;

11   collapsed in his cell; he's made pronouncements renouncing

12   violence; family statements; all of these things to get out.

13   That will not get him out of Guantanamo.  He's not going to

14   be heard again for another two years.  What do we tell our

15   clients?  Confess to a war crime?  Is that the only way to

16   get yourself out?  It's the height of arbitrariness and,

17   again, the need for some sort of judicial oversight which I

18   understand has waned, but I think it's time to revisit those

19   questions, respectfully, Your Honor.

20        THE COURT:  What has happened, as a practical

21   matter, you've got to admit that the courts are willing to

22   try these cases and make some determination on the trial

23   court level.  Most were not successful; several were

24   successful in convincing that they should be released.  The

25   Circuit basically shut a lot of that down for the District

1    Courts in their opinions.  Additionally, factors came to

2    light about 20 percent up to, maybe, 30 percent at the

3    highest -- probably closer to 20 percent -- were

4    recidivists; went back into the battle.  So it's not clear

5    anybody who's released is never going back into the battle,

6    and the Government may have taken that into account in their

7    later determination.  I don't know.

8            But I was curious about one of your two clients

9    that are here today that are represented by their counsel.

10   If you don't know, they can answer.  Secretary Carter, on

11   the -- of the Obama administration, is the one that did

12   not -- that made the determination not to release, I believe

13   it was, Nasser.  Was it Nasser?

14           And why don't you introduce yourself for the

15   record, so it's clear who's speaking.

16           MR. DURKIN:  For the record, I'm Tom Durkin.  I'm

17   from Chicago.

18           THE COURT:  All right.

19           MR. DURKIN:  Nice to be here.

20           THE COURT:  But Secretary Carter made that

21   determination before the Trump administration came in.

22           MR. DURKIN:  He made the decision to defer to the

23   Trump administration.  He did not make --

24           THE COURT:  He was scheduled for release and he

25   had a country that would take him.  That was all negotiated.

```
 1                    MR. DURKIN:  Yes, Morocco gave him the assurances

 2         they wanted, but I believe it was December 28th and

 3         Secretary Carter, because that was within the 30-day

 4         period -- or it was after the 30-day period, decided to

 5         defer his decision on certification to the --

 6                    THE COURT:  I had read he had made a determination

 7         not to release him.  Maybe I --

 8                    MR. DURKIN:  No, that was --

 9                    THE COURT:  -- misread that.

10                    MR. DURKIN:  -- the other client.

11                    THE COURT:  Pardon me?

12                    MR. DURKIN:  That was the other --

13                    THE COURT:  That was Al-Bihani, he made that

14         determination?

15                    MR. CLARKE:  It was, Your Honor, as far as we

16         know.

17                    THE COURT:  All right.  Thank you.  All right.

18                    MR. DURKIN:  But that's --

19                    THE COURT:  Your person was just deferred?  Your

20         client.

21                    MR. DURKIN:  He's -- yes, his was deferred.  We

22         filed an emergency petition before Judge Kollar-Kotelly and

23         that was denied and we still wait.

24                    THE COURT:  All right.  Thank you, sir.

25                    MR. DURKIN:  Thank you.
```

 1            THE COURT:  All right.  I'll -- Mr. Bihani's

 2    counsel want to come up and explain what happened to him

 3    for -- just for the record for a minute.

 4            MR. CLARKE:  Yeah.  Yes, Your Honor.  George

 5    Clarke.

 6            THE COURT:  Introduce yourself again, please.

 7            MR. CLARKE:  George Clarke with Baker McKenzie.

 8            I actually don't know exactly what happened to

 9    him.  I know that he was -- that there were 10 people who

10    the State Department negotiated with the Saudis to take and

11    only 9 -- he was one of them.  And only 9 went and he did

12    not go.  And what we heard, sort of, through the grapevine

13    through piecing things together -- nothing was ever formally

14    communicated to us -- was that Secretary Carter did, in

15    fact, refuse to transfer him.  That --

16            THE COURT:  That's what's represented in the

17    pleadings --

18            MR. CLARKE:  That is what we understand to be the

19    case, but -- I mean, it's not like I have a piece of paper

20    that says that, Your Honor, but the timing works.  Certainly

21    what my client saw in Guantanamo from that perspective is

22    what happened.  We also have heard that there was a -- there

23    was potentially another potential for him to be transferred

24    right at the end of the Obama administration; that something

25    similar happened then, and we have no idea why.  He was

1    cleared -- he wasn't cleared under a PRB, Your Honor.  He

2    was cleared by the task force --

3              THE COURT:  Right.

4              MR. CLARKE:  -- January 2010 and he's still been

5    sitting there.  And all the other 30 people who were put in

6    that same category are -- the other 29, they're all gone.

7    There were 30 people put in that category.  He's the only

8    one that's still sitting there.

9              THE COURT:  Well, I did want to raise -- so the

10   Government knows where I'm going to go -- as to Mr.

11   Al-Bihani and Mr. Abdu Nasser.  The issue is that they had

12   both been cleared for transfer.  As such, then, their status

13   is such -- it's apparent to me, at least -- they're no

14   longer being reviewed by the PRB.  So they're in a no-man's

15   land.  They're in a Catch-22.  They aren't being reviewed by

16   anybody to see if they should be released again.  And I

17   don't know if I'm reading that correctly, but the Government

18   should address that, because it seems that we have left

19   these individuals out of the process at this point.

20             All right.  Thank you.

21             MR. CLARKE:  Thank you, Your Honor.

22             MR. DURKIN:  Judge, I just --

23             THE COURT:  All right.  Introduce yourself again.

24   So we've got a different lawyer speaking.

25             MR. DURKIN:  I'm sorry.  This is Tom Durkin again.

1          I think you're absolutely correct on that --

2          THE COURT:  All right.

3          MR. DURKIN:  -- without question.  And I think --

4    I mean, certainly, all the other --

5          THE COURT:  All right.  Well, I just wanted to

6    raise that for the Government now that we're going to go

7    there.

8          I'll get counsel back -- Mr. Azmy, please -- and

9    let him finish his argument here.

10         MR. AZMY:  I just wanted to address the recidivism

11   statistics, just for the record.

12         THE COURT:  Sure.

13         MR. AZMY:  The 30 percent number includes

14   confirmed and suspected cases, and confirmed counts as just

15   one source based on the preponderance of the evidence.

16   We've always contested these numbers.  And I think it's not

17   just us that think that they've been floated for an

18   instrumental reason.  And under Obama, as opposed to under

19   President Bush where there was a more rigorous review

20   process, those numbers have dwindled to, at most, a

21   handful --

22         THE COURT:  I think --

23         MR. AZMY:  -- of cases.

24         THE COURT:  -- the history is Mr. Bush had about

25   700 more people rotate through there or more.

```
 1              MR. AZMY:  Right.

 2              THE COURT:  And a lot were gone eventually before

 3    he ended his term and then Mr. Obama eventually released

 4    more, and so the numbers got down to --

 5              MR. AZMY:  Forty.

 6              THE COURT:  -- I think only the last few that had

 7    more issues, unfortunately, although some of your people

 8    also got caught up and are being held, but -- I mean,

 9    there's no question there are some people who are under

10    military commission charges that are not going to be

11    released until those are resolved, at least.

12              MR. AZMY:  Yeah.

13              Your Honor, if I could just make one last point --

14              THE COURT:  Yes.

15              MR. AZMY:  -- since you mentioned the PRBs.  I

16    want to make clear that our position is the PRBs should not

17    be a substitute for the judicial review we're seeking.  In

18    our view, at this point, they're like the CSRTs.  They're

19    procedurally weak.  They are undertaken once every three

20    years by a military official under the chain of command and,

21    at best, it's a recommendation to the Secretary of Defense,

22    who can ignore it.  And given the other policy

23    pronouncements, we don't think -- and given what we know

24    about these two cleared petitioners, no one would get out

25    anyway.  And, as I mentioned, Sharqawi Al Hajj, he made an
```

 1   enormously persuasive presentation about why he would not

 2   return to hostilities, and the rubber stamp was to deny him

 3   release.  And for other petitioners, they've simply given up

 4   hope and are not participating, and that leads to a finding

 5   that they should not be cleared and that's, respectfully, an

 6   understandable reaction, given the state of hopelessness in

 7   the prison and the state of unreason and lawlessness.

 8          Thank you, Your Honor.

 9          THE COURT:  All right.  Well, I appreciate the

10   argument very much.

11          I also didn't acknowledge and I should have

12   acknowledged that there were amicus briefs filed by due

13   process scholars in support of petition [sic] by the Gibbons

14   P.C. and group that I have reviewed as well as a brief

15   amicus curiae, the Muslim, faith-based and civil rights

16   community organizations from Amir Ali from Washington, D.C.,

17   from Roderick & Solange and Jonathan Smith from Muslim

18   Advocates from Washington, D.C., that I reviewed as well for

19   this process.

20          All right.  For the Government -- and also, a

21   brief of amicus curiae from the victims of torture in

22   support of the petitioners' habeas motion from Center for

23   Victims of Torture and Laura Wilkinson from Weil, Gotshal

24   here in town.

25          All right.  Mr. Wiltsie, do you want to argue?

```
 1            MR. WILTSIE:  Yes, Your Honor.  Thank you.

 2            THE COURT:  All right.  Thank you.

 3            MR. WILTSIE:  Your Honor, if I may start, I

 4   believe, and correct Mr. Azmy on one issue, as to the eight

 5   petitioners who have been referred to you for a decision on

 6   this motion, only one of them has taken their case to

 7   merits.

 8            THE COURT:  Yeah, I couldn't find them all tried.

 9            MR. WILTSIE:  That was Mr. Bihani, and he lost.

10            THE COURT:  Right, I remember --

11            MR. WILTSIE:  The --

12            THE COURT:  -- Bihani.

13            MR. WILTSIE:  There are three of them who have

14   active cases but are not prosecuting them; and there are

15   two, I believe, who have stayed their cases; and one who has

16   dismissed his case without prejudice.

17            THE COURT:  All right.  I appreciate that, because

18   my review, I couldn't find any -- I knew Al-Bihani went to

19   the Court of Appeals, but I hadn't -- couldn't find any

20   others that actually had gone to trial and have not

21   exercised their rights that they do have, at least at this

22   time, for a trial.

23            All right.  You're going to have to start with an

24   opening statement, if you'd like, and then I have some

25   questions for you about some of these problems.
```

 1              MR. WILTSIE:  Of course, Your Honor.

 2              Your Honor, as we argued in our brief, a binding

 3      precedent and persuasive and, I would argue, authoritative

 4      decisions by other judges of this district have -- provide

 5      that petitioners' ongoing detention is permitted under the

 6      laws of war, authorized by the Authorization for Use of

 7      Military Force, and constitutional under the due process

 8      clause.  For example, Your Honor, the Supreme Court in Hamdi

 9      and the Court of Appeals in Ali both held that the

10      Authorization for Use of Military Force authorizes the

11      United States to detain these petitioners for the duration

12      of active hostilities.

13              THE COURT:  Okay.  And the duration can be of any

14      length?

15              MR. WILTSIE:  Yes, Your Honor.  You cannot tell

16      when hostilities end until they have ended.

17              THE COURT:  All right.  So if we have the Hundred

18      Years' War in England -- which was the 14th, 15th century;

19      it's a 116-year war -- under your theory, the prisoners

20      could be held for that long because -- actually, there was

21      never a peace treaty signed in that war.  They finally just

22      gave up fighting after 116 years.  But --

23              MR. WILTSIE:  Yes, Your Honor.

24              THE COURT:  -- your -- under your theory, the

25      petitioners, if this continues for 116 years, can be held

 1   constitutionally?

 2              MR. WILTSIE:  Yes, Your Honor.

 3              THE COURT:  And --

 4              MR. WILTSIE:  We hope that they'll --

 5              THE COURT:  -- under the AMU -- under the

 6   Authorization for Use of Military Force, although al-Qaeda

 7   itself could be destroyed and may not be gone, but there may

 8   be associated groups still in --

 9              MR. WILTSIE:  No, Your Honor.  That's a

10   mischaracterization of our position by petitioners.

11   Answering your questions, I think, in order, yes, we could

12   hold them for 100 years, if the conflict lasted for 100

13   years.  It is the United States's certain hope that it will

14   not last that long.  The argument they pose is that we are

15   now engaged against other forces in other geographic

16   locations --

17              THE COURT:  Exactly.

18              MR. WILTSIE:  -- and that we can hold these

19   detainees until all of those forces have been defeated.  Our

20   point is, that question is not ripe, for the evidence before

21   Your Honor in this record is that we are still engaged

22   against the compatriots of these petitioners in the same

23   battle space against the same battle foes right now.  The

24   ongoing fight is on -- against al-Qaeda and the Taliban and

25   associated forces in Afghanistan, and so long as that is

1     true, these petitioners are being held for the conflict for

2     which they were detained and, under the laws of war, we can

3     continue to detain them until that -- until active

4     hostilities in that conflict have come to an end.

5              THE COURT:  We have one, according to your theory,

6     Abdul Malik, citizen of Kenya; detained 12 years;

7     recommended for continued detention, 2010, for prosecution.

8     No prosecution has resulted.  At his most recent review -- I

9     think full review was 2016 -- the -- is necessary to protect

10    the country against his relationship with high-level

11    operational plans and members of al-Qaeda -- I guess it's

12    al-Qaeda -- in East Africa; participation and execution of

13    an attack in Mombassa, Kenya, upon Jewish elements, and

14    that's related to al-Qaeda in Afghanistan.

15             MR. WILTSIE:  Remember, Your Honor, the

16    Authorization for Use of Military Force permits us to

17    detain --

18             THE COURT:  Associated --

19             MR. WILTSIE:  -- members of al-Qaeda and

20    associated forces who perpetuated the attacks of 9/11.  He

21    is detained pursuant to that.  If he has a merits argument

22    that he was not a member of al-Qaeda or associated with

23    al-Qaeda at the time of 9/11, then they need to bring that

24    on the merits level, but it is not properly presented here.

25             THE COURT:  Now, in fairness, he's also received a

1   full review -- file review -- whatever that means -- in June

2   of 2017 and they reviewed relevant new information and the

3   prior information.  The board, by consensus, determined that

4   he -- detention is warranted.  But I mean, what -- you're

5   expanding your argument that it has to be this

6   Afghanistan-related thing to anyone else around the world

7   that may be connected, you believe, with al-Qaeda?

8            MR. WILTSIE:  No, Your Honor.  The point is, these

9   petitioners were detained at a time when we were engaged in

10  a conflict against al-Qaeda and the Taliban and associated

11  forces in Afghanistan.  As long as that conflict goes on,

12  they are all properly detainable under the Authorization for

13  Use of Military Force.

14           THE COURT:  What happens from the Government's

15  viewpoint, then, if there is a peace effected in Afghanistan

16  with the Taliban who promise not to support al-Qaeda any

17  longer and there's no active engagement of al-Qaeda in

18  Afghanistan?  What do you do then?  How do you hold these

19  people?

20           MR. WILTSIE:  I'm not -- Your Honor, my -- that's

21  my point exactly which is, at the moment, that question is

22  not before you.  The question you pose, I can't -- I don't

23  want to limit our future arguments that we might bring.

24           THE COURT:  All right.

25           MR. WILTSIE:  But that is -- but -- that is a

1    merits argument for another day.

2          Your Honor, I point out to the Court that Judge

3    Leon last year in Al-Alwi rejected petitioners' primary

4    argument which is that somehow, the government's right to

5    detain petitioner times out; that somehow, duration matters

6    within law of war detention; or perhaps, Your Honor, as the

7    Court of Appeals in Al-Bihani stated, common sense tells us

8    what must be true which is that release is required only

9    when the fighting stops.  Thus, Your Honor, under the laws

10   of war and the Authorization for Use of Military Force, the

11   only --

12         THE COURT:  Justice Breyer suggested, did he not,

13   in a concurring opinion that there may be some temporal

14   limit?  He said we haven't reached that issue yet, but there

15   could be a limit to how long they can be held.

16         MR. WILTSIE:  He did say that, and that is

17   certainly indicative that he may hold that opinion, but it

18   is not indicative that any other -- any majority of that

19   court or any other court would agree with him.  And right

20   now, Your Honor, binding precedent indicates that there is

21   no violation if we hold them for the duration of the active

22   --

23         THE COURT:  What is it about the due process

24   argument that the statements by Judge Henderson, and

25   concurring by a couple others in those statements, that

1    it's due process beyond what's already been granted by the

2    Supreme Court does not apply being dicta necessarily to any

3    of those opinions and, therefore, not binding?

4           MR. WILTSIE:  Well, Your Honor, there's an

5    interesting opinion from the Supreme Court that I can't

6    recall right now which says, Yeah, sometimes we speak in

7    dicta, but the lower court should pay attention to that.

8    And I refer the Court to Rasul which was referred back to

9    the Court of Appeals by the Supreme Court for

10   reconsideration in light of Boumediene.  And the Court of

11   Appeals distinctly said that they would not reconsider

12   Kiyemba in light of that.  They said the -- historically,

13   the Supreme Court has very -- had limited -- had a very

14   limited view of the extension of the Constitution

15   extraterritorially and that Boumediene reaches only the

16   suspension clause and that, therefore, it would not reverse

17   its prior decision that --

18          THE COURT:  I think Judge Kavanaugh has a

19   different view --

20          MR. WILTSIE:  Well, I don't -- I wouldn't --

21          THE COURT:  -- in his concurring opinion, without

22   commenting on his prospects --

23          MR. WILTSIE:  I would not wish to opine on Judge

24   Kavanaugh's future views, Your Honor.

25          THE COURT:  Well, he found a concurring opinion in

1    a case here indicating he thought at least it was an open

2    issue still, why using the functional analysis wouldn't

3    apply as well, basically, is what he said.

4         Let me go back to a couple particulars and then

5    we'll get to the general argument on some of these matters.

6         About Al-Bihani's situation, there had been an

7    order issued on January 18th, 2018, by Judge Kotelly

8    who's -- got this before I was kindly given all the cases

9    again by the court to handle, where she required the

10   Government to inform the Court, Whether the Government

11   intends to transfer petitioners previously designated for

12   transfer by the task force and/or the PRB.  And the answer

13   we got, I think, was, In January '17, Secretary Carter

14   determined the petitioner, Al-Bihani, should not be

15   transferred based on a variety of substantive concerns

16   relevant to his circumstances, including factors not related

17   to petitioner himself.  I'm not sure that satisfied the

18   Court about whether it -- the order of the Court, whether

19   the Government intends to transfer petitioners previously

20   designated for transfer and what efforts were made to

21   transfer him since that January '17 decision by Secretary

22   Carter, whether that was revisited, and there's no evidence

23   of that -- of what has happened and whether there's been a

24   review committee, etcetera, that has considered that.

25         Mr. Nasser is somewhat in the same situation.  His

1    report was, from the Government, no date -- to date, no

2    decision has been made whether to proceed with that

3    transfer.

4             So what is the update of those two individuals?

5             MR. WILTSIE:  Your Honor, I don't -- I cannot say

6    with any degree of certainty whether or not either of those

7    individuals will be transferred.  What I can tell the Court

8    is that under the executive order from President Trump,

9    transfers from Guantanamo are permitted.  That is a very,

10   very complex process.  Mr. Azmy referred to parts of it that

11   requires negotiations, obviously, by the State Department

12   with foreign governments to accept a detainee; further

13   negotiations to get adequate assurances that if the

14   detainees are transferred, they would -- the threat of them

15   returning to the battlefield would be minimized.  Let me

16   correct Mr. Azmy.  Being cleared for transfer or proposed

17   for transfer in no way indicates they are no longer a threat

18   to the United States.  It just means that we believe we can

19   transfer them and minimize that threat through appropriate

20   conditions.  Once all that is done, the transfer and those

21   conditions need to be routed through an interagency approval

22   process which includes the intelligence community and,

23   ultimately, as the Court may be aware, the Secretary of

24   Defense has to certify by statute that the transfer would be

25   in accordance with the national security interests and he

 1    has to adhere to a whole -- other steps that Congress has

 2    required.  What I can tell the Court is that the policies

 3    and practices under the executive order are deliberative

 4    right now; that we -- it is hoped that the -- that transfers

 5    may occur in the future, but we are not currently --

 6    nobody's being transferred tomorrow.  Let me put it like

 7    that, Your Honor.

 8              THE COURT:  Right.  Well, one concern is the State

 9    Department's Office of Special Envoy for Guantanamo may no

10    longer exist.  It's no longer functional; is that correct?

11              MR. WILTSIE:  That's correct, Your Honor.

12              THE COURT:  So how does the Government expect to

13    transfer them if that office was dismantled who organizes

14    the transfers; who finds the countries available to accept

15    them; who oversees not only the transfer, but their

16    continued operation in the countries they're transferred to,

17    etcetera, I mean, on their post-transfer progress?  I mean,

18    how is that to be done if you don't have an office to do

19    that?

