**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**KHALID AHMED QASSIM,**

**Petitioner,**

**v.**

**DONALD J. TRUMP, *et al.*,**

**Respondents.**

**Civil Action No. 1:04-cv-01194 (TFH)**

## RESPONDENTS' RESPONSE TO THE BRIEF OF *AMICI* LAW PROFESSORS

Respondents respectfully submit this response to the Brief of *Amici* Law Professors, ECF No. 1175 ("Br. of *Amici*"), pursuant to the Court's March 9, 2020 Order, ECF No. 1174.

In their Opposition to Petitioner's Motion to Modify Section I of the Case Management Order as it Pertains to Petitioner's Case, ECF No. 1166 ("Resps' Opp'n"), Respondents detailed how the Court and the parties had been guided by the Supreme Court's instructions in *Boumediene v. Bush*, 553 U.S. 723 (2008)—and by case law from contexts in which the Due Process Clause inarguably applied—when crafting the case management order and protective order governing these proceedings. *See* Resps' Opp'n at 5–13.[1] Thus, as Respondents explained in their Opposition, the current framework provides Petitioner protections consistent with the Due Process Clause, if it applied in this setting. *See id.* at 28–34.

[1] In light of this consistent approach—through which Respondents have, for over a decade, worked to ensure that the procedural requirements for meaningful review set out in *Boumediene* are not only met but exceeded—*amici* plainly err in suggesting a "resistance to *Boumediene*" on the part of the Government. Br. of *Amici* at 3. Indeed, although *amici* accuse Respondents of "seek[ing] to gut the *habeas* remedy," *id.* at 4, and contend that Petitioner "has not been afforded adequate process," *id.* at 7, they do not identify in their submission even a single example of any specific procedural protection that they contend Petitioner should have, but to which he does not presently have access. *See id., generally*.

Like Petitioner, *amici* overlook that reality and submit argument regarding abstract constitutional issues that this Court need not and should not reach. *See, e.g.*, *Qassim v. Trump*, 927 F.3d 522, 530 (D.C. Cir. 2019) (a Court should "not pass on questions of constitutionality unless such adjudication is unavoidable") (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1755 (2017) (alterations incorporated)). Rather than acknowledging the extensive procedural protections available under the current framework, *amici* take aim at what they characterize as the Government's position: the idea that Petitioner is entitled to no procedural protections at all in the context of this habeas litigation. Setting aside that this contention bears no relationship to the robust protections actually available to Petitioner, it also is not an accurate statement of the position taken by the Government in this litigation. From the outset of the Court's and the parties' efforts to construct a procedural framework for this unique litigation, Respondents have looked to the Supreme Court's guidance in *Boumediene* as to the procedural protection that must be provided to petitioners in these habeas cases, and have in many respects exceeded those minimum requirements by proposing to follow procedures from settings in which the Due Process Clause inarguably does apply. *See* Resps.' Opp'n at 5–13, 28–34 (describing the development of the procedural framework and explaining how it comports with what the Due Process Clause would require).

*Amici* also err in describing Respondents' position in this case as one that "noncitizens outside the *de jure* sovereignty of the United States are . . . categorically excluded from the protections of the Constitution," Br. of *Amici* at 2–3. And they are mistaken in the three arguments they advance against that straw man. First, *amici* err in arguing that the reasoning of *Boumediene* as to the Suspension Clause, including consideration of certain specific factors, should be extended to the Due Process Clause. *See id.* at 2–3, 5–8. The analysis in *Boumediene*

itself does not support such an extension, a point explicitly recognized by the Court of Appeals. The second argument *amici* advance, that habeas proceedings lacking adequate procedural protections amount to a suspension of the writ, fares no better. To be sure, *amici* are correct that habeas proceedings that deny adequate protections could amount to a suspension of the writ. But that argument has no application here, as the operative framework provides those procedural protections that the Supreme Court has mandated for these unique habeas cases, including through protections analogous to those available when the Due Process Clause applies. Finally, *amici* are wrong in arguing that application of the Due Process Clause to these proceedings would not be extraterritorial because this habeas case is before a federal district court in the United States; the precedent demonstrates that it is a party's presence or property in the United States that determines whether the Due Process Clause applies, rather than the location of the judicial proceedings in the United States.

