IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KHALID AHMED QASSIM,<br><br>Petitioner<br><br>v.<br><br>JOSEPH R. BIDEN, et al.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-cv-01194 (TFH) |

**PETITIONER'S REPLY TO GOVERNMENT OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Petitioner filed a four-page motion for summary judgment on October 12. The government has responded with a 41-page brief in opposition supported by another 345 pages of exhibits.

Significantly, the facts are not in dispute. The government does not dispute that petitioner has been imprisoned by the United States Government at Guantánamo Bay since May 1 of 2002, that he has not been accused of engaging in or providing material support for terrorism or of any other crime, and that he is detained solely on the basis of the government's claim that, approximately two decades ago, he was part of or supported military forces engaged in active combat operations against United States troops in Afghanistan. It also does not dispute that President Biden has declared an end to the "forever" war in Afghanistan and ordered the withdrawal of all U.S. troops, and that, as of September 11 of this year, involvement by U.S. troops in active combat in Afghanistan has ended.

The government asserts, however, that despite the withdrawal of U. S. troops and the end of the "ground war" in Afghanistan, the United States remains actively engaged in fighting al-Qaeda and other terrorist organizations not only in Afghanistan but in many other places around

the world as far flung as "Kenya, Tanzania, and the port of Aden."[1] Petitioner does not dispute those assertions.

The question for the Court is whether these facts provide the government with the legal authority to continue depriving petitioner of his liberty without charge or trial because some 20 years ago he was allegedly part of or supported military forces engaged in active combat operations against United States troops in Afghanistan. That is a legal question to be decided by the courts, which have both the competence and the constitutional responsibility to do so.

The implications of the government's argument must be clearly understood. It contends that it has legal authority to continue imprisoning Mr. Qassim, who was originally taken into custody to prevent him from returning to an ongoing conflict in Afghanistan, so long as the government continues to be engaged in fighting terrorists anywhere in the world. That fight of course is likely to continue long after we are gone and probably long after our children and grandchildren are gone. The government's position in effect is that it has legal authority to deprive petitioner of his liberty forever without charge or trial, even though he has never been accused of engaging in terrorism, and even after the particular hostilities he is alleged to have engaged in are long over.

That contention is directly contrary to the Supreme Court's decision in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004).

[1] See, e.g., Government opposition ("Gov. Opp.") brief at 7.

## ARGUMENT

### 1. By *Hamdi's* Plain Language, the Government's Legal Authority to Detain Petitioner Has Come to an End.

The government spends very little time in its lengthy opposition discussing or even mentioning the Supreme Court's decision in *Hamdi*. That is the decision, however, that confirmed the government's legal authority to detain individuals like petitioner who allegedly fought against U.S. troops in Afghanistan. It also set explicit limits on the duration of that detention authority.

In her controlling opinion in that case, Justice O'Connor acknowledged that the congressionally passed Authorization for the Use of Military Force (AUMF) contains no explicit authorization to detain individuals. She found, however, that:

> There can be no doubt that individuals who fought against the United States in Afghanistan … are individuals Congress sought to target in passing the AUMF. We conclude that detention of individuals falling into the limited category we are considering, for the duration of the particular conflict in which they were captured, is so fundamental and accepted an incident to war as to be an exercise of the 'necessary and appropriate force' Congress has authorized the President to use.[2]

The opinion emphasized that captivity in these circumstance is "merely a *temporary* detention which is devoid of all penal character," the purpose of which is to prevent the individuals "from returning to the field of battle and taking up arms once again" during "the ongoing conflict.[3]"

Justice O'Connor responded directly to concerns that these detentions could become perpetual, emphasizing that "[i]t is a clearly established principle of the law of war that *detention may last no longer than* active hostilities."[4] She then made clear that U.S. detention authority over

[2] 542 U.S. at 518

[3] *Id*. at 518-19 (emphasis added).

[4] *Id*. at 520 (emphasis added).

individuals who fought against U.S. forces in Afghanistan existed only because: "[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan."[5]

She then stated a clear endpoint for the duration of those detentions:

> The United States may detain, *for the duration of these hostilities,* individuals legitimately determined to be Taliban combatants who "engaged in an armed conflict against the United States." *If the record establishes that United States troops are still involved in active combat in Afghanistan*, those detentions are part of the exercise of "necessary and appropriate force," and therefore are authorized by the AUMF.[6]

There is no indication that Justice O'Connor or the other Supreme Court Justices who joined in that opinion adopted those words casually. They state a clear endpoint for the government's detention authority over men like petitioner who are alleged to have fought against the United States in Afghanistan. Quoting that language, Professor David Glazier recently concluded as follows:

> [A]s of August 2021, a presidentially authorized peace agreement had been concluded, and U.S. troops are now no longer engaged in combat in Afghanistan. Moreover, the total collapse of the U.S.-supported Afghan government has ended the conflict entirely. So by *Hamdi's* plain language, U.S. detention authority under the AUMF has now come to an absolute end.[7]

---

[5] *Id*. at 521.