20              MR. WILTSIE:  Your Honor, that -- there's no

21    reason you need an office to do that.  The State Department

22    has embassies in all countries.  They can reach out -- those

23    embassies can reach out.  As I indicated just a minute ago,

24    the actual practices and the policies that will be

25    implemented are being deliberated right now.  So -- but you

1    don't need these offices dedicated to this job.  They didn't

2    exist initially.  They were --

3              THE COURT:  What --

4              MR. WILTSIE:  -- creations of --

5              THE COURT:  Right --

6              MR. WILTSIE:  -- President Obama.

7              THE COURT:  -- I agree.  I agree.  They did not

8    exist initially and he did it.  What I'm getting towards --

9    and I'll get there eventually.  What -- the 90-day report,

10   apparently, at the time it was run -- so I assume the

11   Secretary of Defense has given that to the President.

12             MR. WILTSIE:  I do not know, Your Honor.

13             THE COURT:  That's called -- under a 13823

14   executive order --

15             MR. WILTSIE:  I apologize --

16             THE COURT:  -- requiring the Secretary of Defense,

17   after consulting with the other agencies, to give a report,

18   including policies governing the transfer of individuals to

19   the U.S. Navy station in Guantanamo Bay.

20             MR. WILTSIE:  I apologize to the Court.  I do not

21   read that the same way the Court does.  I'd read that as

22   referring -- as --

23             THE COURT:  To future --

24             MR. WILTSIE:  -- Section 2 to future --

25             THE COURT:  Future individuals --

1          MR. WILTSIE:  -- future transfers to Guantanamo --

2          THE COURT:  Covers about -- policies about

3    disposition of individuals captured in connection with armed

4    conflict?

5          MR. WILTSIE:  Yes, Your Honor.

6          THE COURT:  That would cover the past people?

7          MR. WILTSIE:  Yes, Your Honor.  Your Honor's

8    reading may be perfectly reasonable, but I am unaware of

9    that.  I did not focus on a need to brief the -- this Court

10   on the status of that report.

11         THE COURT:  All right.  You're not cognizant of

12   any efforts the government's made to transfer any of these

13   two individuals previously cleared and whose transfer had

14   been arranged already?  You're not cognizant of anything

15   that's -- efforts that have been made to transfer them;

16   right?

17         MR. WILTSIE:  No, Your Honor.

18         THE COURT:  All right.  Okay.  What I'm getting to

19   is it become [sic] a de facto policy unannounced that there

20   will be no transfers from Guantanamo Bay, period, and that

21   based upon President Trump's statement on January 3rd --

22   post-election statement, not campaign rhetoric -- that

23   there, quote, Should be no further releases from Gitmo, end

24   quote.

25         MR. WILTSIE:  Your Honor, I would point the Court

1    to the executive order which was issued at least a year

2    later in which President Trump specifically allowed --

3    instructs the Secretary of Defense that he may transfer

4    individuals from Guantanamo under appropriate circumstances.

5    And, additionally, that same executive order requires that

6    any new arrivals at Guantanamo would be entitled to periodic

7    review boards.  If that -- if there were to be no transfers

8    from Guantanamo at all, that provision is totally

9    superfluous.  So I don't believe that you can say that the

10   President's certainly official position is that there will

11   be no transfers.

12             THE COURT:  Is -- his Twitter position -- call it

13   that for a minute -- in January '17 -- 2017, recognizing

14   there was a subsequent order in 2018, concerning release of

15   individuals held in Guantanamo, but the petitioner supplied

16   information of news reports indicating detention operations

17   of Guantanamo are shifting to a permanent detention of

18   detainees, including hospice care and a rise in the number

19   of individuals assigned to protect the -- and care for these

20   individuals and with only 40 or 41 left, they're estimating,

21   maybe, 2,000 people there to care for them.  I can't imagine

22   the expense this is causing.  But if that is indicative

23   of -- you believe there will not be any releases from -- the

24   Government will not actually be releasing people?  I mean,

25   the policy is not to release because of this -- additional

1    expenses that are going into --

2           MR. WILTSIE:  No, Your Honor.  I don't think you

3    can draw that conclusion at all.  The fact of the matter is,

4    at the moment, there are 40 individuals detained at

5    Guantanamo.  They are aging, as we all are, and the

6    Government is making prudent efforts to care for them and,

7    as I indicated before, we do not know when active

8    hostilities will end.  So we are making efforts to be able

9    to care for them for the foreseeable future; however, that

10   does not indicate in any way, shape or form that none of

11   them will be transferred.  It is quite likely that some of

12   them will be transferred in the future.  The question is --

13   but the question remains whether they will all be

14   transferred.  And what facilities do we need to take care of

15   those who remain?

16          THE COURT:  What -- on the detainees before me --

17   the ones before me -- separating out Mr. Nasser and Mr.

18   Al-Bihani, the others, in 2010, were to be held according to

19   the reviews for prosecution.  And as far as I have here in

20   reviewing these files, there have been no prosecutions

21   recommended.

22          MR. WILTSIE:  I believe that's accurate, Your

23   Honor.

24          THE COURT:  So again, are they in a state of limbo

25   just waiting to see if they're going to be prosecuted or

1    not?  I mean, how long can the Government wait to determine

2    if they're going to do anything --

3          MR. WILTSIE:  Well, I can't answer that because

4    I'm not on the criminal side, Your Honor.  My understanding

5    is that some referrals for prosecution have occurred

6    recently; however, these individuals that you're referring

7    to are still subject to the periodic review boards and would

8    be considered for transfer even though their status --

9    initial status out of the executive task force was to be

10   considered for prosecution.

11         So Your Honor, turning to -- briefly to the

12   decision whether active hostilities are ongoing, that is --

13   the Court of Appeals has stated in Al-Bihani, is a question

14   for the political branches.

15         THE COURT:  Judge Garland raised an interesting

16   question in the argument on that in the Court of Appeals.

17   His question was that, is it proper of the judiciary to

18   refer entirely to the Executive if you have a hypothetical

19   case where there is -- no conflict actually exists by common

20   agreement, but the Executive still wants to keep some of

21   these people in prison they don't approve of?  And at that

22   point, the courts step in.  Are there still a political

23   question where the Government is claiming there is still an

24   ongoing war but everyone else agrees it's over?  I mean,

25   it's -- again, eventually, the courts have a role to step in

1    --

2           MR. WILTSIE:  I think, at that point, it would be

3    incumbent on a judge to decide whether he had the power to

4    step in.  The -- that is certainly not the case we face

5    today which, I believe, is the answer we gave there.

6           THE COURT:  I think the only thing you face today

7    in that regard is -- I agree with -- that we should not be

8    second-guessing the political decision about the wars

9    ongoing and your file indicates that it is.  But is the

10   extent of the association under the AUMF on the territorial

11   war being related to other terrorists elsewhere?  If ISIS

12   appears in Libya aligned with a local warlord who has not

13   pledged allegiance to al-Qaeda, can we capture the ISIS

14   people and put them in Guantanamo under the Authorization

15   for Use of Military Force?  Is that an associated group?

16          MR. WILTSIE:  Well, Your Honor, it may very well

17   be that when that day comes, myself or one of my associates

18   will stand before the Court and argue that very fact; that

19   -- for that very conclusion; however, we're not there yet.

20   Al-Qaeda is still present in Afghanistan, as the generals --

21   as the statements by the generals that we put in the record

22   attest.  They are still fighting al-Qaeda; they are still

23   fighting the Taliban; and they are still fighting their

24   associated forces in Afghanistan.  That is the conflict for

25   which these detainees were detained and active hostilities

1    are ongoing against that -- for that conflict and,

2    therefore, Your Honor, they're detainable.  If they have an

3    argument that they were never detained for that conflict,

4    that's a merits decision that they need to bring forward and

5    prosecute themselves.  It's not a question for this Court on

6    this motion today.

7          Your Honor, just briefly, as to the political

8    branches, it's clear the Executive, as Judge Leon noted just

9    last year, considers the hostilities to be ongoing against

10   al-Qaeda/the Taliban in Afghanistan.  The evidence there is

11   the semi-annual War Powers Resolutions Letters.  We filed

12   the last one with the Court on Monday.  In it, both

13   Presidents Trump and President Obama have continually stated

14   that we remain engaged since 9/11 -- or since, actually,

15   October 2001 against the -- against al-Qaeda, the Taliban

16   and associated forces.

17         As to Congress, Judge Leon found the 2012 National

18   Defense Authorization Act dispositive.  There, Congress

19   endorsed the President's ability to detain individuals under

20   the AUMF until the end of hostilities.  That had two

21   implications for Judge Leon.  The first was clearly that as

22   of 2012, hostilities were ongoing; and the second was in the

23   interim between 2012 and 2017, Congress had never repealed,

24   revoked or otherwise declared that hostilities had ended.

25   So he implied that Congress still believed active

1    hostilities were ongoing.

2              Thus, Your Honor, we turn to the due process

3    clause --

4              THE COURT:  Right.

5              MR. WILTSIE:  -- which --

6              THE COURT:  Why wouldn't that apply on a

7    functional analysis?  It would be no more anomalous to use

8    Article 1, Section 9 ex post factos than to apply the habeas

9    corpus of Article 1, Section 9.  Why wouldn't -- lead to

10   that conclusion following Boumediene's analysis?  I'm trying

11   to parse that out because, on one hand, I have individuals

12   who are not refugees who did not want to come here for any

13   reason whatsoever who are forced to be here who are now

14   demanding constitutional rights and have no legitimate right

15   to be here except being forced to be here as opposed to

16   refugees, etcetera, who are facing now a different problem.

17   Boumediene, however, they -- it was determined by the

18   Supreme Court that -- using a functional analysis that

19   extended habeas corpus rights to non-citizens, detainees.

20   And under the same section, why wouldn't it be right to give

21   them other rights of due process?  Broader rights.

22             MR. WILTSIE:  Well, Your Honor, I start with the

23   Court of Appeals's opinion in Rasul where they rejected that

24   approach specifically.  Second, Your Honor, the -- Kiyemba

25   itself involved a due process right and a right of entry

1    into the United States, but also a right of release.

2              THE COURT:  Rasul was remanded from the Supreme

3    Court.

4              MR. WILTSIE:  Yes, Your Honor.

5              THE COURT:  And they reissued the opinion stating

6    -- or the judgment, what they said, on a more limited basis.

7              MR. WILTSIE:  They -- as we were discussing, Your

8    Honor, you can point to the fact that Rasul mentions Kiyemba

9    in dicta; however, they did reinstate the decision and they

10   did, in doing so, state they were unwilling to apply a

11   functional analysis.  They were unwilling to extend the

12   rationale of Boumediene beyond the suspension clause.

13             THE COURT:  If more due process rights do apply,

14   is that separate, then, from the authorized use of military

15   force?  The statute.  Constitutionally, does that call more

16   question to the continued long duration of detention?  Does

17   it provide them with different kinds of evidentiary rulings

18   and presumptions that have been provided in the past?  Does

19   that --

20             MR. WILTSIE:  No, Your Honor.

21             THE COURT:  -- necessarily give more rights to the

22   --

23             MR. WILTSIE:  No, I -- no, Your Honor.  I think

24   the answer to that question is, the law of -- under the due

25   process clause, the law of wars and detention under the law

1    of wars is sui generis.  As the Court of Appeals said in

2    Ali, it's not punishment.  Its purpose is solely to

3    prevent retain -- return to the battlefield and there is no

4    time limit.  And the reason there's no time limit is it's

5    cabined by an objective fact, the end of hostilities.  And

6    accordingly, Your Honor, they -- we would still be able to

7    detain them until the end of active hostilities.  The due

8    process clause doesn't affect that.  As the Court pointed

9    out Judge Randolph's opinion, the preponderance of the

10   evidence standard, the question has always been whether the

11   preponderance of the evidence standard is too high for the

12   Government to have to sustain, not too low, and so I don't

13   think the due process clause changes anything.

14           They miscast the due process argument in two ways.

15   They say it's, essentially, perpetual detention for -- or to

16   prevent them -- the petitioners from being dangerous.  The

17   first -- the second part of that, dangerousness, is simply

18   inapposite here.  Law of war detention is not a -- under law

19   of war of detention, it is not a question whether an enemy

20   combatant, if released, would return to the battlefield.

21   The question is whether the enemy combatant, if released,

22   could return to the battlefield.  And that is why the laws

23   of war are clear and allow detention until the end of active

24   hostilities.  Certainly, some detainees -- some enemy

25   combatants who are released during wars will not return to

1    battle -- to the battle.  They'll choose not to.  They'll go

2    into hiding.  They'll doing some.  The question is, once you

3    have a detainee, whether he could return to the battlefield.

4         As for the perpetual war aspect, Your Honor, we

5    talked about that before.  First of all, they believe it's a

6    forever war, but they don't know that; we don't know that.

7    We can only tell when the war is over when active

8    hostilities end.  Second, Your Honor, they miscast this as

9    the war having unraveled; having morphed, but as I pointed

10   out, the question here for this Court is whether the initial

11   battle is the same.  The analogy, Your Honor, to play off of

12   one Mr. Azmy uses, December 8th, 1941, did the Germans and

13   the Italians release their French and English prisoners

14   because we entered the war?  The answer to that is no.  The

15   initial war started in Afghanistan and it is ongoing today.

16   That it may have grown is irrelevant to the ongoing

17   detention of these petitioners.

18        Lastly, Your Honor, I would point out that as to

19   the other procedural due process aspects that they

20   challenge, the procedures and evidentiary rulings, those are

21   rulings of the Court of Appeals and they're binding here.  I

22   would also point out, Your Honor, as I mentioned earlier,

23   only one of these detainees has taken the case to merits.

24   As to the other seven, we suggest the proper procedure, if

25   they want to challenge those evidentiary procedures, is to

1    take their case to merits.  If they lose, they, then, have

2    an argument in the Court of Appeals, as applied, that the

3    standard affected their outcome, and that is the proper path

4    for them, not this, essentially, facial challenge they bring

5    today.

6         Your Honor, in conclusion, in Ali, the Court of

7    Appeals stated that it's not the judiciary's proper role to

8    devise a novel detention standard that would vary with the

9    length of detention.  And, rightly so, for -- if you did so,

10   Your Honor, you would be undercutting the law of war

11   principle that prevents enemy combatants from returning to

12   the fight and you'd be endorsing a system in which the enemy

13   combatants -- petitioners here -- could, essentially, run

14   out -- they could have their compatriots run out the clock,

15   much like a penalty kill in hockey, and they could return to

16   the battlefield.  We note here that petitioners make no

17   claim that they would not return to the fight.  We urge this

18   Court to adhere to the binding precedent which we argue

19   disposes of all the issues in this case and to deny them the

20   relief that they seek.

21        THE COURT:  Thank you, Mr. Wiltsie.  I appreciate

22   the argument.

23        Mr. Azmy, you'd like to come back and have a short

24   rebuttal?

25        MR. AZMY:  I would, Your Honor, if I could just

1    clarify one technical question; then address some of the

2    outstanding arguments.

3              So we've referred to Mr. Al-Bihani a number of

4    times.  I want to be clear that Mr. Al-Bihani in the D.C.

5    Circuit opinion is Ghaleb, who was released.  Tofiq

6    Al-Bihani is still --

7              THE COURT:  Are they brothers, as I understand it?

8              MR. CLARKE:  They are brothers, Your Honor.

9              THE COURT:  Yes, that's what I understood.

10             MR. AZMY:  So if I could address the due process

11   argument while noting that Mr. Wiltsie did not answer your

12   question about why it would be improper or anomalous to

13   apply the due process clause, given that we've had

14   suspension clause hearings, he mentions that, you know,

15   Supreme Court has said lower courts should respect dicta.

16   But what about the Court of Appeals?  The subsequent panels

17   of Kiyemba have read Kiyemba I narrowly on its facts; four

18   Supreme Court Justices have read it that way; and the Al

19   Bahlul opinion has read it that way.  This is not a matter

20   of rogue District Courts disobeying the Court of Appeals.

21             THE COURT:  What about Mr. Wiltsie's last point,

22   though?  If you haven't had an actual trial for any of these

23   individuals, how are you going to show that a different

24   burden or more process, in other words, owed to them?

25   Separating out the duration of the -- them being held in

 1    prison --

 2              MR. AZMY:  Sure.

 3              THE COURT:  But just that they come before a court

 4    here and you're saying, Well, there should have been a

 5    different process here in the court for considering the

 6    evidence.  I mean, how can you show that that needs to be

 7    done with an actual hearing?  And then they appeal saying,

 8    If you'd have had a different burden, I could have won this;

 9    if you'd have allowed different evidence in, I could have

10    won this, you know?  Don't you need a hearing for these

11    individual cases first?

12              MR. AZMY:  Yes, Your Honor.  Let me answer that.

13    That's this question about addressing the cases on the

14    merits.  If Your Honor doesn't agree that all of these

15    detentions are unlawful on their face, there may be merits

16    hearings, but our position is the merits hearings have to

17    look differently than they've looked at before, because due

18    process imposes durational limits.  It would not permit

19    continuing detention based on past association.  That's the

20    criminal context, and it has to be forward-looking and the

21    Government would have to be able to overcome, in our view,

22    by clear and convincing evidence that the individuals would

23    not -- would return to the battlefield, overcoming some of

24    the evidence we have, including evidence from the cleared

25    petitioners.  And I would separately say, Your Honor can

1    rule on behalf of the cleared petitioners based on the

2    arguments we've already made and has equitable power to

3    divide up these cases however you wish, but if we had a

4    remand merits hearing, we are seeking a rule of law where

5    due process would apply and all of the accordant procedures

6    that would come to that.

7         With respect to the AUMF which is a separate

8    argument, they continue the mantra that there is no time

9    limit and it's a political question, but Hamdi was very

10   clear that these detentions under the law of war have to be

11   temporary, connected to a purpose, a purpose that is

12   connected to preventing a return to the battlefield.

13        And then separately, Hamdi itself -- and the

14   Government ignores this -- has its own limitation -- a

15   sunset clause, so to speak -- that speaks directly to the

16   idea that these detentions cannot be perpetual.  Mr. Hamdi

17   presents Justice O'Connor with this quandary.  Under this

18   view of the law, I could be detained for a lifetime.

19   Justice O'Connor says that is not -- that is a very serious

20   concern.  So while his detention is permissible, having been

21   captured two years before with a Kalashnikov on the

22   battlefield, there may come a time when the practical

23   circumstances of a conflict are so unlike those that inform

24   the laws of war that the detention authorization, now 17

25   years in effect, has unraveled.  And we submit that any

1    conflict where the Government can point to sorties and troop

2    levels year after year after year and that it could last

3    forever does not resemble past conflicts that inform the

4    laws of war and where the Government gets to define in a

5    self-serving way the boundaries of that conflict.  The

6    courts and, I think, Justice O'Connor are clear it cannot

7    accept that.  I need to -- and the other piece of this is

8    the -- Hamdi permits detention to prevent return to a

9    battlefield in the particular conflict that existed.

10          And if you'll indulge me, Your Honor, I would like

11   to develop for the record -- because I know, maybe, some

12   other judges will be reviewing this transcript -- some of

13   the additional -- the evidence that comes from the

14   Government's analysis about what this conflict looks like

15   now.  So in their exhibits which rely on congressional

16   testimony, press briefings, etcetera, to say that

17   circumstances are like they were in 2001, al-Qaeda is barely

18   mentioned.

19          With respect to al-Qaeda, the press briefing by

20   the Commander of Operation Resolute Support in Afghanistan

21   says, Al-Qaeda and Afghanistan is primarily in the form of

22   al-Qaeda on the Indian subcontinent.  Most of al-Qaeda is

23   trying to hide, essentially.  Second, when al-Qaeda -- core

24   al-Qaeda, quote, is mentioned, the threat to attack in the

25   U.S. is described as aspirational.  Core al-Qaeda is not

1    described as an organized armed group in its current form.

2    That comes from Exhibit-20 where the Director of National

3    Counterterrorism Center says, We have constrained al-Qaeda's

4    effectiveness and its ability to recruit, train and deploy

5    operatives.

6          And as for the Taliban, much of the sourcing

7    describes it as a counter-narcotics campaign against the

8    Taliban in Afghanistan, a strike on poppy fields.  In

9    Exhibit-15, Senate testimony from the Commander of Operation

10   Resolute Support in Afghanistan says, We believe that the

11   Taliban have evolved into a criminal or narco insurgency.

12   They are fighting to defend their revenue streams.  They

13   have increasingly lost whatever ideological anchor they once

14   had.

15         And, to be clear, we're not resting on the fact

16   that the conflict has changed.  Our primary argument is that

17   the duration is too long and for the Government -- it -- the

18   conflict itself looks unlike any other conflict when the

19   Government can always point to some source that says there

20   is a danger and there have to be limits on that piece.

21         With respect to the transfer process, the -- Mr.

22   Wiltsie says it is hoped that some will be released, as if,

23   you know, mistakes were made.  He says it's a complicated

24   process.  Maybe.  But, Your Honor, we know that process will

25   not be undertaken until the -- and unless the Court orders

 1     it.

 2              With respect to Secretary Mattis, Mr. Wiltsie

 3     points to -- I think it's Section 3 of the executive order

 4     where he was -- where it says, Nothing in this order shall

 5     prevent the Secretary of Defense from transferring

 6     individuals away from the U.S. naval base.

 7              THE COURT:  Right.

 8              MR. AZMY:  Well, in a May 2nd, 2018, CNN

 9     interview, Secretary Mattis says, quote, Right now, I am not

10     working on that issue.  Again, he will not, absent a Court

11     order.