For all these reasons, and for the reasons explained in Respondents' Opposition, the Court should deny the Petitioner's Motion to Modify § I of the Case Management Order as it Pertains to Petitioner's Case, ECF No. 1162 ("Petitioner's Motion").

## ARGUMENT

### I. This Court Should Not Extend *Boumediene*'s Analysis Regarding the Suspension Clause.

*Amici* submit that "[a]lthough *Boumediene* dealt specifically with the Suspension Clause, the government has suggested no reason why the analysis should be any different with respect to the Due Process Clause." Br. of *Amici* at 3. In fact, there are three. First, the Supreme Court's three-factor analysis in *Boumediene* depends upon the particular history and role of the Suspension Clause in the separation-of-powers framework set forth in the Constitution. Second,

guided by the limitations inherent in *Boumediene*'s holding and reasoning, the Court of Appeals in *Rasul v. Myers*, 563 F.3d 527, 529 (D.C. Cir. 2009), expressed disagreement with the argument that *Boumediene* created a generally-applicable test for the extraterritorial application of constitutional rights beyond the Suspension Clause—the very argument that *amici* advance here.[2] Third, the Court of Appeals has recognized that even if "*Boumediene* ha[d] eroded the precedential force" of the case law addressing the extraterritorial reach of the Due Process Clause, such a decision would be for the Supreme Court alone to make. *Id.* For all these reasons, this Court should reject *amici*'s argument.

### A. The Supreme Court in *Boumediene* Limited its Holding to the Suspension Clause.

To begin with, in arguing that *Boumediene*'s three-factor test under the Suspension Clause should apply with respect to the Due Process Clause, Br. of *Amici* at 7, *amici* overlook that, time and again, the Supreme Court in *Boumediene* emphasized that "[t]he broad historical narrative of the writ [of habeas corpus] and its function [was] central to [its] analysis." 553 U.S. at 746; *see also* Resps' Opp'n at 40–41. Recognizing that "protection for the privilege of habeas corpus was one of the few safeguards of liberty specified in a Constitution that, at the outset, had no Bill of Rights," *id.* at 739, the Supreme Court reasoned: "[i]n the system conceived by the Framers the writ had a centrality that must inform the proper interpretation of the Suspension Clause." *Id.*; *see also id.* at 740 ("history counseled the necessity for specific language in the Constitution to secure the writ and ensure its place in our legal system"). The Court cited "evidence that the Framers deemed the writ to be an essential mechanism in the separation-of-

[2] *Amici* contend that an application of the Due Process Clause to these proceedings would not be extraterritorial because the proceedings are located in a federal district court in the United States, but, as discussed below, *see infra* Section III, no case supports such a narrow definition of extraterritoriality.

powers scheme," *id.* at 743; subsequent historical developments that "verif[ied] their foresight," *id.* at 745; and the role of the Suspension Clause in "protect[ing] the rights of the detained by a means consistent with the essential design of the Constitution," *id.*, and concluded: "the separation-of-powers doctrine, and the history that influenced its design, therefore must inform the reach and purpose of the Suspension Clause." *Id.* at 746; *see also id.* at 765.

Thus, rather than suggesting that its decision would apply with respect to any "relevant constitutional provision," Br. of *Amici* at 7, the Supreme Court focused specifically on "[t]he test for determining the scope of [the Suspension Clause]," explaining that "the writ of habeas corpus is itself an indispensable mechanism for monitoring the separation of powers." *Boumediene*, 553 U.S. at 765; *id.* at 765–66 ("[separation of powers] concerns have particular bearing upon the Suspension Clause question in the cases now before us"). Accordingly, *Boumediene*'s standard for determining whether the Suspension Clause extends to detainees at Guantanamo Bay does not apply *ipso facto* with respect to the Due Process Clause and must instead be understood as limited to the Suspension Clause, in light of that Clause's centrality to the separation of powers.