[6] *Id*. at 521 (emphasis added).

[7] David Glazier, *Withdrawal From Afghanistan Marks Guantanamo's Endpoint*, forthcoming in 13 HARV. NAT'L SEC. J. (2022), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3937679. Professor Glazier goes on to explain that a continuing fight against al-Qaeda and other terrorist organizations around the world provides no support for continued U.S. detention authority over men like petitioner. Al-Qaeda and other terrorist groups are not sovereign states and do not even purport to be the legitimate governments of any state. The Taliban is now the legitimate government of Afghanistan, and the international armed conflict there has now definitively ended. At most, al-Qaeda and other terrorist organizations are groups operating within a sovereign state or states. U.S. forces could be partners in a conflict against them with the countries where they are found, but it would have no unilateral detention authority. U.S. intervention must be with the permission of the local state, or else it would constitute an act of aggression against the local state. But it is the local state and not the US which would have the authority to detain.

**2. Granting Petitioner's Motion Would Not Impinge in Any Way on the Government's Ability to Use Whatever Force Is Necessary Wherever It Is Necessary to Protect the Security of Our Nation.**

The government premises its opposition largely on mischaracterizations of petitioner's claims. Thus, it argues repeatedly that petitioner is trying to impose a "geographic limitation" on the government's ability to use force under the AUMF. It then spends much of its brief in opposition arguing that there is no geographic limitation on the application of force under the AUMF and that imposing one would be a very bad thing, seriously impeding the military's ability effectively to combat terrorism around the world.[8] But nowhere has petitioner contended or even suggested that there should be a geographic limitation imposed on the government's ability to use of force under the AUMF. Nothing in the relief petitioner seeks would have that effect. The grant of petitioner's motion would leave the military free to apply whatever force is necessary and wherever it is necessary — including so-called "over the horizon missions" and the like — to protect the nation's security.

Petitioner's motion addresses not the government's authority to use force but its authority to detain individuals. And even there, it does not address the government's authority to detain individuals in any continuing international armed conflict or in the government's continuing efforts to combat terrorism around the world. It speaks only to the exact circumstances that have already been addressed by the Supreme Court in *Hamdi*.

Mr. Qassim, like Mr. Hamdi before him, was taken into custody for allegedly fighting against the United States in the armed conflict in Afghanistan. The Supreme Court concluded that the AUMF provided the United States Government with lawful authority to detain "individuals falling into [that] limited category . . . for the duration of the particular conflict in which they were

[8] See, *e.g.*, Gov. Opp. at 4-9, 14-16, 22-27.

captured."[9] It emphasized that the detentions were temporary, for the purpose of preventing these men from "returning to the front during the ongoing conflict."[10] And the Supreme Court specified a clear endpoint for the government's lawful authority to detain these men — so long as "United States troops are still involved in active combat in Afghanistan."[11] That endpoint has been reached.

**3. The Government May Not Extend Its Lawful Authority to Detain by Claiming It Is Still "at War".**

The government next argues that it is not the judicial branch but the political branches of our government that decide when a war is over, and the Court should therefore defer to the executive on that issue. There are several answers to that argument.

First, in fact, the political branches have declared that the war in Afghanistan is over. The President of the United States in his capacity as Commander-in-Chief of United States Armed Forces could not have been more clear in declaring an end to the 20-year war in Afghanistan and the withdrawal of all U.S. troops from combat. Department of Justice lawyers might find the President's declaration inconvenient for their purposes now, but it is a fact.

Second, the issue in this case is not whether a war continues in some sense, but whether the activities the government is currently undertaking to combat terrorism provide it with the lawful authority to continue detaining petitioner. As explained more fully in the next section, that is quintessentially a legal question which the judiciary has not only the capacity but the constitutional duty to decide. And, what matters in answering that question is not some general characterization of the government's activities — and certainly not characterizations by Justice Department lawyers — but what the government is actually doing and whether those activities

---

[9] *Hamdi*, 542 U.S. at 518.

[10] *Id*. at 519.

[11] *Id*. at 521.

meet the standards specified by the Supreme Court for continuing petitioner's detention. However, the Justice Department may want to characterize President Biden's verbal announcement, there can be no doubt that he ended the ground war in Afghanistan and removed all U.S. troops from active combat there. In the plain words of *Hamdi*, that has ended the U.S. government's lawful authority to continue Mr. Qassim's detention.