12              In conclusion, Your Honor, you know, I've been,

13     regrettably, working on these cases for 15 years, as has

14     Your Honor.  And this -- the present government's legal

15     mantra -- we can detain anyone until the end of

16     hostilities -- reminds me eerily of the mantra in 2002 to

17     2004 which is the, you know -- foreign nationals held on

18     foreign soil are entitled to no rights that this Court is

19     bound to respect.  It's like the earlier position.  And in

20     both cases, what strikes me is the Government erogate --

21     cites international human rights law, yet erogates to itself

22     all of the power that comes from the law -- that law.  At

23     the same time, it rejects any constraints that come with

24     that law, and that is not law.  That is just unchecked,

25     unbounded Executive authority, because international human

1    rights law is designed to constrain the Executive's

2    authority to detain, not to give it license, and I think the

3    Government has that law upside down.  So we think the

4    Executive and this particular Executive -- the time has run

5    for deference to the kinds of arguments the Government has

6    made and the courts have to say so.

7              THE COURT:  I appreciate that.  And, as I've said,

8    I appreciate the work and I understand the concerns, I

9    believe, of the detainees after many years of being detained

10   and in the -- for the -- originally having been charged as

11   being part of al-Qaeda or associated factors.  I think one

12   of the instructive things in this is that it -- I'm pleased

13   that Mr. Azmy went back to Hamdi which is really the

14   essential case prior to Boumediene.  The difference which is

15   key, however, Mr. Hamdi was an American citizen, but Justice

16   O'Connor wrote that opinion, and I think a lot of that is

17   important to follow.

18             Thank you, Mr. Azmy.  You can sit down.

19             MR. AZMY:  Thank you.

20             THE COURT:  I'm going to get into a soliloquy

21   instead of an argument at this point.

22             Is -- her language in that case, I think, is very

23   instructive, although, as I've said, there was a key

24   difference where he was a citizen, but Mr. Hamdi argued

25   before the Supreme Court that, Congress has not authorized

1      the indefinite detention to which he is now subject.  Hamdi

2      contends the AUMF does not authorize indefinite/perpetual

3      detention.  Certainly, we agree that indefinite detention

4      for the purpose of interrogation is not authorized.

5      Further, we understand Congress's grant of authority for the

6      use of necessary and appropriate force, to include the

7      authority to detain for the duration of the relevant

8      conflict.  Our understanding is based upon longstanding

9      war-of-law [sic] principles.  If the practical circumstances

10     of a given conflict are entirely unlike those of the

11     conflict that informed the development of the law of war,

12     that understanding may unravel.  But that is not the

13     situation we face as of this date.  That was 2004.  Active

14     combat operations against Taliban fighters are apparently

15     ongoing in Afghanistan, and then she holds, The United

16     States may detain, for the duration of these hostilities,

17     individuals legitimately determined to be Taliban combatants

18     who engaged in armed conflict against the United States.  If

19     the record establishes United States troops are still

20     involved in active combat in Afghanistan, these detentions

21     are part of the exercise of necessary and appropriate force

22     and, therefore, authorized by the AUMF.

23           And she goes on as follows, but she also talks

24     about due process.  Even in cases in which the detention of

25     enemy combatants is legally authorized, there remains the

1   question of what process is constitutionally due a

2   citizen -- so it's a citizen; we have non-citizens here --

3   who dispute his enemy-combat status.  Our resolution of this

4   dispute requires a careful examination of both the writ of

5   habeas corpus which Hamdi now seeks to employ as a mechanism

6   of judicial review and of the due process clause which

7   informs the procedural contours of that mechanism in this

8   instance.  Since he's a citizen, obviously, due process

9   applies to him.

10          And she goes on to discuss what to do, and it's

11   obviously -- it was a plurality opinion with several other

12   concurring and dissenting opinions, especially Justice

13   Scalia, as to what rights are accorded this citizen

14   charged or this non-citizen, but she does point out as to --

15   relevant to the proceedings that we have had in these cases

16   the following things:

17          For more than a century, the meaning of procedural

18   due process has been clear.  Parties whose rights are to be

19   affected are entitled to be heard.  And in order -- heard --

20   they may enjoy that right, they must first be notified.

21   It's equally a fundamental right the right to notice,

22   opportunity to be heard must be granted at a meaningful time

23   and in a meaningful manner.  These essential constitutional

24   promises may not be eroded.

25          Then she concludes, At the same time, the

1    exigencies of the circumstances may depend -- may demand

2    that, aside from these core elements, enemy combatant

3    proceedings may be tailored to alleviate their uncommon

4    potential to burden the Executive at a time of ongoing

5    military conflict.  Hearsay, for example, may need to be

6    accepted as the most reliable available evidence from the

7    Government in such proceedings.  Likewise, the Constitution

8    would not be offended by a presumption in favor of the

9    Government's evidence, so long as that presumption remains

10   rebuttable and fair opportunity for rebuttal were provided.

11   So thus, once the Government puts forth credible evidence

12   that the habeas petitioner meets the combatant --

13   enemy-combatant criteria, the onus could shift to petitioner

14   to rebut that evidence with more persuasive evidence that he

15   falls outside the criteria, and goes on to discuss, this

16   satisfies the Constitution.

17          The option of this court was that more strict

18   presumption against the Government; that they had the burden

19   to produce evidence beyond -- by a preponderance that, then,

20   could be rebutted by the defendant.  That presumption was

21   not in favor of the Government.  And she went on to discuss

22   about those continued to hold -- those who have been

23   continued to -- and it said, That process is due only when

24   the determination is made to continue to hold those who have

25   been seized, but obviously, she concluded that at this

1   juncture, it was sufficient.  But she did discuss clearly to

2   me that there are due process concerns that you could

3   review.  She also approved, obviously, in here the military

4   tribunals as a method.

5          And, finally -- which I've always appreciated a

6   District Court judge -- she says at the end, We anticipate

7   that a District Court would proceed with the caution that we

8   have indicated is necessary in this setting, engaging in a

9   fact-finding process that is both prudent and incremental.

10  We have no reason to doubt that courts faced with these

11  sensitive matters will pay proper heed to both the matters

12  of national security that might arise in individual cases

13  and to the constitutional limitations safeguarding essential

14  liberties that remain vibrant even in times of security

15  concerns.  And, as a result, we inherited all these cases

16  and we have been trying to work our way through these

17  concerning the rights of these individual detainees, along

18  with the Government's interests in national security.

19         There is obvious sympathy for these detainees

20  being held for up to 15 or 16 years at this point without

21  any charges being brought against them as being engaged in

22  criminal acts of terrorism, etcetera, without any military

23  commissions being raised against them, the particular ones

24  before me.  And with evidence that their reluctance, if not

25  outright refusal, to release any of these individuals under

1    the criteria established by the presidential executive

2    orders, including those of President Obama that remain in

3    effect as well as President Trump's that do consider and

4    discuss release of these individuals as being appropriate

5    under the circumstances in the discretion of the Secretary

6    of Defense.

7           The Court is left with substantial attacks on the

8    viability of the present system that has been in effect for

9    the treatment of these detainees' concerns, not only on an

10   as-applied basis -- and that is to the evidentiary standards

11   and the burden of proof alleging that it's not sufficient

12   due process -- but on a facial basis that the whole

13   proceedings are improperly organized.  If you consider the

14   cases in our court and the Supreme Court, reading the tea

15   leaves of those cases -- not the actual statement, what they

16   say they hold -- as not requiring the courts to be so

17   accepting of the process -- of the statement that due

18   process does not apply to these detainees beyond which the

19   Supreme Court has already determined and that, basically,

20   both the Authorization for Use of Military Force and under

21   the Constitution, they have been given all the rights

22   they're entitled to and there's still a legitimate detention

23   of these individuals because of the ongoing conflict because

24   of -- they're related to associated individuals with

25   al-Qaeda or the Taliban which would include Islamic State of

1    Iraq and Syria individuals as well as others, and that they

2    asked the Court to not follow which is at least the dicta,

3    if not the actual holdings of our Circuit, and to applying

4    this enhanced due process to hold that indefinite -- not

5    indeterminate, but indefinite -- detention is

6    unconstitutional or is also in violation of AUMF as no

7    longer being related to the purpose of the AUMF to detain

8    these people who have been allegedly in support of al-Qaeda,

9    the Taliban or associated forces engaged in hostilities

10   against the United States.

11           I'm going to take the matter under advisement.  I

12   do think that the petitioners, with their substantial

13   support of all the lawyers that work so hard in these cases,

14   have presented some serious issues.  I do not, however, come

15   away convinced that this Court has a position to overrule

16   our Court of Appeals and interpret what the Supreme Court --

17   some of the Supreme Court judges may have said or some of

18   our judges may have said as the law that applies to these

19   cases as opposed to the law of this Circuit that seems

20   fairly clear, at least in some of the Circuit opinions.

21   There are some conflicts and some more involved issues in

22   some of these cases; that I will trace them.

23           But I do want to note for the record, again, how

24   much these attorneys who are volunteer attorneys have meant

25   to the Court and to our system of justice representing these

1    individuals who are detained, who have been detained for

2    many, many years -- as long as, I'm sure, the average

3    sentence is for very serious crimes in the United States --

4    who yet have no seen way of being released.  Whether that's

5    been foreclosed because of the announcements of the

6    President or because of the actions taken by the Executive

7    to date and which may conflict with the executive orders, we

8    will review.  But the Court appreciates the work that has

9    been done, and it is an ongoing issue that I'm sure the

10   Court and all the judges who handle these cases would like

11   to see finally resolved in a reasonable time frame.

12            So with that, I'm going to, again, thank counsel;

13   thank counsel for the Government; and we'll stand in recess.

14   Thank you.

15            MR. AZMY:  Thank you, Your Honor.

16            THE DEPUTY CLERK:  All rise.  This Honorable Court

17   stands adjourned.

18            (Proceedings concluded at 12:37 p.m.)

19   * * * * * * * * * * * *
     **CERTIFICATE OF OFFICIAL COURT REPORTER**

20   I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify
     that the above and foregoing constitutes a true and accurate

21   transcript of my stenographic notes and is a full, true and
     complete transcript of the proceedings to the best of my

22   ability, dated this 25th day of July 2018.

23                              /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                                Official Court Reporter

24                              United States Courthouse
                                Room 6722

25                              333 Constitution Avenue, NW
                                Washington, DC 20001

**'** [1]

**'17** [3] - 42:13, 42:21, 47:13

**0**

**04-1194** [1] - 3:4

**1**

**1** [2] - 52:8, 52:9
**10** [2] - 23:17, 30:9
**100** [2] - 37:12
**10012** [1] - 1:14
**10023** [1] - 2:3
**10163** [1] - 2:13
**11** [1] - 1:4
**1102** [1] - 21:4
**116** [1] - 36:22, 36:25
**116-year** [1] - 36:19
**11:00** [1] - 1:4
**12** [1] - 38:6
**12:37** [1] - 70:18
**13823** [2] - 24:14, 45:13
**1437** [1] - 2:10
**14th** [1] - 36:18
**15** [3] - 23:17, 62:13, 67:20
**150** [1] - 2:3
**1543** [1] - 2:6
**15th** [1] - 36:18
**16** [5] - 6:21, 6:23, 19:22, 20:3, 67:20
**16th** [1] - 9:19
**17** [1] - 59:24
**1789** [2] - 21:20, 23:8
**18th** [1] - 21:23, 42:7
**1941** [1] - 55:12
**1:04-cv-01194** [1] - 1:2

**2**

**2** [1] - 45:24
**2,000** [1] - 47:21
**20** [4] - 1:23, 15:23, 28:2, 28:3
**20001** [1] - 2:17
**20006** [1] - 1:17
**2001** [2] - 51:15, 60:17
**2002** [1] - 62:16
**2004** [2] - 62:17, 64:13
**2008** [1] - 20:24
**2010** [6] - 21:3, 25:22, 26:2, 31:4, 38:7, 48:18
**2012** [3] - 51:17, 51:22, 51:23
**2016** [1] - 38:9

**2017** [3] - 39:2, 47:13, 51:23
**2018** [5] - 1:4, 9:19, 42:7, 47:14, 62:8
**202** [3] - 1:17, 1:24, 2:18
**20530-0001** [1] - 1:24
**212** [2] - 1:14, 2:4
**2446** [1] - 1:19
**25** [1] - 16:3
**28th** [1] - 29:2
**29** [1] - 31:6
**2nd** [1] - 62:8

**3**

**3** [1] - 62:3
**30** [4] - 28:2, 31:5, 31:7, 32:13
**30-day** [2] - 29:3, 29:4
**303** [2] - 2:7, 2:11
**307-1401** [1] - 1:24
**30th** [1] - 24:19
**312** [1] - 1:20
**333** [1] - 2:17
**354-3111** [1] - 2:18
**3627** [1] - 2:13
**376-8446** [1] - 2:14
**3rd** [1] - 46:21

**4**

**40** [3] - 18:18, 47:20, 48:4
**400** [1] - 2:6
**41** [1] - 47:20
**43** [1] - 27:8

**5**

**569** [1] - 4:23
**571-1000** [1] - 2:7

**6**

**60614** [1] - 1:20
**613** [1] - 21:4
**614-6452** [1] - 1:14
**62nd** [1] - 2:3
**636-6941** [1] - 2:4
**666** [1] - 1:13
**6722** [1] - 2:16

**7**

**700** [1] - 32:25
**7th** [1] - 1:13

**8**

**80202** [1] - 2:7
**80218** [1] - 2:10
**815** [1] - 1:16
**835-6184** [1] - 1:17
**860-1331** [1] - 2:11
**8th** [1] - 55:12

**9**

**9** [4] - 30:11, 52:8, 52:9
**9/11** [4] - 16:8, 38:20, 38:23, 51:14
**90** [1] - 24:18
**90-day** [2] - 25:5, 45:9
**913-9300** [1] - 1:20
**929** [1] - 2:14
**9th** [1] - 2:3

**A**

**a.m** [1] - 1:4
**abandoned** [1] - 24:7
**Abdu** [3] - 3:3, 3:20, 31:11
**ABDU** [1] - 1:2
**Abdul** [3] - 4:25, 5:10, 38:6
**ability** [4] - 6:7, 12:14, 51:19, 61:4
**able** [6] - 8:21, 20:13, 23:23, 48:8, 54:6, 58:21
**absence** [2] - 16:23, 17:1
**absent** [2] - 26:9, 62:10
**absolute** [2] - 20:7, 21:21
**absolutely** [1] - 32:1
**accept** [3] - 43:12, 44:14, 60:7
**accepted** [1] - 66:6
**accepting** [1] - 68:17
**accessibility** [1] - 6:4
**accordance** [1] - 43:25
**accordant** [1] - 59:5
**accorded** [1] - 65:13
**according** [3] - 21:17, 38:5, 48:18
**accordingly** [1] - 54:6
**account** [1] - 28:6
**accurate** [1] - 48:22
**acknowledge** [1] - 34:11
**acknowledged** [1] - 34:12

**Act** [1] - 51:18
**Action** [1] - 3:4
**actions** [2] - 15:24, 70:6
**active** [17] - 10:7, 15:9, 35:14, 36:12, 38:3, 39:17, 40:21, 48:7, 49:12, 50:25, 51:25, 54:7, 54:23, 55:7, 64:13, 64:20
**acts** [1] - 67:22
**actual** [5] - 44:24, 57:22, 58:7, 68:15, 69:3
**Adahi** [4] - 21:3, 22:7, 22:10, 22:19
**addition** [1] - 18:20
**additional** [2] - 47:25, 60:13
**additionally** [4] - 4:6, 6:3, 28:1, 47:5
**address** [7] - 11:14, 15:5, 23:1, 31:18, 32:10, 57:1, 57:10
**addressing** [1] - 58:13
**adequate** [1] - 43:13
**adhere** [2] - 44:1, 56:18
**adjourned** [1] - 70:17
**administration** [12] - 9:3, 9:5, 14:2, 19:15, 26:14, 26:19, 26:22, 26:23, 28:11, 28:21, 28:23, 30:24
**admission** [1] - 15:13
**admit** [1] - 27:21
**admonition** [1] - 13:14
**adopted** [2] - 20:23, 21:5, 21:24
**adversary** [1] - 22:12
**advisement** [1] - 69:11
**Advocates** [1] - 34:18
**affect** [1] - 54:8
**affected** [2] - 56:3, 65:19
**affecting** [1] - 22:13
**affiliate** [1] - 16:7
**affiliates** [1] - 16:7
**Afghanistan** [17] - 17:2, 37:25, 38:14, 39:6, 39:11, 39:15, 39:18, 50:20, 50:24, 51:10, 55:15, 60:20, 60:21, 61:8, 61:10, 64:15, 64:20
**Afghanistan-related** [1] - 39:6
**Africa** [1] - 17:9, 38:12
**agencies** [2] - 24:23,

45:17
**aging** [1] - 48:5
**ago** [8] - 17:19, 19:22, 20:3, 20:24, 23:17, 23:18, 24:19, 44:23
**agree** [10] - 13:2, 13:3, 13:23, 20:7, 40:19, 45:7, 50:7, 58:14, 64:3
**agreed** [2] - 6:8, 22:10
**agreement** [2] - 27:2, 49:20
**agreements** [1] - 24:6
**agrees** [1] - 49:24
**ahead** [1] - 8:24
**Ahmed** [2] - 5:9, 9:21
**aided** [1] - 2:20
**Al** [34] - 3:15, 3:18, 3:19, 4:12, 5:10, 11:25, 12:25, 16:20, 17:3, 17:17, 17:19, 19:11, 21:3, 22:7, 22:10, 22:17, 22:19, 27:8, 29:13, 31:11, 33:25, 35:18, 40:3, 40:7, 42:6, 42:14, 48:18, 49:13, 50:20, 57:3, 57:4, 57:6, 57:18, 60:21
**al** [43] - 1:2, 1:5, 3:3, 3:4, 10:9, 15:11, 15:25, 16:1, 16:7, 16:9, 20:3, 22:19, 26:18, 26:24, 37:6, 37:24, 38:11, 38:12, 38:14, 38:19, 38:22, 38:23, 39:7, 39:10, 39:16, 39:17, 50:13, 50:22, 51:10, 51:15, 60:17, 60:19, 60:22, 60:23, 60:24, 60:25, 61:3, 63:11, 68:25, 69:8
**Al-Adahi** [4] - 21:3, 22:7, 22:10, 22:19
**Al-Alwi** [1] - 40:3
**Al-Bihani** [17] - 3:19, 5:10, 11:25, 17:17, 17:19, 19:11, 22:17, 29:13, 31:11, 35:18, 40:7, 42:14, 48:18, 49:13, 57:3, 57:4, 57:6
**Al-Bihani's** [3] - 16:20, 17:3, 42:6
**al-Darbi** [2] - 26:18, 26:24
**al-Haqqani** [1] - 15:25
**al-Qaeda** [32] - 10:9, 15:11, 16:1, 16:7,

16:9, 22:19, 37:6, 37:24, 38:11, 38:12, 38:14, 38:19, 38:22, 38:23, 39:7, 39:10, 39:16, 39:17, 50:13, 50:22, 51:15, 60:17, 60:19, 60:22, 60:23, 60:24, 60:25, 63:11, 68:25, 69:8

**Al-Qaeda** [2] - 50:20, 60:21

**al-qaeda's** [1] - 61:3

**al-Qaeda/the** [2] - 20:3, 51:10

**al-Qahtani** [1] - 15:25

**Ali** [5] - 11:24, 34:16, 36:9, 54:2, 56:6

**aligned** [1] - 50:12

**allegedly** [1] - 69:8

**allegiance** [1] - 50:13

**alleging** [1] - 68:11

**alleviate** [1] - 66:3

**allow** [1] - 54:23

**allowed** [2] - 47:2, 58:9

**almost** [1] - 16:6

**alone** [1] - 14:25

**Alwi** [1] - 40:3

**Amendment** [1] - 11:13

**American** [1] - 63:15

**amicus** [3] - 34:12, 34:15, 34:21

**Amir** [1] - 34:16

**amount** [1] - 15:2

**AMU** [1] - 37:5

**analogy** [1] - 55:11

**analysis** [9] - 19:14, 20:10, 21:19, 42:2, 52:7, 52:10, 52:18, 53:11, 60:14

**Anam** [2] - 3:3, 4:22

**ANAM** [1] - 1:2

**anchor** [1] - 61:13

**announcements** [1] - 70:5

**annual** [1] - 51:11

**anomalous** [6] - 10:20, 10:22, 13:15, 13:17, 52:7, 57:12

**answer** [8] - 28:10, 42:12, 49:3, 50:5, 53:24, 55:14, 57:11, 58:12

**answering** [2] - 10:2, 37:11

**anticipate** [1] - 67:6

**anyway** [1] - 33:25

**apologize** [2] - 45:15, 45:20

**apparent** [1] - 31:13

**appeal** [1] - 58:7

**Appeals** [14] - 35:19, 36:9, 40:7, 41:9, 41:11, 49:13, 49:16, 54:1, 55:21, 56:2, 56:7, 57:16, 57:20, 69:16

**Appeals's** [2] - 17:16, 52:23

**APPEARANCES** [2] - 1:10, 2:1

**appearing** [4] - 3:16, 4:5, 4:9, 4:12

**applied** [3] - 13:7, 56:2, 68:10

**applies** [10] - 10:16, 10:17, 13:1, 13:24, 14:8, 14:11, 23:8, 23:14, 65:9, 69:18

**apply** [19] - 10:19, 10:20, 10:22, 11:6, 11:13, 12:8, 13:11, 14:18, 23:12, 41:2, 42:3, 52:6, 52:8, 53:10, 53:13, 57:13, 59:5, 68:18