**B. The Court of Appeals Has Expressed its Disagreement with the Very Argument to Extend *Boumediene* that *Amici* Propose.**

Recognizing the limitations stated in *Boumediene*'s holding and implied in its reasoning, the Court of Appeals in *Rasul* disapproved of the argument *amici* advance here—that *Boumediene*'s three-factor test applies beyond the Suspension Clause. *See* 563 F.3d at 529 (referring to claims brought by detainees at Guantanamo Bay). The Court of Appeals explained that "[t]he [Supreme] Court acknowledged that it had never before determined that the Constitution protected aliens detained abroad, and explicitly confined its constitutional holding 'only' to the extraterritorial reach of the Suspension Clause." *Id.* (quoting *Boumediene*, 553 U.S.

at 795). Further, "[t]he [Supreme] Court stressed that its decision 'does not address the *content of the law* that governs petitioners' detention.'" *Id.* (quoting *Boumediene*, 553 U.S. at 798) (emphasis in original). The *Rasul* panel concluded: "[w]ith those words, the Court in *Boumediene* disclaimed any intention to disturb the existing law governing the extraterritorial reach of any constitutional provisions, other than the Suspension Clause." *Id.*[3] This guidance from the Court of Appeals constitutes one more reason why this Court should decline to extend *Boumediene* as *amici* propose.[4]

**C. The Precedent Foreclosing an Extension of the Fifth Amendment to Petitioner Remains Binding.**

Finally, the Court of Appeals identified a third reason why this Court should, and indeed, must, reject *amici*'s argument: because the Supreme Court was clear that *Boumediene* addressed only the reach of the Suspension Clause, the precedent barring extraterritorial application of the

[3] *Amici* imply that the Court of Appeals used *amici*'s suggested approach in considering the Ex Post Facto Clause and found that Clause to apply extraterritorially. Br. of *Amici* at 8 (citing *Al Bahlul v. United States*, 767 F.3d 1, 63 (D.C. Cir. 2014)). That is not so. In *Al Bahlul*, the Court of Appeals merely "assume[d] without deciding" application of the Ex Post Facto Clause. 767 F.3d at 18. Indeed, the Court cautioned that it was "not to be understood as *remotely* intimating *in any degree* an opinion on the question" of application of the Clause. *See* 767 F.3d at 18 (emphasis added) (citation and internal quotation marks omitted). "Constitutional rights are not defined by inferences from opinions which did not address the question at issue." *Latif v. Obama*, 677 F.3d 1175, 1184 (D.C. Cir. 2011) (quoting *Texas v. Cobb*, 532 U.S. 162, 169 (2001)).

[4] As explained by the Court of Appeals in this case, *Rasul* did not definitely decide the issue of whether Guantanamo detainees could avail themselves of procedural due process under the Due Process Clause. *See Rasul*, 563 F3d at 529 (ultimately resting decision on qualified immunity grounds). As discussed in Respondents' Opposition brief, however, *Qassim* did no more than state that the application of procedural due process in Guantanamo cases had not been definitively decided, explaining that *Kiyemba* resolved only a substantive due process issue. *See* Resps' Opp'n at 37. *Rasul*, however, provides fulsome analytical guidance as to resolution of the procedural due process issue; that is, although *Qassim* noted that the question had not been definitely resolved, *Rasul* provides the analytical guidance on which the issue should be resolved in this case, consistent with other precedent from the Supreme Court and the Court of Appeals arising in other contexts involving individuals without property or presence in the United States. *See supra* at 7–9.

Due Process Clause to persons without property or presence in the United States continues to be controlling. *See Rasul*, 563 F.3d at 529. Like *amici* here, *see* Br. of *Amici* at 6, the plaintiffs in *Rasul* argued that "*Boumediene* has eroded the precedential force of [*Johnson v.*] *Eisentrager*[, 339 U.S. 763 (1950),] and its progeny," *see Rasul*, 563 F.3d at 529, and urged the Court of Appeals not to follow the holding of *Eisentrager* "that aliens detained on a U.S. military base outside sovereign U.S. territory have no due process rights," *see id.* (describing *Eisentrager*, 339 U.S. 763). The Court of Appeals, however, was clear—"[w]hether [*Boumediene* has eroded the precedential force of *Eisentrager*] is not for us to determine: the [Supreme] Court has reminded the lower federal courts that it alone retains the authority to overrule its precedents." *Id.* (citing *Rodriquez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). This Court, no less than the Court of Appeals, remains bound by Supreme Court precedent. *See, e.g.*, *United States v. Campbell*, 798 F. Supp. 2d 293, 303 (D.D.C. 2011) (citing *Tenet v. Doe*, 544 U.S. 1, 10-11 (2005)) ("Only the Supreme Court has authority to overrule or vacate its decisions and a lower court must not presume Supreme Court precedent has been limited or overruled absent explicit indication.").