Third, to support its contention that the Court should defer to the political branches, the government cites two previous Circuit decisions that rejected legal claims that the detention authority over Guantánamo detainees had ended.[12] The facts there were critically different. In both cases, active hostilities in Afghanistan were still continuing; U.S. troops remained involved in active combat there. The conditions for continued detention specified in *Hamdi* were therefore met in those cases. They no longer are.

**4. This Is an Issue that the Court Has the Capacity and the Constitutional Responsibility to Decide**

The government argues more generally that the Court should defer to the judgment of the political branches regarding its authority to continue detaining petitioner because "courts have neither the authority nor the expertise to evaluate the operational capacity and future threat posed by an enemy of the United States," and that "[a]ny holding to the contrary would raise serious separation of powers concerns . . . ."[13] In fact, the government has the separation of powers concerns exactly backwards.

Where to use force and the appropriate force to use are political and military decisions that clearly fall within the responsibility of the political branches. The judiciary has neither the

[12] See *Al-Alwi* v. *Trump*, 901 F.3d 294, 298 (D.C. Cir. 2018), and *Al-Bihani* v. *Obama*, 590 F.3d 866, 874 (D.C. Cir. 2010).

[13] Gov. Opp. at 12-13.

expertise nor the capacity to delve into those issues. But what is at issue here is something entirely different — it is the legal authority of our government to continue the extraordinary step of depriving individuals of their liberty without charge or trial. That is a legal issue that the judiciary has the expertise and the responsibility to decide.

Again, Justice O'Connor's opinion in *Hamdi* is instructive. In that case, like here, the government contended that, given the tremendous security threats our nation faced, the courts should defer to the judgment of executive branch officials that an individual should be detained without providing him a due process hearing to contest that judgment. The Court refused.

Justice O'Connor pointed out that the courts have a critical role to play in cases where "the most elemental of liberty interests — the interest in being free from physical detention" – is at stake.[14] She went on to state:

> While we accord the greatest respect and consideration to the judgments of military authorities in matters relating to the actual prosecution of a war … it does not infringe on the core role of the military for the courts to exercise their own time-honored and constitutionally mandated role of reviewing and resolving claims like those presented here. …
>
> [W]e necessarily reject the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts in such circumstances. … "[E]ven the war power does not remove constitutional limitations safeguarding essential liberties."[15]

Important principles are at stake in the continued detention of these men at Guantánamo. Petitioner has been deprived of his liberty now for almost 20 years without charge or trial or even the opportunity to test the basis for his detention through the type of due process hearing that the *Hamdi* court considered essential.

---

[14] 542 U.S. at 529

[15] *Id*. at 535-36.

In her opinion, Justice O'Connor emphasized the critical role the judiciary plays in our constitutional system as the guardian of the rule of law and the protector of individual liberty. The story of Guantánamo from the beginning has been the story of attempts by the political branches to avoid the rule of law and to escape effective judicial review of their actions. It has also been the story of the inability of foreigners, trapped outside the continental United States with no political constituencies in the United States, to count on relief from the political branches which—no matter how well intentioned they may be—always have other more immediate political priorities. Protecting the legal rights of individuals is, and must be, the responsibility of the judiciary.

## CONCLUSION

The law-of-war detention that the Supreme Court authorized in *Hamdi* is an exception to the general rule demanded by our Constitution that no person may be deprived of liberty except upon criminal charge and conviction after a trial conducted in accordance with due process of law. As the *Hamdi* Court made clear, that exception is limited, and it is finite.[16] The end has been reached.

[16] "In our society liberty is the norm," and detention without trial "is the carefully limited exception." *United States* v. *Salerno*, 481 U.S. 739, 755 (1987).

Dated: November 8, 2021

Respectfully submitted,

/s/ Thomas B. Wilner
Thomas B. Wilner
Neil H. Koslowe
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 508-8050
E-mail: twilner@shearman.com
E-mail: nkoslowe@potomaclaw.com

Shelby Sullivan-Bennis
Durkin & Roberts
2446 N. Clark Street
Chicago, IL 60614
Telephone: (401) 660-6538
E-mail: ssullivan@durkinroberts.com

*Counsel for Movant Khalid Ahmed Qassim*

Anthony G. Amsterdam
University Professor Emeritus
New York University School of Law
295 Sullivan Street, 5th Floor
New York, NY 10012
Telephone: (212) 988-6632
E-mail: aa1@nyu.edu

*Of Counsel*