**applying** [3] - 5:16, 10:25, 69:3

**appreciate** [7] - 3:22, 14:16, 34:9, 35:17, 56:21, 63:7, 63:8

**appreciated** [1] - 67:5

**appreciates** [1] - 70:8

**apprehended** [1] - 6:22

**approach** [1] - 52:24

**appropriate** [8] - 10:1, 22:9, 24:23, 43:19, 47:4, 64:6, 64:21, 68:4

**approval** [1] - 43:21

**approve** [1] - 49:21

**approved** [1] - 67:3

**Arabia** [3] - 19:4, 19:11, 27:2

**arbitrariness** [2] - 27:3, 27:16

**architecture** [1] - 9:17

**areas** [1] - 17:9

**argue** [5] - 14:19, 34:25, 36:3, 50:18, 56:18

**argued** [3] - 11:3, 36:2, 63:24

**arguendo** [1] - 22:18

**ARGUMENT** [1] - 1:8

**argument** [3] - 4:8, 6:9, 6:20, 10:24, 14:18, 19:17, 20:6,

20:8, 22:4, 23:2, 23:5, 23:13, 32:9, 34:10, 37:14, 38:21, 39:5, 40:1, 40:4, 40:24, 42:5, 49:16, 51:3, 54:14, 56:2, 56:22, 57:11, 59:8, 61:16, 63:21

**arguments** [8] - 6:8, 6:11, 11:16, 13:16, 39:23, 57:2, 59:2, 63:5

**arise** [1] - 67:12

**armed** [4] - 24:25, 46:3, 61:1, 64:18

**Army** [1] - 9:11

**arrange** [2] - 6:5, 24:6

**arranged** [2] - 26:22, 46:14

**arrangements** [3] - 18:24, 19:6, 19:9

**arrivals** [1] - 47:6

**Article** [2] - 52:8, 52:9

**articles** [1] - 16:4

**as-applied** [1] - 68:10

**aside** [2] - 24:14, 66:2

**aspect** [1] - 55:4

**aspects** [1] - 55:19

**aspirational** [1] - 60:25

**assigned** [1] - 47:19

**associated** [16] - 6:25, 7:4, 19:22, 20:2, 37:8, 37:25, 38:18, 38:20, 38:22, 39:10, 50:15, 50:24, 51:16, 63:11, 68:24, 69:9

**associates** [1] - 50:17

**association** [3] - 16:15, 50:10, 58:19

**assume** [2] - 22:17, 45:10

**assurances** [2] - 29:1, 43:13

**assured** [1] - 26:8

**attack** [2] - 38:13, 60:24

**attacks** [3] - 15:21, 38:20, 68:7

**attention** [1] - 41:7

**attenuated** [2] - 7:3, 17:7

**attest** [1] - 50:22

**Attorney** [1] - 24:21

**attorneys** [1] - 69:24

**audio** [1] - 8:20

**AUMF** [11] - 6:20, 10:14, 17:23, 23:20, 50:10, 51:20, 59:7, 64:2, 64:22, 69:6,

69:7

**authoritative** [1] - 16:24, 36:3

**authority** [6] - 9:11, 10:6, 62:25, 63:2, 64:5, 64:7

**authorization** [1] - 59:24

**Authorization** [9] - 36:6, 36:10, 37:6, 38:16, 39:12, 40:10, 50:14, 51:18, 68:20

**authorize** [1] - 64:2

**authorized** [6] - 36:6, 53:14, 63:25, 64:4, 64:22, 64:25

**authorizes** [1] - 36:10

**available** [3] - 6:11, 44:14, 66:6

**Avenue** [3] - 1:16, 1:23, 2:17

**average** [1] - 70:2

**aware** [3] - 21:23, 25:23, 43:23

**AZMY** [61] - 3:8, 3:9, 3:12, 3:13, 6:18, 7:13, 7:16, 7:18, 7:21, 7:24, 8:6, 8:9, 8:13, 8:18, 9:1, 11:4, 11:9, 11:14, 11:18, 11:23, 12:2, 12:12, 12:17, 12:21, 13:5, 13:13, 13:20, 14:4, 15:4, 17:15, 17:18, 18:15, 19:2, 19:5, 19:9, 20:18, 20:20, 20:25, 23:1, 23:4, 25:7, 25:12, 25:25, 26:3, 26:6, 26:13, 26:17, 26:24, 32:10, 32:13, 32:23, 33:1, 33:5, 33:12, 33:15, 56:25, 57:10, 58:2, 58:12, 63:19, 70:15

**Azmy** [12] - 1:11, 3:8, 3:12, 6:17, 32:8, 35:4, 43:10, 43:16, 55:12, 56:23, 63:13, 63:18

**B**

**backward** [1] - 20:11

**backward-looking** [1] - 20:11

**Baher** [3] - 1:11, 3:8, 3:12

**Bahlul** [2] - 12:25, 57:19

**Bajabu** [1] - 5:10

**Baker** [1] - 30:7

**BAKER** [1] - 1:16

**banc** [2] - 14:10, 17:20

**bare** [1] - 9:3

**barely** [1] - 60:17

**Basardh** [1] - 12:12

**base** [1] - 62:6

**based** [12] - 9:10, 16:15, 19:20, 19:24, 20:9, 32:15, 34:15, 42:15, 46:21, 58:19, 59:1, 64:8

**basis** [6] - 7:3, 7:7, 8:1, 53:6, 68:10, 68:12

**battle** [8] - 17:13, 28:4, 28:5, 37:23, 55:1, 55:11

**battlefield** [15] - 18:2, 18:21, 20:4, 20:15, 23:24, 43:15, 54:3, 54:20, 54:22, 55:3, 56:16, 58:23, 59:12, 59:22, 60:9

**Bay** [3] - 25:2, 45:19, 46:20

**bear** [1] - 21:11

**become** [1] - 46:19

**beefing** [1] - 25:18

**BEFORE** [1] - 1:8

**begin** [1] - 21:19

**beginning** [2] - 5:21, 14:18

**behalf** [4] - 4:12, 4:22, 4:25, 59:1

**Bennis** [2] - 2:12, 5:9, 9:20

**BENNIS** [1] - 5:8

**best** [3] - 8:23, 12:10, 33:21

**better** [1] - 8:25

**between** [3] - 18:9, 18:10, 51:23

**beyond** [5] - 19:13, 41:1, 53:12, 66:19, 68:18

**Bihani** [20] - 3:19, 5:10, 11:25, 17:4, 17:17, 17:19, 19:11, 22:17, 29:13, 31:11, 35:9, 35:12, 35:18, 40:7, 42:14, 48:18, 49:13, 57:3, 57:4, 57:6

**Bihani's** [4] - 16:20, 17:3, 30:1, 42:6

**binding** [7] - 12:6, 27:1, 36:2, 40:20, 41:3, 55:21, 56:18

**board** [2] - 25:22, 39:3

**boards** [2] - 47:7, 49:7
**Boumediene** [13] - 10:18, 10:21, 11:3, 11:8, 13:14, 21:14, 21:18, 41:10, 41:15, 52:17, 53:12, 63:14
**Boumediene's** [1] - 52:10
**bound** [2] - 12:10, 62:19
**boundaries** [1] - 60:5
**boundary** [1] - 10:10
**bounded** [1] - 10:6
**boundless** [1] - 16:10
**Box** [1] - 2:13
**Branch** [1] - 1:23
**branches** [3] - 17:2, 49:14, 51:8
**Breyer** [1] - 40:12
**brief** [6] - 6:2, 6:20, 34:14, 34:21, 36:2, 46:9
**briefing** [2] - 6:15, 60:19
**briefings** [2] - 16:5, 60:16
**briefly** [2] - 49:11, 51:7
**briefs** [3] - 22:5, 22:7, 34:12
**bring** [4] - 38:23, 39:23, 51:4, 56:4
**broad** [1] - 24:4
**broader** [3] - 11:6, 11:7, 52:21
**Broadway** [1] - 1:13
**brothers** [2] - 57:7, 57:8
**brought** [2] - 6:7, 67:21
**bullets** [1] - 15:17
**burden** [9] - 7:3, 20:22, 21:11, 22:24, 57:24, 58:8, 66:4, 66:18, 68:11
**burden's** [1] - 21:6
**burdens** [1] - 8:15
**bureau** [1] - 10:1
**bureaus** [1] - 10:2
**Bush** [1] - 32:19
**bush** [1] - 32:24

## C

**CA** [1] - 1:2
**cabin** [1] - 12:21
**cabined** [1] - 54:5
**campaign** [3] - 9:7, 46:22, 61:7
**cannot** [9] - 13:23,

16:14, 20:9, 20:10, 23:16, 36:15, 43:5, 59:16, 60:6
**capacious** [1] - 26:7
**capture** [1] - 50:13
**captured** [3] - 24:25, 46:3, 59:21
**care** [6] - 47:18, 47:19, 47:21, 48:6, 48:9, 48:14
**careful** [1] - 65:4
**Carter** [6] - 28:10, 28:20, 29:3, 30:14, 42:13, 42:22
**case** [18] - 7:5, 12:16, 16:20, 21:3, 21:5, 22:11, 22:17, 30:19, 35:6, 35:16, 42:1, 49:19, 50:4, 55:23, 56:1, 56:19, 63:14, 63:22
**cases** [35] - 4:5, 5:18, 5:21, 7:12, 11:11, 11:12, 12:6, 12:9, 12:17, 18:7, 21:9, 21:16, 21:25, 22:13, 27:22, 32:14, 32:23, 35:14, 35:15, 42:8, 58:11, 58:13, 59:3, 62:13, 62:20, 64:24, 65:15, 67:12, 67:15, 68:14, 68:15, 69:13, 69:19, 69:22, 70:10
**Catch-22** [1] - 31:15
**category** [2] - 31:6, 31:7
**caught** [1] - 33:8
**causing** [1] - 47:22
**caution** [1] - 67:7
**CCR** [1] - 2:15
**cease** [1] - 9:22
**ceased** [2] - 16:21, 17:2
**cell** [1] - 27:11
**Center** [3] - 3:13, 34:22, 61:3
**CENTER** [1] - 1:13
**century** [1] - 21:23, 36:18, 65:17
**cert** [1] - 12:23
**certain** [2] - 8:16, 37:13
**certainly** [10] - 4:15, 19:16, 19:19, 30:20, 32:4, 40:17, 47:10, 50:4, 54:24, 64:3
**certainty** [1] - 43:6
**certification** [1] - 29:5
**certify** [1] - 43:24
**chain** [1] - 33:20

**challenge** [4] - 7:7, 55:20, 55:25, 56:4
**challenges** [1] - 5:14
**challenging** [1] - 7:25
**Champa** [1] - 2:6
**chance** [1] - 6:15
**changed** [3] - 14:2, 14:4, 61:16
**changes** [1] - 54:13
**charge** [1] - 6:24
**charged** [4] - 25:24, 27:5, 63:10, 65:14
**charges** [2] - 33:10, 67:21
**Chicago** [2] - 1:20, 28:17
**choose** [1] - 55:1
**Circuit** [9] - 12:25, 13:8, 13:23, 14:6, 27:25, 57:5, 69:3, 69:19, 69:20
**circuit** [2] - 11:11, 11:12
**circumstances** [8] - 16:5, 42:16, 47:4, 59:23, 60:17, 64:9, 66:1, 68:5
**cite** [4] - 15:9, 15:20, 15:23, 16:3
**cited** [1] - 21:13
**cites** [1] - 62:21
**citizen** [8] - 38:6, 63:15, 63:24, 65:2, 65:8, 65:13, 65:14
**citizens** [2] - 52:19, 65:2
**civil** [1] - 34:15
**Civil** [1] - 3:4
**claim** [1] - 56:17
**claiming** [1] - 49:23
**clarify** [1] - 57:1
**Clark** [1] - 1:19
**Clarke** [4] - 1:15, 3:20, 30:5, 30:7
**CLARKE** [7] - 29:15, 30:4, 30:7, 30:18, 31:4, 31:21, 57:8
**classified** [2] - 12:23, 25:9
**clause** [32] - 10:13, 10:16, 10:23, 11:6, 13:1, 13:7, 13:18, 13:22, 13:24, 14:8, 14:11, 16:13, 17:24, 21:21, 22:15, 23:8, 23:10, 23:11, 23:15, 23:18, 36:8, 41:16, 52:3, 53:12, 53:25, 54:8, 54:13, 57:13, 57:14, 59:15, 65:6

**clear** [23] - 7:9, 9:5, 9:14, 17:22, 20:5, 20:18, 22:21, 23:2, 23:14, 23:25, 28:4, 28:15, 33:16, 51:8, 54:23, 57:4, 58:22, 59:10, 60:6, 61:15, 65:18, 69:20
**cleared** [16] - 3:20, 3:21, 18:24, 23:25, 25:15, 25:21, 31:1, 31:2, 31:12, 33:24, 34:5, 43:16, 46:13, 58:24, 59:1
**clearer** [1] - 12:5
**clearly** [5] - 13:10, 14:8, 51:21, 67:1
**CLERK** [2] - 3:2, 70:16
**client** [3] - 29:10, 29:20, 30:21
**clients** [3] - 27:6, 27:15, 28:8
**clock** [1] - 56:14
**close** [1] - 9:8
**closed** [1] - 14:25
**closer** [1] - 28:3
**closing** [1] - 24:15
**Closure** [1] - 9:24
**CNN** [1] - 62:8
**CO** [2] - 2:7, 2:10
**cognizant** [2] - 46:11, 46:14
**collapsed** [1] - 27:11
**Colorado** [2] - 4:21, 5:1
**COLUMBIA** [1] - 1:1
**combat** [3] - 64:14, 64:20, 65:3
**combatant** [5] - 54:20, 54:21, 66:2, 66:12, 66:13
**combatants** [5] - 54:25, 56:11, 56:13, 64:17, 64:25
**command** [2] - 9:11, 33:20
**Commander** [2] - 60:20, 61:9
**commented** [2] - 21:1, 21:4
**commenting** [1] - 41:22
**commission** [1] - 33:10
**commissions** [1] - 67:23
**committee** [1] - 42:24
**common** [3] - 23:7, 40:7, 49:19
**communicated** [1] -

30:14
**community** [2] - 34:16, 43:22
**compatriots** [1] - 37:22, 56:14
**complex** [1] - 43:10
**complicated** [1] - 61:23
**computer** [1] - 2:20
**computer-aided** [1] - 2:20
**concede** [1] - 27:9
**conceded** [1] - 12:25
**concern** [2] - 44:8, 59:20
**concerning** [2] - 47:14, 67:17
**concerns** [5] - 42:15, 63:8, 67:2, 67:15, 68:9
**concession** [2] - 9:13, 14:1
**concluded** [2] - 13:24, 66:25, 70:18
**concludes** [1] - 65:25
**conclusion** [5] - 48:3, 50:19, 52:10, 56:6, 62:12
**concurring** [6] - 13:3, 40:13, 40:25, 41:21, 41:25, 65:12
**conditionally** [1] - 8:8
**conditions** [2] - 43:20, 43:21
**conduct** [1] - 16:15
**conducted** [1] - 5:22
**confess** [1] - 27:15
**confirmed** [2] - 32:14
**conflict** [32] - 14:22, 15:13, 15:18, 15:22, 16:8, 18:9, 24:25, 37:12, 38:1, 38:4, 39:10, 39:11, 46:4, 49:19, 50:24, 51:1, 51:3, 59:23, 60:1, 60:5, 60:9, 60:14, 61:16, 61:18, 64:8, 64:10, 64:11, 64:18, 66:5, 68:23, 70:7
**conflicts** [4] - 15:15, 18:8, 60:3, 69:21
**Congress** [6] - 44:1, 51:17, 51:18, 51:23, 51:25, 63:25
**Congress's** [1] - 64:5
**congressional** [3] - 16:4, 16:24, 60:15
**conjunction** [1] - 24:12
**connected** [5] - 17:24,

20:1, 39:7, 59:11, 59:12
**Connecticut** [1] - 1:16
**connection** [3] - 23:18, 24:25, 46:3
**consensus** [1] - 39:3
**consent** [1] - 3:15
**consider** [2] - 17:6, 68:3, 68:13
**consideration** [1] - 6:12
**considerations** [1] - 5:16
**considered** [3] - 42:24, 49:8, 49:10
**considering** [1] - 58:5
**considers** [1] - 51:9
**consistently** [1] - 12:9
**consolidated** [1] - 3:17
**Constitution** [6] - 2:17, 21:22, 41:14, 66:7, 66:16, 68:21
**CONSTITUTIONAL** [1] - 1:13
**Constitutional** [1] - 3:13
**constitutional** [6] - 5:15, 10:19, 36:7, 52:14, 65:23, 67:13
**constitutionally** [3] - 37:1, 53:15, 65:1
**constrain** [1] - 63:1
**constrained** [1] - 61:3
**constraints** [1] - 62:23
**consultation** [1] - 24:20
**consulting** [1] - 45:17
**contains** [1] - 5:13
**contends** [1] - 64:2
**contest** [1] - 8:2
**contested** [1] - 32:16
**contesting** [1] - 22:1
**context** [5] - 16:13, 17:25, 18:1, 20:12, 58:20
**continually** [1] - 51:13
**continuation** [2] - 15:9, 17:5
**continue** [4] - 25:2, 38:3, 59:8, 66:24
**continued** [6] - 17:3, 38:7, 44:16, 53:16, 66:22, 66:23
**continues** [2] - 15:8, 36:25
**continuing** [3] - 17:7, 17:10, 58:19
**contours** [1] - 65:7
**convictions** [1] - 7:1

**convinced** [1] - 69:15
**convincing** [5] - 20:18, 22:22, 23:14, 27:24, 58:22
**coordinate** [1] - 21:9
**coordinated** [1] - 21:9
**core** [3] - 60:23, 60:25, 66:2
**corpus** [6] - 5:4, 5:13, 5:22, 52:9, 52:19, 65:5
**correct** [6] - 7:10, 32:1, 35:4, 43:16, 44:10, 44:11
**correctly** [1] - 31:17
**counsel** [13] - 3:14, 3:15, 3:17, 3:25, 4:4, 4:6, 5:5, 9:21, 28:9, 30:2, 32:8, 70:12, 70:13
**counter** [1] - 61:7
**counter-narcotics** [1] - 61:7
**Counterterrorism** [1] - 61:3
**countries** [3] - 44:14, 44:16, 44:22
**country** [3] - 21:25, 28:25, 38:10
**counts** [1] - 32:14
**couple** [3] - 24:11, 40:25, 42:4
**course** [3] - 10:11, 10:21, 36:1
**Court** [57] - 2:15, 2:16, 7:6, 9:15, 10:18, 10:21, 11:3, 15:20, 17:16, 19:23, 22:14, 26:10, 35:19, 36:8, 36:9, 40:7, 41:2, 41:5, 41:8, 41:9, 41:10, 41:13, 42:10, 42:18, 43:23, 46:25, 49:13, 49:16, 51:5, 51:12, 52:18, 52:23, 53:3, 54:1, 54:8, 55:21, 56:2, 56:6, 57:15, 57:16, 57:18, 57:20, 61:25, 62:10, 62:18, 63:25, 67:6, 67:7, 68:14, 68:19, 69:16, 69:17, 70:10, 70:16
**Court's** [3] - 12:5, 13:14, 21:17
**Courthouse** [1] - 2:16
**Courts** [4] - 8:17, 8:18, 28:1, 57:20
**courts** [11] - 5:20, 21:24, 23:16, 27:21, 49:22, 49:25, 57:15, 60:6, 63:6, 67:10, 68:16
**cover** [1] - 46:6

11:5, 11:10, 11:15, 11:22, 11:24, 12:3, 12:15, 12:20, 13:2, 13:9, 13:19, 14:1, 14:16, 16:19, 17:16, 18:14, 19:1, 19:4, 19:8, 20:17, 20:19, 20:21, 21:1, 23:3, 24:11, 25:10, 25:20, 26:2, 26:4, 26:11, 26:16, 26:21, 27:20, 28:18, 28:20, 28:24, 29:6, 29:9, 29:11, 29:13, 29:17, 29:19, 29:24, 30:1, 30:6, 30:16, 31:3, 31:9, 31:23, 32:2, 32:5, 32:12, 32:22, 32:24, 33:2, 33:6, 33:14, 34:9, 35:2, 35:8, 35:10, 35:12, 35:17, 36:13, 36:17, 36:24, 37:3, 37:5, 37:17, 38:5, 38:18, 38:25, 39:14, 39:24, 40:12, 40:23, 41:18, 41:21, 45:3, 45:5, 45:7, 45:13, 45:16, 45:23, 45:25, 46:2, 46:6, 46:11, 46:18, 47:12, 48:16, 48:24, 49:15, 50:6, 52:4, 52:6, 53:2, 53:5, 53:13, 53:21, 56:21, 57:7, 57:9, 57:21, 58:3, 62:7, 63:7, 63:20
**court** [35] - 5:20, 7:12, 8:11, 13:6, 14:10, 15:16, 16:20, 17:20, 20:13, 21:20, 22:13, 24:8, 27:23, 40:2, 40:19, 41:7, 42:9, 43:7, 44:2, 45:20, 45:21, 46:9, 50:18, 55:10, 56:18, 58:3, 58:5, 66:17, 68:7, 68:14, 69:2, 69:15, 69:25, 70:8
**Court's** [3] - 12:5, 13:14, 21:17
**Courthouse** [1] - 2:16
**Courts** [4] - 8:17, 8:18, 28:1, 57:20
**courts** [11] - 5:20, 21:24, 23:16, 27:21, 49:22, 49:25, 57:15, 60:6, 63:6, 67:10, 68:16
**cover** [1] - 46:6