*Amici* contend that *Eisentrager*'s holding cannot control as to Petitioner's rights in these habeas proceedings, reasoning that *Eisentrager* held that aliens detained abroad could not bring such actions in the first instance. *See* Br. of *Amici* at 6. However, in so arguing, *amici* overlook that binding case law besides *Eisentrager* also has addressed the reach of the Due Process Clause. Indeed, *amici* ignore that in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), although the Supreme Court held that an alien detained at Ellis Island prior to entry into the United States could "by habeas corpus test the validity of his exclusion," *id.* at 213, the Due Process Clause did not control the procedures available to him in such a hearing. *Id.* at 212–214.

The Court of Appeals has established the same principle. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) (district courts are obligated to apply controlling Circuit precedent unless that precedent has been overruled by the Court of Appeals *en banc* or by the Supreme Court). In *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17 (D.C. Cir. 1999), two foreign entities challenged the State Department's decision to designate them as "foreign terrorist organizations" under 8 U.S.C. § 1189. *Id.* at 18–19. The entities asserted that, because the State Department had failed to "giv[e] them notice and opportunity to be heard," their designations violated procedural due process. *Id.* at 22. Relying on *Eisentrager* and its progeny, the Court of Appeals rejected the entities' constitutional claims, explaining that, because the Due Process Clause does not extend to aliens without property or presence in the United States, the entities "ha[d] no constitutional rights[] under the due process clause," and could assert "statutory rights only." *Id.*; *see also, e.g.*, *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections").

In short, "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zavydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990) for its holding that the "Fifth Amendment's protections do not extend to aliens outside the territorial boundaries"). Thus, even if *amici* were correct that *Boumediene*—contrary to the reasoning and plain language of that decision, *see supra* at 4–6—altered the reach of constitutional provisions beyond the Suspension Clause, it would be for the Supreme Court alone to modify the "emphatic" precedent "reject[ing] . . . the claim that aliens outside the sovereign

territory of the United States are entitled to due process rights." *Rasul*, 563 F.3d at 531 (quoting *Verdugo-Urquidez*, 494 U.S. at 269).

**II. Petitioner is Entitled to Meaningful Review of the Legality of His Detention, and Respondents Do Not Argue Otherwise.**

*Amici* jump from their argument that the Due Process Clause must apply here to the conclusion that any opposition to that view amounts to a claim that Petitioner "has no constitutional right to process in the course of *habeas* litigation" at all. Br. of *Amici* at 9. *Amici* then argue against that claim, insisting that a habeas proceeding with no right to process would effectively amount to a suspension of the writ. But that does not describe these proceedings.

From the outset, when the Court instructed the parties to brief issues relating to the procedural framework for these wartime constitutional habeas actions, *see* ECF No. 211 at 3, Respondents have been guided by the "constitutionally-required elements of habeas identified by *Boumediene*." Gov't's Br. Regarding Procedural Framework Issues, ECF No. 217 at 7. As the Court of Appeals explained in *Al-Bihani v. Obama*, "[t]he Supreme Court in *Boumediene* held detainees are entitled to the 'fundamental procedural protections of habeas corpus,'" including "'a meaningful opportunity to demonstrate that [they are] being held pursuant to the erroneous application or interpretation of relevant law.'" 590 F.3d 866, 875 (D.C. Cir. 2010) (quoting *Boumediene*, 553 U.S. at 779)). The Supreme Court indicated that "[m]eaningful review in this context requires that a court have 'some authority to assess the sufficiency of the Government's evidence against the detainee' and to 'admit and consider relevant exculpatory evidence' that may be added to the record by petitioners during review." *Id.* (quoting *Boumediene*, 553 U.S. at 786).