**covers** [1] - 46:2
**creations** [1] - 45:4
**credible** [1] - 66:11
**crime** [1] - 27:15
**crimes** [3] - 26:25, 27:5, 70:3
**criminal** [10] - 16:12, 19:24, 19:25, 20:11, 23:19, 49:4, 58:20, 61:11, 67:22
**criteria** [3] - 66:13, 66:15, 68:1
**crossed** [1] - 18:18
**CRR** [1] - 2:15
**CSRTs** [1] - 33:18
**curiae** [2] - 34:15, 34:21
**curious** [1] - 28:8
**current** [2] - 9:12, 61:1
**custodial** [1] - 19:3

## D

**D.C** [8] - 1:3, 12:25, 13:8, 13:23, 14:6, 34:16, 34:18, 57:4
**danger** [1] - 61:20
**dangerous** [2] - 24:8, 54:16
**dangerousness** [1] - 54:17
**Darbi** [2] - 26:18, 26:24
**Darold** [2] - 2:5, 4:21
**date** [8] - 24:18, 26:15, 43:1, 64:13, 70:7
**dated** [1] - 24:19
**days** [1] - 24:18
**DC** [3] - 1:17, 1:24, 2:17
**de** [1] - 46:19
**dealing** [2] - 18:6, 18:16
**deals** [1] - 12:14
**December** [2] - 29:2, 55:12
**decide** [2] - 22:16, 50:3
**decided** [1] - 29:4
**decision** [11] - 16:22, 28:22, 29:5, 35:5, 41:17, 42:21, 43:2, 49:12, 50:8, 51:4, 53:9
**decisions** [1] - 36:4
**declaration** [1] - 16:24
**declared** [1] - 51:24
**dedicated** [1] - 45:1
**defeated** [1] - 37:19
**defend** [1] - 61:12

**defendant** [1] - 66:20
**Defendant** [1] - 4:12
**Defense** [11] - 15:20, 24:20, 25:6, 33:21, 43:24, 45:11, 45:16, 47:3, 51:18, 62:5, 68:6
**defer** [3] - 16:22, 28:22, 29:5
**deference** [1] - 63:5
**deferred** [2] - 29:19, 29:21
**define** [3] - 10:7, 15:11, 60:4
**degree** [1] - 43:6
**deliberated** [1] - 44:25
**deliberating** [1] - 26:4
**deliberative** [1] - 44:3
**demand** [1] - 66:1
**demanding** [1] - 52:14
**denial** [1] - 12:23
**denied** [1] - 29:23
**Denver** [4] - 2:7, 2:10, 4:21, 5:1
**deny** [2] - 34:2, 56:19
**DEPARTMENT** [1] - 1:22
**Department** [8] - 9:20, 15:1, 15:20, 30:10, 43:11, 44:21
**Department's** [1] - 44:9
**deploy** [1] - 61:4
**deportation** [1] - 22:2
**DEPUTY** [2] - 3:2, 70:16
**described** [2] - 60:25, 61:1
**describes** [1] - 61:7
**designated** [2] - 42:11, 42:20
**designed** [1] - 63:1
**despite** [1] - 22:22
**destroyed** [2] - 25:18, 37:7
**details** [1] - 6:19
**detain** [13] - 10:6, 16:14, 36:11, 38:3, 38:17, 40:5, 51:19, 54:7, 62:15, 63:2, 64:7, 64:16, 69:7
**detainable** [3] - 24:9, 39:12, 51:2
**detained** [14] - 9:5, 19:19, 27:4, 38:2, 38:6, 38:21, 39:9, 48:4, 50:25, 51:3, 59:18, 63:9, 70:1
**detainee** [3] - 3:20, 43:12, 55:3

**detainees** [20] - 4:7, 9:10, 9:12, 9:15, 9:17, 10:24, 23:25, 25:15, 37:19, 43:14, 47:18, 48:16, 50:25, 52:19, 54:24, 55:23, 63:9, 67:17, 67:19, 68:18

**detainees'** [1] - 68:9

**detaining** [1] - 22:7

**detention** [52] - 5:19, 6:24, 6:25, 7:8, 8:1, 9:12, 9:13, 9:23, 9:25, 10:12, 10:13, 10:25, 14:19, 14:21, 15:3, 16:13, 17:3, 17:12, 17:24, 18:1, 19:24, 19:25, 20:9, 21:13, 23:19, 23:20, 25:19, 36:5, 38:7, 39:4, 40:6, 47:16, 47:17, 53:16, 53:25, 54:15, 54:18, 54:19, 54:23, 55:17, 56:8, 56:9, 58:19, 59:20, 59:24, 60:8, 64:1, 64:3, 64:24, 68:22, 69:5

**detention-related** [2] - 9:23, 9:25

**detentions** [4] - 58:15, 59:10, 59:16, 64:20

**determination** [10] - 16:21, 17:1, 23:16, 27:22, 28:7, 28:12, 28:21, 29:6, 29:14, 66:24

**determine** [3] - 14:23, 16:25, 49:1

**determined** [8] - 10:9, 21:16, 24:1, 39:3, 42:14, 52:17, 64:17, 68:19

**determining** [1] - 21:18

**develop** [2] - 9:9, 60:11

**development** [1] - 64:11

**devise** [1] - 56:8

**dicta** [11] - 11:16, 11:17, 12:13, 12:18, 13:9, 14:5, 41:2, 41:7, 53:9, 57:15, 69:2

**difference** [2] - 63:14, 63:24

**different** [11] - 6:23, 13:12, 16:4, 31:24, 41:19, 52:16, 53:17,

57:23, 58:5, 58:8, 58:9

**differently** [1] - 58:17

**direct** [1] - 9:24

**directed** [1] - 9:22

**directly** [1] - 59:15

**Director** [2] - 24:22, 61:2

**disagreed** [1] - 8:16

**disavowed** [1] - 17:20

**disconnected** [1] - 15:18

**discretion** [1] - 68:5

**discuss** [5] - 65:10, 66:15, 66:21, 67:1, 68:4

**discussing** [2] - 22:5, 53:7

**dismantled** [2] - 9:16, 44:13

**dismissed** [1] - 35:16

**disobeying** [1] - 57:20

**disposes** [1] - 56:19

**disposition** [3] - 15:6, 24:24, 46:3

**dispositive** [1] - 51:18

**dispute** [2] - 65:3, 65:4

**dissented** [1] - 12:23

**dissenting** [1] - 65:12

**distinctly** [1] - 41:11

**DISTRICT** [3] - 1:1, 1:1, 1:19

**District** [8] - 8:17, 8:18, 12:5, 22:14, 27:25, 57:20, 67:6, 67:7

**district** [2] - 21:4, 36:4

**divide** [1] - 59:3

**Doe** [1] - 11:25

**Donald** [1] - 3:3

**DONALD** [1] - 1:5

**done** [6] - 19:25, 25:5, 43:20, 44:18, 58:7, 70:9

**doubt** [2] - 22:14, 67:10

**down** [5] - 13:19, 27:25, 33:4, 63:3, 63:18

**drafted** [1] - 21:22

**draw** [1] - 48:3

**due** [49] - 5:16, 6:19, 10:13, 10:15, 10:16, 10:25, 11:2, 11:5, 12:8, 13:21, 14:17, 16:11, 16:13, 17:23, 18:4, 19:17, 20:7, 23:8, 23:10, 23:11, 23:15, 23:18, 34:12,

36:7, 40:23, 41:1, 52:2, 52:21, 52:25, 53:13, 53:24, 54:7, 54:13, 54:14, 55:19, 57:10, 57:13, 58:17, 59:5, 64:24, 65:1, 65:6, 65:8, 65:18, 66:23, 67:2, 68:12, 68:17, 69:4

**duration** [11] - 6:25, 20:9, 36:11, 36:13, 40:5, 40:21, 53:16, 57:25, 61:17, 64:7, 64:16

**durational** [3] - 16:16, 19:18, 58:18

**during** [3] - 26:19, 26:21, 54:25

**Durkin** [4] - 1:18, 3:21, 28:16, 31:25

**DURKIN** [14] - 1:19, 28:16, 28:19, 28:22, 29:1, 29:8, 29:10, 29:12, 29:18, 29:21, 29:25, 31:22, 31:25, 32:3

**dwindled** [1] - 32:20

## E

**East** [1] - 38:12

**EDWARDS** [1] - 2:9

**eerily** [1] - 62:16

**effect** [4] - 24:16, 59:25, 68:3, 68:8

**effected** [1] - 39:15

**effectiveness** [1] - 61:4

**effectuate** [1] - 25:14

**effort** [1] - 9:14

**efforts** [6] - 25:13, 42:20, 46:12, 46:15, 48:6, 48:8

**eight** [4] - 3:16, 17:19, 27:10, 35:4

**either** [2] - 6:9, 43:6

**election** [1] - 46:22

**elements** [2] - 38:13, 66:2

**elsewhere** [1] - 50:11

**email** [1] - 9:19

**embassies** [2] - 44:22, 44:23

**emergency** [1] - 29:22

**employ** [1] - 65:5

**en** [2] - 14:10, 17:19

**end** [20] - 5:19, 6:25, 10:6, 10:7, 14:19, 15:11, 15:13, 18:4, 30:24, 36:16, 38:4,

46:23, 48:8, 51:20, 54:5, 54:7, 54:23, 55:8, 62:15, 67:6

**ended** [1] - 33:3, 36:16, 51:24

**ending** [2] - 14:21, 25:18

**endorsed** [1] - 51:19

**endorsing** [1] - 56:12

**endured** [1] - 6:23

**enemy** [10] - 18:17, 54:19, 54:21, 54:24, 56:11, 56:12, 64:25, 65:3, 66:2, 66:13

**enemy-combat** [1] - 65:3

**enemy-combatant** [1] - 66:13

**engaged** [7] - 37:15, 37:21, 39:9, 51:14, 64:18, 67:21, 69:9

**engagement** [1] - 39:17

**engaging** [1] - 67:8

**England** [1] - 36:18

**English** [2] - 21:23, 55:13

**enhanced** [1] - 69:4

**enjoy** [1] - 65:20

**enormously** [1] - 34:1

**enter** [2] - 12:14, 18:13

**entered** [1] - 55:14

**entire** [1] - 25:17

**entirely** [4] - 10:8, 16:6, 49:18, 64:10

**entitled** [4] - 47:6, 62:18, 65:19, 68:22

**entry** [2] - 12:22, 52:25

**Envoy** [1] - 44:9

**Envoy's** [1] - 25:16

**equally** [1] - 65:21

**equitable** [1] - 59:2

**eroded** [1] - 65:24

**erogate** [1] - 62:20

**erogates** [1] - 62:21

**especially** [1] - 65:12

**Esq** [11] - 1:11, 1:12, 1:12, 1:15, 1:18, 1:21, 1:22, 2:2, 2:5, 2:8, 2:12

**essential** [3] - 63:14, 65:23, 67:13

**essentially** [4] - 54:15, 56:4, 56:13, 60:23

**established** [1] - 68:1

**establishes** [1] - 64:19

**estimating** [1] - 47:20

**et** [4] - 1:2, 1:5, 3:3

**etcetera** [9] - 15:22, 17:9, 24:23, 25:3, 42:24, 44:17, 52:16, 60:16, 67:22

**eventually** [4] - 33:2, 33:3, 45:9, 49:25

**evidence** [30] - 7:3, 19:21, 20:14, 20:18, 20:21, 21:12, 22:3, 22:19, 22:21, 22:22, 23:23, 32:15, 37:20, 42:22, 51:10, 54:10, 54:11, 58:6, 58:9, 58:22, 58:24, 60:13, 66:6, 66:9, 66:11, 66:14, 66:19, 67:24

**evidentiary** [5] - 5:23, 53:17, 55:20, 55:25, 68:10

**evolved** [1] - 61:11

**ex** [12] - 12:25, 13:7, 13:18, 13:21, 13:24, 14:7, 14:11, 52:8

**exact** [1] - 26:14

**exactly** [4] - 22:8, 30:8, 37:17, 39:21

**examination** [1] - 65:4

**example** [2] - 36:8, 66:5

**exceeded** [1] - 16:17

**except** [1] - 52:15

**execution** [1] - 38:12

**executive** [11] - 9:7, 24:12, 43:8, 44:3, 45:14, 47:1, 47:5, 49:9, 62:3, 68:1, 70:7

**Executive** [9] - 24:14, 49:18, 49:20, 51:8, 62:25, 63:4, 66:4, 70:6

**Executive's** [2] - 16:22, 63:1

**exercise** [1] - 64:21

**exercised** [1] - 35:21

**Exhibit-15** [1] - 61:9

**Exhibit-20** [1] - 61:2

**exhibits** [2] - 16:2, 60:15

**exigencies** [1] - 66:1

**exist** [4] - 16:8, 44:10, 45:2, 45:8

**existed** [2] - 21:21, 60:9

**existing** [1] - 24:12

**exists** [3] - 20:11, 23:8, 49:19

**expanding** [1] - 39:5

**expect** [1] - 44:12

expense [1] - 47:22
expenses [1] - 48:1
explain [1] - 30:2
extend [1] - 53:11
extended [1] - 52:19
extension [1] - 41:14
extent [2] - 27:3, 50:10
Extent [1] - 21:15
extraterritorially [2] - 10:19, 41:15

**F**

F.3d [1] - 21:4
face [4] - 50:4, 50:6, 58:15, 64:13
faced [1] - 67:10
facial [2] - 56:4, 68:12
facilities [1] - 48:14
facing [1] - 52:16
fact [9] - 14:25, 20:2, 30:15, 48:3, 50:18, 53:8, 54:5, 61:15, 67:9
fact-finding [1] - 67:9
facto [8] - 13:1, 13:7, 13:18, 13:21, 13:24, 14:7, 14:11, 46:19
factor [1] - 17:6
factors [3] - 28:1, 42:16, 63:11
factos [1] - 52:8
facts [2] - 7:7, 57:17
factual [4] - 7:7, 8:1, 15:5, 22:6
failed [1] - 15:23
fair [1] - 66:10
fairly [1] - 69:20
fairness [1] - 38:25
faith [1] - 34:15
faith-based [1] - 34:15
falls [1] - 66:15
family [1] - 27:12
far [5] - 16:17, 19:13, 24:16, 29:15, 48:19
favor [3] - 8:3, 66:8, 66:21
February [1] - 9:19
Federal [1] - 1:23
felony [1] - 7:1
few [1] - 33:6
field [1] - 17:13
fields [1] - 61:8
Fifth [1] - 11:13
fight [5] - 18:13, 19:11, 37:24, 56:12, 56:17
fighters [1] - 64:14
fighting [6] - 36:22,

40:9, 50:22, 50:23, 61:12
file [3] - 22:5, 39:1, 50:9
filed [3] - 29:22, 34:12, 51:11
files [1] - 48:20
finally [5] - 5:19, 25:23, 36:21, 67:5, 70:11
finish [1] - 32:9
first [7] - 4:17, 5:25, 51:21, 54:17, 55:5, 58:11, 65:20
five [3] - 13:6, 13:22, 14:10
floated [1] - 32:17
Floor [2] - 1:13, 2:3
flows [1] - 15:6
flying [1] - 15:17
focus [1] - 46:9
foes [1] - 37:23
follow [4] - 11:17, 13:14, 63:17, 69:2
following [2] - 52:10, 65:16
follows [1] - 64:23
FOR [2] - 1:1, 1:13
force [3] - 31:2, 42:12, 49:9, 53:15, 64:6, 64:21
Force [8] - 36:7, 36:10, 37:6, 38:16, 39:13, 40:10, 50:15, 68:20
forced [2] - 52:13, 52:15
forces [8] - 37:15, 37:19, 37:25, 38:20, 39:11, 50:24, 51:16, 69:9
FORDHAM [1] - 2:2
foreclosed [2] - 23:5, 70:5
foreign [3] - 43:12, 62:17, 62:18
foreseeable [1] - 48:9
forever [2] - 55:6, 60:3
forgive [2] - 26:17
form [3] - 48:10, 60:21, 61:1
formally [1] - 30:13
forth [1] - 66:11
forty [1] - 33:5
forward [5] - 3:5, 19:25, 20:12, 51:4, 58:20
forward-looking [3] - 19:25, 20:12, 58:20
four [5] - 9:4, 11:11,

11:12, 12:22, 57:17
frame [1] - 70:11
French [1] - 55:13
full [4] - 14:9, 15:21, 38:9, 39:1
functional [5] - 42:2, 44:10, 52:7, 52:18, 53:11
fundamental [1] - 65:21
future [9] - 39:23, 41:24, 44:5, 45:23, 45:24, 45:25, 46:1, 48:9, 48:12

**G**

Garland [1] - 49:15
gathered [1] - 4:3
General [2] - 9:9, 24:21
general [2] - 20:23, 42:5
generals [2] - 50:20, 50:21
generis [1] - 54:1
geographic [1] - 37:15
George [4] - 1:15, 3:20, 30:4, 30:7
German [1] - 18:12
Germans [1] - 55:12
Germany [1] - 18:12
Ghaleb [1] - 57:5
Gibbons [1] - 34:13
Gitmo [2] - 9:11, 46:23
given [9] - 33:22, 33:23, 34:3, 34:6, 42:8, 45:11, 57:13, 64:10, 68:21
Gotshal [1] - 34:23
govern [1] - 22:11
governed [1] - 14:6
governing [2] - 25:1, 45:18
government [1] - 7:2
Government [62] - 3:25, 6:1, 6:8, 6:16, 9:13, 9:16, 10:4, 10:9, 10:24, 12:24, 13:16, 14:1, 14:19, 15:8, 15:15, 17:8, 18:11, 18:17, 19:7, 20:15, 20:22, 21:6, 21:11, 21:15, 22:2, 22:6, 22:8, 22:10, 22:18, 22:25, 24:1, 24:3, 26:8, 28:6, 31:10, 31:17, 32:6, 34:20, 42:10, 42:19, 43:1, 44:12, 47:24,

48:6, 49:1, 49:23, 54:12, 58:21, 59:14, 60:1, 60:4, 61:17, 61:19, 62:20, 63:3, 63:5, 66:7, 66:11, 66:18, 66:21, 70:13
Government's [11] - 8:3, 8:15, 14:25, 15:19, 18:2, 25:13, 26:4, 39:14, 60:14, 66:9, 67:18
government's [3] - 40:4, 46:12, 62:14
governments [2] - 16:14, 43:12
grant [2] - 5:12, 64:5
granted [2] - 41:1, 65:22
granting [1] - 5:4
grapevine [1] - 30:12
GROSSMAN [1] - 2:9
ground [3] - 15:10, 15:21, 15:24
group [4] - 5:14, 34:14, 50:15, 61:1
groups [2] - 16:9, 37:8
grown [1] - 55:16
Guantanamo [28] - 6:4, 9:2, 9:23, 9:24, 9:25, 10:3, 10:11, 10:16, 13:25, 24:15, 25:1, 25:16, 25:17, 26:12, 27:13, 30:21, 43:9, 44:9, 45:19, 46:1, 46:20, 47:4, 47:6, 47:8, 47:15, 47:17, 48:5, 50:14
Guantanamo's [1] - 14:8
guess [1] - 38:11
guessing [1] - 50:8
guilty [1] - 26:25

**H**

habeas [4] - 5:4, 5:12, 5:14, 5:22, 7:12, 10:23, 11:7, 21:25, 22:1, 34:22, 52:8, 52:19, 65:5, 66:12
Hajj [4] - 3:15, 3:18, 27:8, 33:25
half [1] - 15:24
Hamdi [10] - 36:8, 59:9, 59:13, 59:16, 60:8, 63:13, 63:15, 63:24, 64:1, 65:5
hand [2] - 24:4, 52:11
handful [1] - 32:21

handle [2] - 42:9, 70:10
Haqqani [1] - 15:25
hard [1] - 69:13
heads [1] - 24:22
hear [3] - 5:25, 6:7, 8:21
heard [8] - 5:5, 11:19, 27:14, 30:12, 30:22, 65:19, 65:22
hearing [4] - 7:12, 58:7, 58:10, 59:4
hearings [4] - 5:22, 57:14, 58:16
hearsay [1] - 66:5
Heather [1] - 9:19
heed [1] - 67:11
height [1] - 27:16
held [14] - 21:14, 21:18, 25:22, 33:8, 36:9, 36:20, 36:25, 38:1, 40:15, 47:15, 48:18, 57:25, 62:17, 67:20
HELD [1] - 1:8
Heldman [1] - 9:19
Henderson [3] - 13:10, 22:23, 40:24
Henry [2] - 1:22, 4:1
Hi [1] - 4:11
hide [1] - 60:23
hiding [1] - 55:2
high [3] - 6:25, 38:10, 54:11
High [1] - 2:10
high-level [1] - 38:10
highest [1] - 28:3
himself [2] - 17:5, 42:17
historically [1] - 41:12
history [2] - 18:10, 32:24
hmm [1] - 8:6
hockey [1] - 56:15
HOGAN [1] - 1:8
hold [10] - 10:23, 37:12, 37:18, 39:18, 40:17, 40:21, 66:22, 66:24, 68:16, 69:4
holding [2] - 12:21, 12:24
holdings [1] - 69:3
holds [1] - 64:15
Holland [2] - 2:8, 4:25
HOLLAND [3] - 2:9, 4:25
Homeland [1] - 24:21
Honor [110] - 3:2, 3:8, 3:12, 3:17, 3:24, 4:20, 5:1, 5:8, 6:18,