As detailed in Respondents' Opposition, *see* Resps' Opp'n at 5–13, 28–34, Respondents proposed—and this Court ultimately adopted—procedures that not only met the constitutional threshold set forth in *Boumediene*, but were modeled on the Supreme Court's guidance in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (plurality), as to the process required with respect to a wartime habeas case brought by a U.S. citizen detained in the United States. Respondents reasoned that "the framework that the Supreme Court deemed constitutionally sufficient for *citizens* held as wartime enemy combatants is more than constitutionally adequate for *aliens* captured under similar circumstances and detained as wartime enemy combatants." Gov't's Br. Regarding Procedural Framework Issues, ECF No. 217 at 6; *see id.*, *generally*. And as Respondents' Opposition explains, the Court of Appeals has approved many aspects of the Amended Case Management Order as consistent with the requirements of the Suspension Clause.

Beyond *Hamdi*, Respondents and the Court also looked to post-conviction criminal habeas cases in which the Due Process Clause inarguably applied to construct the procedural framework for this litigation. For example, in crafting the governing case management order's automatic discovery provision, the Court relied on *Harris v. Nelson*, 394 U.S. 286 (1969), a case addressing a criminal defendant's challenge to a state court conviction. *See* Resps' Opp'n at 29–30 (discussing the development of Amended Case Management Order Section I.E.1). So, too, with the provision controlling additional discovery in this litigation; there, the Court relied again on *Harris v. Nelson* and on *Bracy v. Gramley*, 520 U.S. 899 (1997), another domestic criminal habeas case. *See* Resps' Opp'n at 30–32 (discussing the development of Amended Case Management Order Section I.E.2). With respect to the treatment of classified information in these cases, the Court and the parties largely were guided by the Classified Information Procedures Act ("CIPA"), which governs the handling of classified information in domestic

criminal proceedings. *See* Resps' Opp'n at 26–28, 32–34 (discussing the development and application of Amended Case Management Order Section I.F) (citing *Al Odah v. United States*, 559 F.3d 539 (D.C. Cir. 2009)).[5] Indeed, as explained in Respondents' Opposition, each facet of the procedural framework that Petitioner challenges in his motion is grounded, in the first instance, in a context in which the Due Process Clause applies. *See* Resps' Opp'n at 28–34.

Thus, *amici*'s argument that a habeas proceeding lacking the protections that the Supreme Court contemplated in *Boumediene* would amount to a suspension of the writ lacks any application to this case.

### III. Extension of the Due Process Clause to These Proceedings Would Amount to an Extraterritorial Application Contrary to Well-Established Precedent Regarding the Reach of the Fifth Amendment.

Finally, *amici* argue that the issue of whether Petitioner enjoys rights under the Due Process Clause is "a question of what rules govern litigation in the United States District Court for the District of Columbia," rather than "a question of the rights of noncitizens outside the United States." Br. of *Amici* at 10. In short, according to *amici*, permitting Petitioner to avail himself of the Due Process Clause in these proceedings would not amount to "extraterritorial application" at all, *id.*, because "litigation in federal courts inside the United States is always governed by the Due Process Clause." *Id.* at 12. *Amici* contend that this position finds support in the Supreme Court's discussion of "trial rights" in *United States v. Verdugo-Urquidez*, *see id.*, and in the way the Court of Appeals framed the remand of this case, *see id.* at 11. *Amici* are mistaken. Neither Supreme Court precedent nor any opinion of the Court of Appeals supports

[5] Although the procedural framework in the Guantanamo habeas cases permits the Government, in appropriate circumstances, to present on an *ex parte* basis highly sensitive source-identifying information on which the Government seeks to rely, *see* Resps.' Opp'n at 26 n. 10 (discussing case law), there is no reason to suppose at this stage of litigation that such an unusual circumstance would arise in Petitioner's case, as noted in Respondents' Opposition. *Id.*

the reframing *amici* propose; on the contrary, decisions of both courts demonstrate that, because Petitioner is an alien with no property or presence in the United States, extension of the Due Process Clause to this habeas proceeding would amount to an improper extraterritorial application of the Clause.