7:13, 7:16, 7:24, 8:9, 8:13, 8:21, 9:1, 9:17, 10:11, 11:9, 11:18, 12:2, 13:13, 14:14, 15:4, 16:11, 17:18, 18:6, 18:16, 18:20, 19:12, 20:6, 23:9, 23:21, 24:2, 24:10, 25:8, 25:25, 26:6, 26:8, 26:18, 26:24, 27:9, 27:19, 29:15, 30:4, 30:20, 31:1, 31:21, 33:13, 34:8, 35:1, 35:3, 36:1, 36:2, 36:8, 36:15, 36:23, 37:2, 37:9, 37:21, 38:15, 39:8, 39:20, 40:2, 40:6, 40:9, 40:20, 41:4, 41:24, 43:5, 44:7, 44:11, 44:20, 45:12, 46:5, 46:7, 46:17, 46:25, 48:2, 48:23, 49:4, 49:11, 50:16, 51:2, 51:7, 52:2, 52:22, 52:24, 53:4, 53:8, 53:20, 53:23, 54:6, 55:4, 55:8, 55:11, 55:18, 55:22, 56:6, 56:10, 56:25, 57:8, 58:12, 58:14, 58:25, 60:10, 61:24, 62:12, 62:14, 70:15
**Honor's** [2] - 20:25, 46:7
**HONORABLE** [1] - 1:8
**Honorable** [1] - 70:16
**hope** [3] - 34:4, 37:4, 37:13
**hoped** [1] - 44:4, 61:22
**hopelessness** [1] - 34:6
**hospice** [1] - 47:18
**hostilities** [27] - 10:7, 10:8, 15:9, 15:11, 16:21, 17:2, 18:3, 18:6, 34:2, 36:12, 36:16, 38:4, 48:8, 49:12, 50:25, 51:9, 51:20, 51:22, 51:24, 52:1, 54:5, 54:7, 54:24, 55:8, 62:16, 64:16, 69:9
**hostility** [1] - 23:22
**human** [2] - 62:21, 62:25
**hundred** [1] - 27:10
**Hundred** [1] - 36:17
**hundreds** [1] - 10:24

**Huvelle** [2] - 12:6, 12:13
**hypothetical** [1] - 49:18

**I**

**idea** [2] - 30:25, 59:16
**identify** [2] - 3:5, 13:15
**ideological** [1] - 61:13
**ignore** [1] - 33:22
**ignores** [1] - 59:14
**II** [2] - 12:19, 18:22
**III** [2] - 1:15, 12:19
**IL** [1] - 1:20
**illegal** [1] - 15:2
**illuminating** [1] - 22:8
**imagine** [1] - 47:21
**implemented** [1] - 44:25
**implicates** [1] - 18:4
**implications** [1] - 51:21
**implied** [1] - 51:25
**important** [4] - 7:24, 22:12, 23:13, 63:17
**imposes** [2] - 10:17, 58:18
**impractical** [1] - 6:5
**improper** [5] - 10:20, 10:22, 13:15, 13:17, 57:12
**improperly** [1] - 68:13
**IN** [1] - 1:1
**inapposite** [1] - 54:18
**include** [2] - 64:6, 68:25
**includes** [2] - 32:13, 43:22
**including** [11] - 7:1, 9:15, 12:18, 24:25, 25:15, 25:20, 42:16, 45:18, 47:18, 58:24, 68:2
**inconsistent** [1] - 14:12
**incorrectly** [1] - 11:20
**increasingly** [1] - 61:13
**incremental** [1] - 67:9
**incumbent** [1] - 50:3
**indefinite** [4] - 6:24, 14:19, 14:23, 64:1, 64:3, 69:4, 69:5
**indefinite/perpetual** [1] - 64:2
**indefinitely** [1] - 16:14
**indeterminate** [3] - 14:20, 14:24, 69:5

**Indian** [1] - 60:22
**indicate** [1] - 48:10
**indicated** [5] - 6:8, 25:22, 44:23, 48:7, 67:8
**indicates** [3] - 40:20, 43:17, 50:9
**indicating** [3] - 8:23, 42:1, 47:16
**indicative** [3] - 40:17, 40:18, 47:22
**individual** [7] - 5:18, 7:12, 19:19, 26:11, 58:11, 67:12, 67:17
**individuals** [34] - 4:9, 15:3, 16:15, 17:12, 23:23, 24:5, 24:24, 25:1, 27:4, 31:19, 43:4, 43:7, 45:18, 45:25, 46:3, 46:13, 47:4, 47:15, 47:19, 47:20, 48:4, 49:6, 51:19, 52:11, 57:23, 58:22, 62:6, 64:17, 67:25, 68:4, 68:23, 68:24, 69:1, 70:1
**indulge** [1] - 60:10
**inform** [4] - 15:15, 42:10, 59:23, 60:3
**information** [4] - 25:7, 39:2, 39:3, 47:16
**informed** [2] - 18:8, 64:11
**informs** [1] - 65:7
**infrastructure** [1] - 25:17
**inherited** [1] - 67:15
**initial** [3] - 49:9, 55:10, 55:15
**injury** [1] - 7:4
**inquiries** [2] - 9:25, 10:3
**instance** [1] - 65:8
**instead** [1] - 63:21
**instructive** [2] - 63:12, 63:23
**instructs** [1] - 47:3
**instrumental** [1] - 32:18
**insurgency** [1] - 61:11
**intelligence** [1] - 43:22
**Intelligence** [1] - 24:22
**intends** [2] - 42:11, 42:19
**interagency** [2] - 24:4, 43:21
**interested** [1] - 7:25
**interesting** [2] - 41:5,

49:15
**interests** [2] - 43:25, 67:18
**interim** [1] - 51:23
**international** [2] - 62:21, 62:25
**interpret** [1] - 69:16
**interpreted** [2] - 11:6, 11:21
**interrogation** [1] - 64:4
**interrupt** [1] - 8:19
**interview** [1] - 62:9
**introduce** [6] - 4:5, 4:10, 23:23, 28:14, 30:6, 31:23
**involved** [3] - 52:25, 64:20, 69:21
**Iraq** [1] - 69:1
**irrelevant** [1] - 55:16
**ISIS** [4] - 15:24, 16:7, 50:11, 50:13
**Islamic** [1] - 68:25
**ISN** [1] - 4:23
**issue** [6] - 31:11, 35:4, 40:14, 42:2, 62:10, 70:9
**issued** [3] - 9:7, 42:7, 47:1
**issues** [6] - 5:15, 5:17, 33:7, 56:19, 69:14, 69:21
**Italians** [1] - 55:13
**itself** [8] - 10:9, 12:19, 15:12, 37:7, 52:25, 59:13, 61:18, 62:21

**J**

**January** [7] - 24:19, 31:4, 42:7, 42:13, 42:21, 46:21, 47:13
**Jewish** [1] - 38:13
**job** [1] - 45:1
**John** [2] - 2:8, 4:25
**joined** [2] - 3:14, 22:22
**Jonathan** [1] - 34:17
**JUDGE** [1] - 1:9
**judge** [7] - 12:6, 21:1, 21:4, 31:22, 49:15, 50:3, 67:6
**Judge** [18] - 8:2, 12:12, 13:1, 13:3, 13:10, 14:7, 21:2, 22:22, 29:22, 40:2, 40:24, 41:18, 41:23, 42:7, 51:8, 51:17, 51:21, 54:9
**judges** [10] - 8:12,

12:10, 13:6, 13:22, 14:11, 36:4, 60:12, 69:17, 69:18, 70:10
**judgment** [2] - 14:23, 53:6
**judicial** [4] - 26:9, 27:17, 33:17, 65:6
**judiciary** [1] - 49:17
**judiciary's** [1] - 56:7
**July** [1] - 1:4
**juncture** [1] - 67:1
**June** [1] - 39:1
**jurisprudence** [1] - 19:23
**JUSTICE** [1] - 1:22
**Justice** [6] - 23:21, 59:17, 59:19, 60:6, 63:15, 65:12
**justice** [2] - 40:12, 69:25
**justices** [1] - 12:22
**Justices** [1] - 57:18
**justified** [1] - 17:3
**justify** [1] - 22:6

**K**

**Kadidal** [2] - 1:12, 3:19
**Kalashnikov** [1] - 59:21
**Kavanaugh** [6] - 13:1, 13:3, 14:7, 21:2, 22:23, 41:18
**Kavanaugh's** [1] - 41:24
**Kazimi** [1] - 4:12
**Kebriaei** [2] - 1:12, 3:18
**keep** [2] - 17:12, 49:20
**Kenya** [2] - 38:6, 38:13
**kept** [1] - 21:7
**key** [3] - 10:4, 63:15, 63:23
**kill** [1] - 56:15
**Killmer** [3] - 2:5, 4:21, 4:22
**KILLMER** [3] - 2:5, 4:20, 4:21
**kind** [4] - 9:18, 10:13, 15:5, 19:14
**kindly** [1] - 42:8
**kinds** [2] - 53:17, 63:5
**Kiyemba** [16] - 11:23, 11:24, 12:13, 12:19, 12:22, 13:7, 13:23, 14:5, 14:13, 41:12, 52:24, 53:8, 57:17
**knows** [2] - 19:12,

31:10
**Kollar** [1] - 29:22
**Kollar-Kotelly** [1] - 29:22
**Kotelly** [2] - 29:22, 42:7

## L

**land** [1] - 31:15
**LANE** [1] - 2:5
**Lane** [1] - 4:22
**language** [1] - 63:22
**last** [9] - 26:11, 33:6, 33:13, 37:14, 40:3, 51:9, 51:12, 57:21, 60:2
**lasted** [1] - 37:12
**lastly** [1] - 55:18
**Latif** [1] - 3:21
**Laura** [1] - 34:23
**LAW** [1] - 2:2
**law** [29] - 11:17, 13:8, 13:23, 17:11, 18:12, 23:7, 24:12, 26:7, 40:6, 53:24, 53:25, 54:18, 56:10, 59:4, 59:10, 59:18, 62:21, 62:22, 62:24, 63:1, 63:3, 64:9, 64:11, 69:18, 69:19
**lawful** [2] - 14:21, 21:13
**lawlessness** [1] - 34:7
**laws** [8] - 15:15, 18:8, 36:6, 38:2, 40:9, 54:22, 59:24, 60:4
**lawyer** [1] - 31:24
**lawyers** [1] - 69:13
**lead** [1] - 52:9
**leads** [1] - 34:4
**least** [10] - 11:11, 12:5, 16:23, 31:13, 33:11, 35:21, 42:1, 47:1, 69:2, 69:20
**leaves** [1] - 68:15
**left** [6] - 13:3, 22:12, 24:16, 31:18, 47:20, 68:7
**legal** [2] - 7:7, 62:14
**legality** [1] - 9:2
**legally** [2] - 15:6, 64:25
**legitimate** [4] - 17:25, 20:1, 52:14, 68:22
**legitimately** [1] - 64:17
**length** [2] - 36:14, 56:9
**Leon** [4] - 40:3, 51:8,

51:17, 51:21
**Letters** [1] - 51:11
**level** [3] - 27:23, 38:10, 38:24
**levels** [1] - 60:2
**liberties** [1] - 67:14
**Libya** [1] - 50:12
**license** [1] - 63:2
**lifetime** [6] - 9:13, 10:12, 15:14, 18:4, 25:19, 59:18
**light** [3] - 28:2, 41:10, 41:12
**lights** [1] - 10:4
**likely** [2] - 24:5, 48:11
**likewise** [1] - 66:7
**limbo** [1] - 48:24
**limit** [6] - 39:23, 40:14, 40:15, 54:4, 59:9
**limitation** [1] - 59:14
**limitations** [3] - 10:17, 19:18, 67:13
**limited** [3] - 41:13, 41:14, 53:6
**limits** [7] - 10:25, 16:12, 16:16, 20:7, 24:9, 58:18, 61:20
**line** [2] - 4:4
**listen** [1] - 4:8
**listening** [1] - 4:7
**LLP** [1] - 2:5
**local** [1] - 50:12
**locations** [1] - 37:16
**longstanding** [1] - 64:8
**look** [2] - 7:22, 58:17
**looked** [1] - 58:17
**looking** [4] - 19:25, 20:11, 20:12, 58:20
**looks** [3] - 19:12, 60:14, 61:18
**lose** [1] - 56:1
**lost** [3] - 8:20, 35:9, 61:13
**low** [1] - 54:12
**lower** [2] - 41:7, 57:15

## M

**machine** [1] - 2:19
**majority** [2] - 13:6, 40:18
**Malik** [2] - 5:10, 38:6
**man's** [1] - 31:14
**manner** [1] - 65:23
**mantra** [3] - 59:8, 62:15, 62:16
**Martha** [5] - 2:2, 4:11, 4:17, 8:20
**Massachusetts** [1] -

1:23
**material** [1] - 7:1
**materials** [2] - 6:16, 7:11
**matter** [8] - 11:19, 16:23, 21:16, 24:13, 27:21, 48:3, 57:19, 69:11
**matters** [8] - 6:1, 6:15, 9:23, 21:10, 40:5, 42:5, 67:11
**Mattis** [5] - 9:9, 12:1, 25:8, 62:2, 62:9
**McKenzie** [1] - 30:7
**MCKENZIE** [1] - 1:16
**mean** [16] - 11:22, 14:5, 14:22, 15:2, 17:13, 24:8, 30:19, 32:4, 33:8, 39:4, 44:17, 47:24, 49:1, 49:24, 58:6
**meaning** [1] - 65:17
**meaningful** [1] - 10:23, 65:22, 65:23
**means** [2] - 39:1, 43:18
**meant** [1] - 69:24
**mechanism** [2] - 65:5, 65:7
**meets** [1] - 66:12
**member** [1] - 38:22
**members** [2] - 38:11, 38:19
**mentioned** [6] - 16:1, 33:15, 33:25, 55:22, 60:18, 60:24
**mentions** [2] - 53:8, 57:14
**mere** [1] - 20:9
**merely** [2] - 19:20, 23:16
**merits** [11] - 35:7, 38:21, 38:24, 40:1, 51:4, 55:23, 56:1, 58:14, 58:15, 58:16, 59:4
**message** [1] - 9:21
**method** [1] - 67:4
**mic** [2] - 3:10, 8:23
**might** [2] - 39:23, 67:12
**military** [6] - 33:10, 33:20, 53:14, 66:5, 67:3, 67:22
**Military** [8] - 36:7, 36:10, 37:6, 38:16, 39:13, 40:10, 50:15, 68:20
**Miller** [1] - 2:15
**minimize** [1] - 43:19

**minimized** [1] - 43:15
**minimum** [1] - 21:22
**minute** [4] - 11:1, 30:3, 44:23, 47:13
**miscast** [2] - 54:14, 55:8
**mischaracterization** [1] - 37:10
**misread** [1] - 29:9
**mistakes** [1] - 61:23
**Mombassa** [1] - 38:13
**moment** [3] - 8:20, 39:21, 48:4
**Monday** [1] - 51:12
**morning** [5] - 3:2, 3:8, 3:12, 3:24, 4:20
**Moroccan** [1] - 19:6
**Morocco** [2] - 18:25, 29:1
**morphed** [1] - 55:9
**most** [5] - 27:23, 32:20, 38:8, 60:22, 66:6
**motion** [3] - 34:22, 35:6, 51:6
**motions** [1] - 5:3
**moved** [1] - 6:6
**MR** [129] - 3:8, 3:12, 3:24, 4:20, 4:25, 6:18, 7:13, 7:16, 7:18, 7:21, 7:24, 8:6, 8:9, 8:13, 8:18, 9:1, 11:4, 11:9, 11:14, 11:18, 11:23, 12:2, 12:12, 12:17, 12:21, 13:5, 13:13, 13:20, 14:4, 15:4, 17:15, 17:18, 18:15, 19:2, 19:5, 19:9, 20:18, 20:20, 20:25, 23:1, 23:4, 25:7, 25:12, 25:25, 26:3, 26:6, 26:13, 26:17, 26:24, 28:16, 28:19, 28:22, 29:1, 29:8, 29:10, 29:12, 29:15, 29:18, 29:21, 29:25, 30:4, 30:7, 30:18, 31:4, 31:21, 31:22, 31:25, 32:3, 32:10, 32:13, 32:23, 33:1, 33:5, 33:12, 33:15, 35:1, 35:3, 35:9, 35:11, 35:13, 36:1, 36:15, 36:23, 37:2, 37:4, 37:9, 37:18, 38:15, 38:19, 39:8, 39:20, 39:25, 40:16, 41:4, 41:20, 41:23, 43:5, 44:11, 44:20, 45:4,

45:6, 45:12, 45:15, 45:20, 45:24, 46:1, 46:5, 46:7, 46:17, 46:25, 48:2, 48:22, 49:3, 50:2, 50:16, 52:5, 52:22, 53:4, 53:7, 53:20, 53:23, 56:25, 57:8, 57:10, 58:2, 58:12, 62:8, 63:19, 70:15
**MS** [4] - 4:11, 4:15, 4:17, 5:8, 8:19, 8:25
**multiple** [1] - 5:13
**Muslim** [2] - 34:15, 34:17
**must** [6] - 21:19, 22:6, 22:18, 40:8, 65:20, 65:22

## N

**N.W** [1] - 1:16
**name** [2] - 4:13, 4:17
**named** [1] - 7:19
**narco** [1] - 61:11
**narcotics** [1] - 61:7
**narrow** [1] - 12:24
**narrowly** [1] - 57:17
**Nasser** [7] - 3:21, 19:5, 28:13, 31:11, 42:25, 48:17
**national** [3] - 43:25, 67:12, 67:18
**National** [3] - 24:22, 51:17, 61:2
**nationals** [1] - 62:17
**nature** [2] - 15:18, 18:5
**naval** [1] - 62:6
**Navy** [1] - 45:19
**Nawar** [1] - 11:25
**necessarily** [1] - 17:21, 41:2, 53:21
**necessary** [4] - 38:9, 64:6, 64:21, 67:8
**need** [11] - 27:17, 38:23, 43:21, 44:21, 45:1, 46:9, 48:14, 51:4, 58:10, 60:7, 66:5
**needs** [1] - 58:6
**negotiated** [6] - 18:25, 19:6, 25:14, 27:2, 28:25, 30:10
**negotiating** [1] - 15:1
**negotiations** [2] - 43:11, 43:13
**network** [1] - 15:25
**never** [5] - 18:4, 28:5, 36:21, 51:3, 51:23

**new** [3] - 9:9, 39:2, 47:6
**New** [4] - 1:14, 2:3, 2:13
**NEWMAN** [1] - 2:5
**Newman** [1] - 4:22
**news** [2] - 16:4, 47:16
**next** [3] - 4:19, 12:15, 13:12
**nice** [1] - 28:19
**NJ** [1] - 2:15
**NJ-CCR** [1] - 2:15
**no-man's** [1] - 31:14
**nobody's** [1] - 44:6
**non** [7] - 16:12, 19:24, 19:25, 23:19, 52:19, 65:2, 65:14
**non-citizen** [1] - 65:14
**non-citizens** [2] - 52:19, 65:2
**non-criminal** [4] - 16:12, 19:24, 19:25, 23:19
**none** [3] - 7:11, 25:25, 48:10
**norm** [1] - 22:1
**note** [3] - 12:22, 56:16, 69:23
**noted** [1] - 51:8
**nothing** [3] - 25:10, 27:6, 30:13
**Nothing** [1] - 62:4
**notice** [2] - 6:6, 65:21
**notified** [1] - 65:20
**noting** [1] - 57:11
**novel** [1] - 56:8
**nowhere** [1] - 16:1
**number** [8] - 14:25, 15:10, 15:21, 15:25, 16:2, 32:13, 47:18, 57:3
**numbers** [3] - 32:16, 32:20, 33:4
**NW** [2] - 1:23, 2:17
**NY** [2] - 1:14, 2:13

### O

**O'Connor** [5] - 23:21, 59:17, 59:19, 60:6, 63:16
**Obama** [10] - 9:8, 21:3, 26:14, 28:11, 30:24, 32:18, 33:3, 45:6, 51:13, 68:2
**Obama's** [2] - 24:15, 24:17
**objective** [1] - 54:5
**observed** [1] - 8:2
**obvious** [1] - 67:19