As to the Supreme Court precedent, *United States v. Verdugo-Urquidez*, on which *amici* rely, *see* Br. of Amici at 10–11, is inapposite as to the question of "trial rights." *Verdugo-Urquidez* was a criminal case in which the United States arrested a citizen of Mexico, transported him to the United States, and tried him domestically for criminal offenses. *Verdugo-Urquidez*, 494 U.S. at 262. Although that case addressed whether the Fourth Amendment extended extraterritorially to the search of the defendant's property in Mexico, *see id.* at 263–69, there was no occasion to consider "the rights of noncitizens outside the United States," Br. of *Amici* at 10, in civil proceedings since the defendant was present in the United States for his criminal trial. In other words, the contours of the trial rights were "obvious," *id.*, because the Supreme Court was discussing the criminal prosecution of a defendant present on U.S. soil. *See* 494 U.S. at 264 ("the Fifth Amendment is a fundamental trial right *of criminal defendants*") (emphasis added); *id.* at 278 (Kennedy, J., concurring) ("The United States is prosecuting a foreign national in a court established under Article III, and all of the trial proceedings are governed by the Constitution."); *id.* at 279 (Stevens, J., concurring) (observing that the defendant was "surely" an "alien[] who [is] lawfully present in the United States"). That the Court was clear as to the full panoply of Constitutional trial rights enjoyed by a criminal defendant located in the United States says nothing regarding what rights might attach when a habeas case or other civil suit is brought by an alien without property or presence in the United States.

Moreover, the Supreme Court in *Verdugo-Urquidez* characterized broadly the holding in *Eisentrager*, observing that the Supreme Court's "rejection of extraterritorial application of the Fifth Amendment was emphatic." 494 U.S. at 269. Indeed, the Court of Appeals subsequently relied on *Verdugo-Urquidez* in rejecting the procedural due process claims of entities that had been designated as foreign terrorist organizations and lacked property or presence in the United States. *See People's Mojahedin of Iran*, 182 F.3d at 22 (citing *Verdugo-Urquidez*, 494 U.S. at 271).

But, although *Verdugo-Urquidez* does not address the question of rights that might attach in habeas proceedings brought by an alien detained outside the United States, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) does. As discussed above, the Supreme Court in *Ex rel. Mezei* held that an alien who had landed on Ellis Island but had not entered the United States could bring a habeas petition challenging his detention, but could not invoke the Due Process Clause with respect to the process afforded to him in that habeas action. *See supra* at 7 (discussing *Ex rel. Mezei*). As that case illustrated, *amici* are wrong in claiming that "litigation in federal courts inside the United States is always governed by the Due Process Clause." Br. of *Amici* at 12; *see also People's Mojahedin of Iran*, 182 F.3d at 22 (holding that entities without property or presence in the United States had no procedural due process rights under the Constitution).

*Amici*'s assertion that "the Constitution always governs the conduct of litigation in United States courts," Br. of *Amici* at 11, assumes, once again, that either the Due Process Clause applies, or Petitioner has no Constitutional protection at all. This is a false dichotomy. As discussed above, without question, Petitioner is constitutionally "entitled to the 'fundamental procedural protections of habeas corpus.'" *Al-Bihani*, 590 F.3d at 875 (quoting *Boumediene*, 553

U.S. at 798); *see supra* at 9 (discussing the procedural requirements enumerated in *Boumediene*). The procedural framework currently governing this habeas litigation—and wholly overlooked by *amici* in their submission—meets and exceeds those requirements, having been largely modeled on contexts in which the Due Process Clause does apply. *See supra* at 10–11. The Constitution requires nothing more.

**CONCLUSION**

For all these reasons, and the reasons explained in Respondents' Opposition, the Court should deny the Petitioner's Motion.

Dated: May 3, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

TERRY M. HENRY
Assistant Branch Director

*/s/ Julia A. Heiman*
ANDREW I. WARDEN
JULIA A. HEIMAN (D.C. Bar No. 986228)
KRISTINA A. WOLFE
Attorneys
julia.heiman@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-8480
Fax: (202) 616-8470

*Attorneys for Respondents*