**obviously** [6] - 17:9, 43:11, 65:8, 65:11, 66:25, 67:3
**occur** [1] - 44:5
**occurred** [1] - 49:5
**October** [1] - 51:15
**OF** [4] - 1:1, 1:8, 1:22, 2:2
**offended** [1] - 66:8
**offense** [1] - 25:24
**offer** [1] - 6:20
**office** [9] - 9:21, 15:1, 25:16, 26:23, 44:13, 44:18, 44:21
**Office** [2] - 9:23, 44:9
**offices** [1] - 45:1
**Official** [1] - 2:16
**official** [2] - 33:20, 47:10
**officials** [1] - 10:3
**old** [2] - 27:8, 27:9
**once** [5] - 33:19, 43:20, 55:2, 61:13, 66:11
**one** [37] - 9:20, 12:3, 12:9, 16:22, 17:19, 18:2, 18:9, 18:11, 18:24, 19:2, 19:24, 20:21, 23:6, 23:14, 24:4, 26:16, 26:21, 27:10, 28:8, 28:11, 30:11, 31:8, 32:15, 33:13, 33:24, 35:4, 35:6, 35:15, 38:5, 44:8, 50:17, 51:12, 52:11, 55:12, 55:23, 57:1, 63:11
**ones** [2] - 48:17, 67:23
**ongoing** [18] - 14:22, 15:22, 18:3, 36:5, 37:24, 49:12, 49:24, 50:9, 51:1, 51:9, 51:22, 52:1, 55:15, 55:16, 64:15, 66:4, 68:23, 70:9
**onus** [1] - 66:13
**open** [2] - 13:4, 42:1
**opening** [1] - 35:24
**operation** [1] - 44:16
**Operation** [2] - 60:20, 61:9
**operational** [1] - 38:11
**operations** [2] - 47:16, 64:14
**operatives** [1] - 61:5
**opine** [1] - 41:23
**opinion** [19] - 9:2, 13:3, 13:6, 14:13, 16:23, 17:16, 20:25, 40:13, 40:17, 41:5,

41:21, 41:25, 52:23, 53:5, 54:9, 57:5, 57:19, 63:16, 65:11
**opinions** [6] - 12:10, 13:12, 28:1, 41:3, 65:12, 69:20
**opportunity** [2] - 65:22, 66:10
**opposed** [4] - 14:24, 32:18, 52:15, 69:19
**opposition** [1] - 15:23
**option** [1] - 66:17
**oral** [2] - 6:3, 22:4
**ORAL** [1] - 1:8
**Order** [1] - 24:14
**order** [24] - 5:4, 5:12, 9:8, 19:10, 21:10, 21:13, 22:3, 24:15, 24:18, 24:19, 37:11, 42:7, 42:18, 43:8, 44:3, 45:14, 47:1, 47:5, 47:14, 62:3, 62:4, 62:11, 65:19
**ordered** [5] - 8:8, 8:12, 11:3, 11:7, 22:4
**ordering** [1] - 9:9
**orders** [8] - 5:21, 22:2, 24:13, 24:17, 61:25, 68:2, 70:7
**organizations** [1] - 34:16
**organized** [2] - 61:1, 68:13
**organizes** [1] - 44:13
**original** [2] - 7:8, 8:1
**originally** [1] - 63:10
**otherwise** [1] - 51:24
**out-of-office** [1] - 9:21
**outcome** [1] - 56:3
**outright** [1] - 67:25
**outside** [1] - 66:15
**outstanding** [2] - 24:13, 57:2
**overcome** [2] - 20:15, 58:21
**overcoming** [1] - 58:23
**overreading** [1] - 14:12
**overrule** [1] - 69:15
**oversees** [1] - 44:15
**oversight** [1] - 27:17
**overview** [1] - 6:20
**owed** [1] - 57:24
**own** [1] - 59:14

### P

**P.C** [2] - 2:9, 34:14
**p.m** [1] - 70:18

**Page** [1] - 15:23
**pale** [1] - 19:13
**panel** [1] - 21:2
**panels** [2] - 12:18, 57:16
**paper** [2] - 10:5, 30:19
**paradigmatic** [1] - 18:22
**Pardiss** [2] - 1:12, 3:18
**pardon** [1] - 29:11
**parse** [1] - 52:11
**part** [8] - 14:16, 20:23, 22:19, 24:15, 24:17, 54:17, 63:11, 64:21
**participating** [1] - 34:4
**participation** [1] - 38:12
**particular** [1] - 60:9, 63:4, 67:23
**particularly** [3] - 5:18, 13:10, 16:18
**particulars** [1] - 42:4
**parties** [5] - 3:5, 5:6, 18:10, 22:5, 65:18
**parts** [1] - 43:10
**party** [1] - 19:10
**passed** [1] - 27:10
**past** [6] - 9:4, 16:15, 46:6, 53:18, 58:19, 60:3
**path** [1] - 56:3
**pay** [2] - 41:7, 67:11
**peace** [2] - 36:21, 39:15
**penalty** [1] - 56:15
**pending** [1] - 22:13
**people** [16] - 17:9, 18:18, 27:5, 30:9, 31:5, 31:7, 32:25, 33:7, 33:9, 39:19, 46:6, 47:21, 47:24, 49:21, 50:14, 69:8
**percent** [4] - 28:2, 28:3, 32:13
**perfectly** [1] - 46:8
**perhaps** [1] - 40:6
**period** [3] - 29:4, 46:20
**periodic** [3] - 25:2, 47:6, 49:7
**permanent** [1] - 47:17
**permissible** [1] - 59:20
**permit** [1] - 58:18
**permits** [2] - 38:16, 60:8
**permitted** [2] - 36:5, 43:9

**perpetual** [5] - 9:12, 10:13, 54:15, 55:4, 59:16
**perpetuated** [1] - 38:20
**perpetuity** [2] - 14:24, 19:20
**person** [1] - 29:19
**personal** [1] - 7:4
**perspective** [1] - 30:21
**persuasive** [3] - 34:1, 36:3, 66:14
**petition** [2] - 29:22, 34:13
**Petitioner** [6] - 3:14, 3:18, 3:19, 3:20, 4:22, 27:7
**petitioner** [8] - 3:21, 26:18, 40:5, 42:14, 42:17, 47:15, 66:12, 66:13
**petitioner's** [1] - 21:12
**Petitioners** [3] - 1:3, 1:11, 2:2
**petitioners** [38] - 3:7, 3:16, 5:14, 5:16, 5:25, 6:4, 6:6, 6:22, 7:6, 7:11, 7:20, 9:4, 9:15, 17:10, 18:23, 18:24, 20:13, 25:15, 25:20, 26:1, 33:24, 34:3, 35:5, 36:11, 36:25, 37:10, 37:22, 38:1, 39:9, 42:11, 42:19, 54:16, 55:17, 56:13, 56:16, 58:25, 59:1, 69:12
**petitioners'** [3] - 34:22, 36:5, 40:3
**ph** [1] - 11:25
**phone** [2] - 4:4, 5:7
**piece** [3] - 30:19, 60:7, 61:20
**piecing** [1] - 30:13
**place** [1] - 6:22
**plans** [1] - 38:11
**play** [2] - 16:14, 55:11
**playback** [1] - 6:9
**played** [1] - 6:10
**pleadings** [1] - 30:17
**pleased** [1] - 63:12
**pled** [1] - 26:25
**pledged** [1] - 50:13
**plurality** [1] - 65:11
**PO** [1] - 2:13
**point** [21] - 7:16, 16:17, 31:19, 33:13, 33:18, 37:20, 39:8, 39:21, 40:2, 46:25,

49:22, 50:2, 53:8,
55:18, 55:22, 57:21,
60:1, 61:19, 63:21,
65:14, 67:20
**pointed** [2] - 54:8,
55:9
**points** [1] - 62:3
**policies** [5] - 25:1,
44:2, 44:24, 45:18,
46:2
**policy** [5] - 10:5,
24:23, 33:22, 46:19,
47:25
**political** [8] - 16:21,
17:1, 19:14, 49:14,
49:22, 50:8, 51:7,
59:9
**poppy** [1] - 61:8
**pose** [2] - 37:14, 39:22
**position** [13] - 10:12,
10:15, 14:2, 14:4,
17:22, 17:23, 33:16,
37:10, 47:10, 47:12,
58:16, 62:19, 69:15
**possibility** [1] - 12:21
**possibly** [1] - 19:20
**post** [10] - 12:25, 13:7,
13:18, 13:21, 13:24,
14:7, 14:11, 44:17,
46:22, 52:8
**post-election** [1] -
46:22
**post-transfer** [1] -
44:17
**potential** [2] - 30:23,
66:4
**potentially** [1] - 30:23
**pounds** [1] - 27:10
**power** [3] - 50:3, 59:2,
62:22
**Powers** [1] - 51:11
**POWs** [1] - 18:12
**practical** [3] - 27:20,
59:22, 64:9
**practices** [2] - 44:3,
44:24
**PRB** [4] - 27:8, 31:1,
31:14, 42:12
**PRBs** [3] - 8:9, 33:15,
33:16
**precedent** [3] - 36:3,
40:20, 56:18
**precedents** [2] -
21:20, 21:23
**prejudice** [1] - 35:16
**prepared** [1] - 25:8
**preparing** [2] - 9:11,
10:12
**preponderance** [19] -
19:21, 20:10, 20:22,

21:5, 21:6, 21:12,
21:24, 22:10, 22:11,
22:16, 22:18, 22:21,
23:6, 23:15, 23:22,
32:15, 54:9, 54:11,
66:19
**present** [4] - 20:13,
50:20, 62:14, 68:8
**presentation** [2] -
22:12, 34:1
**presented** [2] - 38:24,
69:14
**presently** [2] - 17:4,
27:7
**presents** [1] - 59:17
**President** [15] - 24:14,
24:15, 24:17, 24:24,
25:6, 32:19, 43:8,
45:6, 45:11, 46:21,
47:2, 51:13, 68:2,
68:3, 70:6
**President's** [3] - 9:7,
47:10, 51:19
**presidential** [2] - 9:4,
68:1
**Presidents** [1] - 51:13
**press** [3] - 16:4,
60:16, 60:19
**presuming** [1] - 11:2
**presumption** [4] -
66:8, 66:9, 66:18,
66:20
**presumptions** [2] -
5:23, 53:18
**prevent** [5] - 18:1,
54:3, 54:16, 60:8,
62:5
**preventative** [1] - 20:1
**preventing** [1] - 59:12
**preventive** [2] - 17:25,
23:20
**prevents** [1] - 56:11
**previously** [3] - 42:11,
42:19, 46:13
**primarily** [1] - 60:21
**primary** [2] - 40:3,
61:16
**principle** [1] - 56:11
**principles** [1] - 64:9
**prison** [4] - 9:8, 34:7,
49:21, 58:1
**prisoner** [1] - 18:22
**prisoner-of-war** [1] -
18:22
**prisoners** [2] - 36:19,
55:13
**problem** [2] - 8:10,
52:16
**problems** [1] - 35:25
**procedural** [3] -

55:19, 65:7, 65:17
**procedurally** [1] -
33:19
**procedure** [2] - 20:23,
55:24
**procedures** [5] - 5:20,
9:9, 55:20, 55:25,
59:5
**proceed** [3] - 6:14,
43:2, 67:7
**Proceedings** [1] -
2:19
**proceedings** [7] -
6:13, 22:1, 65:15,
66:3, 66:7, 68:13,
70:18
**process** [63] - 5:16,
6:19, 10:13, 10:15,
10:16, 10:25, 11:2,
11:5, 12:8, 13:22,
14:17, 16:11, 16:13,
17:23, 18:5, 19:17,
20:7, 23:8, 23:10,
23:11, 23:15, 23:18,
24:4, 27:4, 31:19,
32:20, 34:13, 34:19,
36:7, 40:23, 41:1,
43:10, 43:22, 52:2,
52:21, 52:25, 53:13,
53:25, 54:8, 54:13,
54:14, 55:19, 57:10,
57:13, 57:24, 58:5,
58:18, 59:5, 61:21,
61:24, 64:24, 65:1,
65:6, 65:8, 65:18,
66:23, 67:2, 67:9,
68:12, 68:17, 68:18,
69:4
**proclamation** [2] -
10:5, 11:23
**produce** [1] - 22:2,
66:19
**produced** [1] - 2:20
**profile** [1] - 27:7
**Programs** [1] - 1:23
**progress** [1] - 44:17
**prolonged** [1] - 5:19
**promise** [1] - 39:16
**promises** [2] - 9:7,
65:24
**pronouncements** [2] -
27:11, 33:23
**proof** [4] - 7:4, 8:15,
20:3, 68:11
**proper** [5] - 49:17,
55:24, 56:3, 56:7,
67:11
**properly** [3] - 6:11,
38:24, 39:12
**proposed** [1] - 43:16

**prosecute** [1] - 51:5
**prosecuted** [1] - 48:25
**prosecuting** [1] -
35:14
**prosecution** [6] -
25:23, 38:7, 38:8,
48:19, 49:5, 49:10
**prosecutions** [1] -
48:20
**prospects** [1] - 41:22
**protect** [2] - 38:9,
47:19
**protects** [1] - 21:21
**provide** [2] - 36:4,
53:17
**provided** [2] - 53:18,
66:10
**proving** [1] - 21:12
**provision** [1] - 47:8
**prudent** [2] - 48:6,
67:9
**public** [1] - 4:8
**Puerto** [1] - 14:8
**punishment** [1] - 54:2
**purporting** [1] - 16:24
**purpose** [6] - 16:17,
17:11, 17:25, 18:1,
20:1, 23:19, 54:2,
59:11, 64:4, 69:7
**pursuant** [1] - 38:21
**put** [5] - 31:5, 31:7,
44:6, 50:14, 50:21
**puts** [2] - 20:7, 66:11

## Q

**Qaeda** [34] - 10:9,
15:11, 16:1, 16:7,
16:9, 22:19, 37:6,
37:24, 38:11, 38:12,
38:14, 38:19, 38:22,
38:23, 39:7, 39:10,
39:16, 39:17, 50:13,
50:20, 50:22, 51:15,
60:17, 60:19, 60:21,
60:22, 60:23, 60:24,
60:25, 63:11, 68:25,
69:8
**Qaeda's** [1] - 61:3
**Qaeda/the** [2] - 20:3,
51:10
**Qahtani** [1] - 15:25
**quandary** [1] - 59:17
**questionable** [1] -
22:24
**questions** [5] - 20:19,
24:11, 27:19, 35:25,
37:11
**quite** [2] - 18:15,
48:11

**quote** [9] - 9:12, 17:1,
21:11, 21:14, 21:19,
46:23, 46:24, 60:24,
62:9

## R

**R-A-Y-N-E-R** [1] - 4:15
**Rabbani** [3] - 5:1, 5:9,
9:21
**raise** [2] - 31:9, 32:6
**raised** [3] - 7:10,
49:15, 67:23
**raising** [2] - 5:15, 5:17
**Randolph** [2] - 21:1,
22:22
**Randolph's** [1] - 54:9
**Rasul** [4] - 41:8,
52:23, 53:2, 53:8
**ratified** [1] - 21:22
**rationale** [2] - 17:13,
21:7, 53:12
**rationality** [1] - 16:11
**RAYNER** [5] - 4:11,
4:15, 4:17, 8:19,
8:25
**Rayner** [5] - 2:2, 4:11,
4:12, 4:18, 8:20
**re** [2] - 3:3, 18:13
**re-enter** [1] - 18:13
**reach** [2] - 44:22,
44:23
**reached** [1] - 40:14
**reaches** [1] - 41:15
**reaction** [1] - 34:6
**read** [9] - 6:15, 7:10,
9:18, 29:6, 45:21,
57:17, 57:18, 57:19
**readily** [1] - 22:10
**reading** [3] - 31:17,
46:8, 68:14
**ready** [1] - 6:14
**reality** [1] - 18:19
**really** [1] - 63:13
**reason** [8] - 16:12,
32:18, 44:21, 52:13,
54:4, 67:10
**reasonable** [2] - 46:8,
70:11
**reasonably** [1] - 16:16
**reasons** [2] - 18:8,
22:14
**rebut** [1] - 66:14
**rebuttable** [1] - 66:10
**rebuttal** [2] - 56:24,
66:10
**rebutted** [1] - 66:20
**received** [2] - 22:7,
38:25
**recent** [1] - 38:8

**recently** [2] - 6:5, 49:6
**recess** [1] - 70:13
**recidivism** [1] - 32:10
**recidivists** [1] - 28:4
**recognize** [2] - 12:18, 13:22
**recognizes** [1] - 12:13
**recognizing** [1] - 47:13
**recommend** [1] - 24:23
**recommendation** [1] - 33:21
**recommended** [2] - 38:7, 48:21
**reconsider** [1] - 41:11
**reconsideration** [1] - 41:10
**record** [12] - 3:6, 4:10, 9:18, 28:15, 28:16, 30:3, 32:11, 37:21, 50:21, 60:11, 64:19, 69:23
**recorded** [1] - 2:19
**records** [1] - 7:17
**recruit** [1] - 61:4
**refer** [2] - 41:8, 49:18
**referrals** [1] - 49:5
**referred** [4] - 35:5, 41:8, 43:10, 57:3
**referring** [2] - 45:22, 49:6
**refugees** [2] - 52:12, 52:16
**refusal** [1] - 67:25
**refuse** [1] - 30:15
**regard** [1] - 50:7
**regarding** [3] - 8:14, 9:2, 24:24
**regional** [2] - 10:1, 10:2
**regrettably** [2] - 8:2, 62:13
**reinstate** [1] - 53:9
**reissued** [1] - 53:5
**rejected** [2] - 40:3, 52:23
**rejects** [1] - 62:23
**related** [8] - 9:23, 9:25, 38:14, 39:6, 42:16, 50:11, 68:24, 69:7
**relationship** [1] - 38:10
**release** [14] - 19:15, 20:8, 25:21, 28:12, 28:24, 29:7, 34:3, 40:8, 47:14, 47:25, 53:1, 55:13, 67:25, 68:4

**released** [18] - 8:8, 8:12, 17:11, 25:10, 26:18, 26:21, 27:1, 27:24, 28:5, 31:16, 33:3, 33:11, 54:20, 54:21, 54:25, 57:5, 61:22, 70:4
**releases** [3] - 15:1, 46:23, 47:23
**releasing** [3] - 9:6, 9:17, 47:24
**relevant** [5] - 19:16, 39:2, 42:16, 64:7, 65:15
**reliable** [1] - 66:6
**relief** [2] - 11:7, 56:20
**reluctance** [1] - 67:24
**rely** [2] - 17:21, 60:15
**remain** [4] - 48:15, 51:14, 67:14, 68:2
**remaining** [1] - 24:16
**remains** [3] - 48:13, 64:25, 66:9
**remand** [1] - 59:4
**remanded** [1] - 53:2
**remarkable** [1] - 15:14
**remember** [2] - 35:10, 38:15
**reminds** [1] - 62:16
**renouncing** [1] - 27:11
**repatriate** [1] - 18:12
**repealed** [1] - 51:23
**repeating** [1] - 12:4
**repeats** [1] - 13:11
**replenishing** [1] - 18:17
**reply** [1] - 6:2
**report** [6] - 15:21, 25:6, 43:1, 45:9, 45:17, 46:10
**REPORTER** [1] - 13:19
**Reporter** [2] - 2:15, 2:16
**reports** [1] - 47:16
**represented** [2] - 28:9, 30:16
**representing** [4] - 4:6, 5:6, 5:9, 69:25
**REPRIEVE** [1] - 2:12
**request** [2] - 6:3, 14:17
**requested** [2] - 5:12, 24:18
**require** [1] - 23:9
**required** [4] - 21:15, 40:8, 42:9, 44:2
**requires** [8] - 16:11, 20:8, 22:15, 23:10,

23:18, 43:11, 47:5, 65:4
**requiring** [2] - 45:16, 68:16
**resemble** [1] - 60:3
**Resolute** [2] - 60:20, 61:10
**resolution** [1] - 65:3
**Resolutions** [1] - 51:11
**resolved** [2] - 33:11, 70:11
**respect** [8] - 10:15, 18:5, 57:15, 59:7, 60:19, 61:21, 62:2, 62:19
**respectfully** [4] - 12:2, 24:2, 27:19, 34:5
**respond** [1] - 6:1
**Respondents** [2] - 1:6, 1:21
**responses** [2] - 17:15, 17:18
**rest** [1] - 26:8
**resting** [1] - 61:15
**result** [3] - 25:4, 25:9, 67:15
**resulted** [1] - 38:8
**results** [1] - 25:5
**retain** [1] - 54:3
**return** [16] - 18:2, 20:4, 20:14, 23:21, 23:24, 34:2, 54:3, 54:20, 54:22, 54:25, 55:3, 56:15, 56:17, 58:23, 59:12, 60:8
**returning** [3] - 17:12, 43:15, 56:11
**reveal** [1] - 18:3
**revealing** [1] - 9:18
**revenue** [1] - 61:12
**reverse** [1] - 41:16
**reversing** [1] - 9:8
**review** [19] - 5:13, 7:9, 10:23, 25:22, 25:23, 26:9, 32:19, 33:17, 35:18, 38:8, 38:9, 39:1, 42:24, 47:7, 49:7, 65:6, 67:3, 70:8
**reviewed** [6] - 7:17, 31:14, 31:15, 34:14, 34:18, 39:2
**reviewing** [2] - 48:20, 60:12
**reviews** [2] - 25:3, 48:19
**revisit** [1] - 27:18
**revisited** [1] - 42:22
**revoked** [1] - 51:24

**rhetoric** [1] - 46:22
**Rico** [1] - 14:9
**rightly** [1] - 56:9
**Rights** [1] - 3:13
**rights** [20] - 10:19, 11:7, 11:13, 12:8, 14:17, 34:15, 35:21, 52:14, 52:19, 52:21, 53:13, 53:21, 62:18, 62:21, 63:1, 65:13, 65:18, 67:17, 68:21
**RIGHTS** [1] - 1:13
**rigorous** [2] - 24:5, 32:19
**ripe** [1] - 37:20
**rise** [2] - 47:18, 70:16
**ROBERTS** [1] - 1:19
**Roderick** [1] - 34:17
**rogue** [1] - 57:20
**role** [2] - 49:25, 56:7
**Ronald** [2] - 1:21, 3:25
**room** [1] - 6:7
**Room** [1] - 2:16
**rotate** [1] - 32:25
**round** [1] - 19:17
**routed** [1] - 43:21
**RPR** [1] - 2:15
**rubber** [1] - 34:2
**rule** [2] - 59:1, 59:4
**rules** [2] - 8:14, 20:23
**ruling** [1] - 21:17
**rulings** [4] - 5:23, 53:17, 55:20, 55:21
**run** [4] - 45:10, 56:13, 56:14, 63:4

## S

**sad** [1] - 9:18
**safeguarding** [1] - 67:13
**satisfied** [2] - 22:8, 42:17
**satisfies** [1] - 66:16
**Saudi** [4] - 19:4, 19:11, 26:18, 27:2
**Saudis** [1] - 30:10
**saw** [1] - 30:21
**Scalia** [1] - 65:13
**scenario** [1] - 18:22
**scheduled** [1] - 28:24
**scholars** [1] - 34:13
**SCHOOL** [1] - 2:2
**scope** [1] - 21:18
**second** [7] - 23:13, 50:8, 51:2, 52:24, 54:17, 55:8, 60:23
**second-guessing** [1] - 50:8
**secondary** [1] - 20:8

**secretary** [1] - 28:10
**Secretary** [19] - 24:20, 24:21, 25:6, 25:8, 28:20, 29:3, 30:14, 33:21, 42:13, 42:21, 43:23, 45:11, 45:16, 47:3, 62:2, 62:5, 62:9, 68:5
**section** [1] - 52:20
**Section** [4] - 45:24, 52:8, 52:9, 62:3
**secured** [1] - 7:2
**security** [7] - 18:24, 19:9, 24:6, 43:25, 67:12, 67:14, 67:18
**Security** [1] - 24:21
**see** [4] - 7:23, 31:16, 48:25, 70:11
**seek** [1] - 56:20
**seeking** [2] - 33:17, 59:4
**seeks** [1] - 65:5
**seized** [1] - 66:25
**self** [2] - 10:8, 60:5
**self-serving** [2] - 10:8, 60:5
**semi** [1] - 51:11
**semi-annual** [1] - 51:11
**Senate** [1] - 61:9
**sense** [1] - 40:7
**sensitive** [1] - 67:11
**sent** [1] - 19:10
**sentence** [3] - 26:25, 27:1, 70:3
**separate** [2] - 53:14, 59:7
**separately** [2] - 58:25, 59:13
**separating** [2] - 48:17, 57:25
**series** [1] - 12:6
**serious** [3] - 59:19, 69:14, 70:3
**served** [1] - 26:25
**serving** [2] - 10:8, 60:5
**set** [2] - 22:9, 24:14
**setting** [1] - 67:8
**seven** [3] - 13:6, 14:10, 55:24
**several** [6] - 4:4, 8:7, 17:15, 17:18, 27:23, 65:11
**shall** [3] - 24:23, 25:3, 62:4
**shape** [1] - 48:10
**Sharabi** [1] - 4:23
**Sharqawi** [4] - 3:14, 3:18, 27:8, 33:25

**Shayana** [2] - 1:12, 3:19
**Shelby** [3] - 2:12, 5:9, 9:20
**shift** [1] - 66:13
**shifting** [1] - 47:17
**short** [2] - 6:6, 56:23
**shorthand** [1] - 2:19
**show** [4] - 21:6, 22:18, 57:23, 58:6
**showing** [1] - 21:15, 22:6
**shut** [1] - 27:25
**sic** [3] - 34:13, 46:19, 64:9
**sick** [1] - 27:10
**side** [1] - 49:4
**signed** [1] - 36:21
**similar** [1] - 30:25
**simply** [2] - 34:3, 54:17
**single** [1] - 15:16
**sit** [1] - 63:18
**sitting** [2] - 31:5, 31:8
**situation** [3] - 42:6, 42:25, 64:13
**slow** [1] - 13:19
**Smith** [1] - 34:17
**soil** [1] - 62:18
**Solange** [1] - 34:17
**solely** [1] - 54:2
**soliloquy** [1] - 63:20
**someone** [4] - 12:4, 19:21, 20:2, 23:17
**sometimes** [1] - 41:6
**somewhat** [1] - 42:25
**sorry** [6] - 5:8, 7:7, 8:19, 13:20, 26:18, 31:25
**sort** [6] - 15:5, 18:18, 18:21, 23:7, 27:17, 30:12
**sorties** [4] - 15:10, 15:17, 15:21, 60:1
**sound** [1] - 4:14
**source** [2] - 32:15, 61:19
**sources** [2] - 16:3, 16:6
**sourcing** [1] - 61:6
**space** [1] - 37:23
**speaking** [2] - 28:15, 31:24
**speaks** [1] - 59:15
**Special** [2] - 25:16, 44:9
**specifically** [2] - 47:2, 52:24
**spell** [1] - 4:13

**spinoff** [1] - 16:9
**spun** [1] - 16:10
**staff** [2] - 9:11, 10:11
**staffed** [1] - 9:24
**staffing** [2] - 25:18, 25:19
**stamp** [1] - 34:2
**stand** [3] - 6:21, 50:18, 70:13
**standard** [16] - 19:21, 20:21, 21:5, 21:24, 21:25, 22:9, 22:11, 22:16, 22:23, 23:6, 23:14, 23:22, 54:10, 54:11, 56:3, 56:8
**standards** [1] - 68:10
**stands** [1] - 70:17
**start** [4] - 6:17, 35:3, 35:23, 52:22
**started** [2] - 12:7, 55:15
**starting** [1] - 3:7
**state** [6] - 18:10, 19:10, 34:6, 34:7, 48:24, 53:10
**State** [8] - 9:20, 15:1, 24:21, 30:10, 43:11, 44:8, 44:21, 68:25
**statement** [9] - 14:7, 14:9, 14:12, 17:20, 35:24, 46:21, 46:22, 68:15, 68:17
**statements** [5] - 12:11, 27:12, 40:24, 40:25, 50:21
**STATES** [2] - 1:1, 1:9
**States** [13] - 12:14, 18:11, 24:1, 24:3, 24:7, 36:11, 43:18, 53:1, 64:16, 64:18, 64:19, 69:10, 70:3
**States's** [1] - 37:13
**stating** [1] - 53:5
**station** [1] - 45:19
**statistics** [1] - 32:11
**status** [6] - 5:18, 31:12, 46:10, 49:8, 49:9, 65:3
**statute** [2] - 43:24, 53:15
**statutory** [1] - 21:25
**stayed** [1] - 35:15
**step** [4] - 3:5, 49:22, 49:25, 50:4
**steps** [1] - 44:1
**still** [21] - 14:22, 26:4, 29:23, 31:4, 31:8, 37:8, 37:21, 42:2, 49:7, 49:20, 49:22, 49:23, 50:20, 50:22,

50:23, 51:25, 54:6, 57:6, 64:19, 68:22
**stops** [1] - 40:9
**streams** [1] - 61:12
**Street** [4] - 1:19, 2:3, 2:6, 2:10
**stress** [1] - 14:5
**strict** [1] - 66:17
**strike** [1] - 61:8
**strikes** [1] - 62:20
**stripped** [1] - 9:3
**strongly** [1] - 11:20
**studied** [1] - 16:2
**study** [2] - 14:14, 25:5
**subcontinent** [1] - 60:22
**subject** [2] - 49:7, 64:1
**submission** [2] - 9:10, 25:13
**submissions** [2] - 15:20, 18:3
**submit** [1] - 59:25
**submitted** [1] - 6:16
**subsequent** [3] - 12:18, 47:14, 57:16
**subsequently** [1] - 17:20
**substantial** [2] - 68:7, 69:12
**substantive** [2] - 10:17, 42:15
**substitute** [1] - 33:17
**successful** [2] - 27:23, 27:24
**sufficient** [3] - 20:3, 67:1, 68:11
**suggest** [2] - 15:22, 55:24
**suggested** [1] - 40:12
**suggests** [1] - 15:12
**SUHAIL** [1] - 1:2
**Suhail** [2] - 3:3, 4:22
**sui** [1] - 54:1
**Suite** [1] - 2:6
**SULLIVAN** [1] - 5:8
**Sullivan** [2] - 2:12, 5:9, 9:20
**SULLIVAN-BENNIS** [1] - 5:8
**Sullivan-Bennis** [2] - 2:12, 5:9, 9:20
**sunset** [1] - 59:15
**superfluous** [1] - 47:9
**supplemental** [3] - 9:10, 22:5, 22:10
**supplied** [1] - 47:15
**support** [9] - 7:1, 19:23, 21:13, 22:3, 34:13, 34:22, 39:16,

69:8, 69:13
**Support** [2] - 60:20, 61:10
**Supreme** [20] - 10:18, 10:21, 11:2, 13:14, 19:23, 21:17, 36:8, 41:2, 41:5, 41:9, 41:13, 52:18, 53:2, 57:15, 57:18, 63:25, 68:14, 68:19, 69:16, 69:17
**surrender** [1] - 10:10
**surrenders** [1] - 15:12
**suspect** [1] - 17:14
**suspected** [1] - 32:14
**suspension** [6] - 10:23, 13:17, 22:15, 41:16, 53:12, 57:14
**sustain** [1] - 54:12
**sympathy** [1] - 67:19
**Syria** [1] - 69:1
**system** [2] - 56:12, 68:8, 69:25

---

**T**

**table** [3] - 3:14, 3:17, 3:25
**tailored** [1] - 66:3
**Taliban** [15] - 16:6, 20:3, 37:24, 39:10, 39:16, 50:23, 51:10, 51:15, 61:6, 61:8, 61:11, 64:14, 64:17, 68:25, 69:9
**talks** [2] - 18:17, 64:23
**task** [3] - 31:2, 42:12, 49:9
**Tatel** [1] - 8:2
**tea** [1] - 68:14
**technical** [1] - 57:1
**technicality** [1] - 17:21
**TELECONFERENCE** [1] - 2:1
**temporal** [2] - 20:7, 40:13
**temporary** [1] - 59:11
**term** [1] - 33:3
**terminated** [1] - 16:25
**terms** [2] - 9:4, 27:1
**territorial** [1] - 50:10
**terrorism** [2] - 7:2, 67:22
**terrorists** [1] - 50:11
**Terry** [2] - 1:22, 4:1
**test** [1] - 17:23
**testimony** [3] - 16:4, 60:16, 61:9
**THE** [137] - 1:1, 1:1,

1:8, 3:2, 3:7, 3:10, 3:22, 4:2, 4:13, 4:16, 4:18, 4:24, 5:2, 5:11, 7:9, 7:15, 7:17, 7:19, 7:22, 8:5, 8:7, 8:11, 8:16, 8:22, 11:1, 11:5, 11:10, 11:15, 11:22, 11:24, 12:3, 12:15, 12:20, 13:2, 13:9, 13:19, 14:1, 14:16, 16:19, 17:16, 18:14, 19:1, 19:4, 19:8, 20:17, 20:19, 20:21, 21:1, 23:3, 24:11, 25:10, 25:20, 26:2, 26:4, 26:11, 26:16, 26:21, 27:20, 28:18, 28:20, 28:24, 29:6, 29:9, 29:11, 29:13, 29:17, 29:19, 29:24, 30:1, 30:6, 30:16, 31:3, 31:9, 31:23, 32:2, 32:5, 32:12, 32:22, 32:24, 33:2, 33:6, 33:14, 34:9, 35:2, 35:8, 35:10, 35:12, 35:17, 36:13, 36:17, 36:24, 37:3, 37:5, 37:17, 38:5, 38:18, 38:25, 39:14, 39:24, 40:12, 40:23, 41:18, 41:21, 41:25, 44:8, 44:12, 45:3, 45:5, 45:7, 45:13, 45:16, 45:23, 45:25, 46:2, 46:6, 46:11, 46:18, 47:12, 48:16, 48:24, 49:15, 50:6, 52:4, 52:6, 53:2, 53:5, 53:13, 53:21, 56:21, 57:7, 57:9, 57:21, 58:3, 62:7, 63:7, 63:20, 70:16
**themselves** [4] - 4:5, 4:10, 6:4, 51:5
**theory** [3] - 36:19, 36:24, 38:5
**therefore** [6] - 25:17, 27:1, 41:3, 41:16, 51:2, 64:22
**they've** [5] - 5:17, 24:7, 32:17, 34:3, 58:17
**thin** [1] - 7:3
**Thomas** [2] - 1:18, 3:21
**THOMAS** [1] - 1:8
**threat** [6] - 24:2, 24:6, 43:14, 43:17, 43:19,

60:24
**three** [4] - 4:6, 12:10, 33:19, 35:13
**threshold** [1] - 18:19
**thrown** [1] - 10:4
**tied** [2] - 16:16, 23:21
**timing** [1] - 30:20
**Timothy** [1] - 2:15
**today** [12] - 4:3, 4:7, 4:9, 5:3, 6:13, 6:23, 28:9, 50:5, 50:6, 51:6, 55:15, 56:5
**Tofiq** [3] - 3:19, 5:10, 57:5
**together** [1] - 30:13
**Tom** [2] - 28:16, 31:25
**tomorrow** [1] - 44:6
**torture** [1] - 34:21
**Torture** [1] - 34:23
**totally** [4] - 14:12, 15:17, 16:10, 47:8
**tout** [1] - 24:4
**towards** [1] - 45:8
**town** [1] - 34:24
**trace** [1] - 69:22
**train** [1] - 61:4
**TRANSCRIPT** [1] - 1:8
**transcript** [3] - 2:19, 6:10, 60:12
**transcription** [1] - 2:20
**transfer** [24] - 25:1, 30:15, 31:12, 42:11, 42:12, 42:19, 42:20, 42:21, 43:3, 43:16, 43:17, 43:19, 43:20, 43:24, 44:13, 44:15, 44:17, 45:18, 46:12, 46:13, 46:15, 47:3, 49:8, 61:21
**transferred** [10] - 26:12, 30:23, 42:15, 43:7, 43:14, 44:6, 44:16, 48:11, 48:12, 48:14
**transferring** [1] - 62:5
**transfers** [8] - 25:14, 43:9, 44:4, 44:14, 46:1, 46:20, 47:7, 47:11
**translated** [1] - 6:11
**treat** [2] - 13:9, 13:13
**treatment** [1] - 68:9
**treaty** [1] - 36:21
**trial** [6] - 6:24, 8:11, 27:22, 35:20, 35:22, 57:22
**trials** [2] - 5:22, 7:15
**tribunals** [1] - 67:4
**tried** [1] - 35:8

**tries** [1] - 10:4
**troop** [1] - 60:1
**troops** [2] - 15:9, 64:19
**true** [2] - 38:1, 40:8
**TRUMP** [1] - 1:5
**Trump** [10] - 3:3, 19:15, 26:19, 26:22, 28:21, 28:23, 43:8, 47:2, 51:13
**Trump's** [3] - 24:14, 46:21, 68:3
**try** [1] - 27:22
**trying** [3] - 52:10, 60:23, 67:16
**turn** [1] - 52:2
**turned** [1] - 10:3
**turning** [1] - 49:11
**Twitter** [1] - 47:12
**two** [21] - 9:15, 13:12, 14:17, 18:5, 18:10, 18:23, 20:19, 23:4, 25:15, 25:21, 26:16, 27:14, 28:8, 33:24, 35:15, 43:4, 46:13, 51:20, 54:14, 59:21
**typically** [2] - 6:25, 7:4

## U

**U.S** [6] - 1:22, 2:16, 18:10, 45:19, 60:25, 62:6
**ultimately** [1] - 43:23
**unannounced** [1] - 46:19
**unaware** [1] - 46:8
**unbounded** [1] - 62:25
**unchecked** [1] - 62:24
**uncommon** [1] - 66:3
**unconditionally** [2] - 10:10, 15:12
**unconstitutional** [1] - 69:6
**uncontested** [1] - 11:12
**under** [38] - 5:21, 14:1, 17:23, 23:7, 23:15, 26:6, 31:1, 32:18, 33:9, 33:20, 36:5, 36:7, 36:19, 36:24, 37:5, 38:2, 39:12, 40:9, 43:8, 44:3, 45:13, 47:4, 50:10, 50:14, 51:19, 52:20, 53:24, 53:25, 54:18, 59:10, 59:17, 67:25, 68:5, 68:20, 69:11
**undercutting** [1] -

56:10
**undermine** [1] - 17:11
**underscores** [1] - 27:3
**understandable** [1] - 34:6
**understood** [1] - 57:9
**undertaken** [2] - 33:19, 61:25
**unfortunately** [1] - 33:7
**UNITED** [2] - 1:1, 1:9
**United** [14] - 12:14, 18:11, 24:1, 24:3, 24:7, 36:11, 37:13, 43:18, 53:1, 64:15, 64:18, 64:19, 69:10, 70:3
**UNIVERSITY** [1] - 2:2
**unlawful** [1] - 58:15
**unless** [1] - 61:25
**unlike** [7] - 9:3, 15:14, 18:7, 18:21, 59:23, 61:18, 64:10
**unlikely** [1] - 20:14
**unravel** [1] - 64:12
**unraveled** [2] - 55:9, 59:25
**unreason** [1] - 34:7
**unstated** [1] - 21:7
**unwilling** [2] - 53:10, 53:11
**up** [9] - 3:10, 25:18, 28:2, 30:2, 33:8, 34:3, 36:22, 59:3, 67:20
**update** [1] - 43:4
**upside** [1] - 63:3
**urge** [1] - 56:17
**uses** [1] - 55:12

## V

**variety** [1] - 42:15
**various** [1] - 4:9
**vary** [1] - 56:8
**veneer** [1] - 9:2
**VIA** [1] - 2:1
**viability** [1] - 68:8
**vibrant** [1] - 67:14
**victims** [1] - 34:21
**Victims** [1] - 34:23
**view** [7] - 8:4, 26:7, 33:18, 41:14, 41:19, 58:21, 59:18
**viewpoint** [1] - 39:15
**views** [1] - 41:24
**violates** [1] - 10:13
**violation** [2] - 40:21, 69:6
**violence** [1] - 27:12

**volunteer** [1] - 69:24

## W

**wait** [5] - 11:1, 29:23, 49:1
**waiting** [1] - 48:25
**waned** [1] - 27:18
**waning** [1] - 26:13
**wants** [1] - 49:20
**War** [3] - 18:22, 36:18, 51:11
**war** [35] - 14:21, 15:15, 16:25, 17:5, 17:6, 17:10, 17:11, 18:8, 18:22, 26:25, 27:5, 27:15, 36:6, 36:19, 36:21, 38:2, 40:6, 40:10, 49:24, 50:11, 54:18, 54:19, 54:23, 55:4, 55:6, 55:7, 55:9, 55:14, 55:15, 56:10, 59:10, 59:24, 60:4, 64:9, 64:11
**war-of-law** [1] - 64:9
**warlord** [1] - 50:12
**warranted** [1] - 39:4
**wars** [4] - 50:8, 53:25, 54:1, 54:25
**Washington** [6] - 1:3, 1:17, 1:24, 2:17, 34:16, 34:18
**ways** [2] - 23:4, 54:14
**weak** [1] - 33:19
**Wednesday** [1] - 1:4
**weeks** [1] - 26:14
**Weil** [1] - 34:23
**West** [1] - 2:3
**whatsoever** [1] - 52:13
**whole** [3] - 27:3, 44:1, 68:12
**Wilkinson** [1] - 34:23
**willing** [1] - 27:21
**WILTSIE** [48] - 3:24, 35:1, 35:3, 35:9, 35:11, 35:13, 36:1, 36:15, 36:23, 37:2, 37:4, 37:9, 37:18, 38:15, 38:19, 39:8, 39:20, 39:25, 40:16, 41:4, 41:20, 41:23, 43:5, 44:11, 44:20, 45:4, 45:6, 45:12, 45:15, 45:20, 45:24, 46:1, 46:5, 46:7, 46:17, 46:25, 48:2, 48:22, 49:3, 50:2, 50:16, 52:5, 52:22,

53:4, 53:7, 53:20, 53:23, 62:8
**Wiltsie** [7] - 1:21, 3:25, 34:25, 56:21, 57:11, 61:22, 62:2
**Wiltsie's** [1] - 57:21
**wish** [2] - 41:23, 59:3
**won** [2] - 58:8, 58:10
**words** [1] - 57:24
**works** [2] - 20:6, 30:20
**world** [1] - 39:6
**World** [1] - 18:22
**writ** [6] - 5:4, 5:12, 21:19, 21:21, 23:7, 65:4
**written** [1] - 12:9
**wrote** [1] - 63:16

## Y

**year** [8] - 15:16, 24:19, 40:3, 47:1, 51:9, 60:2
**years** [23] - 6:21, 6:23, 14:25, 17:19, 19:22, 20:3, 20:24, 22:1, 23:17, 23:18, 27:14, 33:20, 36:2, 36:25, 37:12, 37:13, 38:6, 59:21, 59:25, 62:13, 63:9, 67:20, 70:2
**Years'** [1] - 36:18
**York** [4] - 1:14, 2:3, 2:13
**yourself** [4] - 27:16, 28:14, 30:6, 31:23
**yourselves** [1] - 3:6