UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KHALID AHMED QASSIM,                )
                                    )
        Petitioner,                 )
                                    )
v.                                  )   Civil Case No. 04-1194 (RJL)
                                    )
JOSEPH R. BIDEN, JR., et al.,       )
                                    )
        Respondents.                )

MEMORANDUM ORDER
(September 27, 2023) [Dkt. #1197]

One week after the attacks of September 11, 2001, Congress passed the Authorization for Use of Military Force ("AUMF"), authorizing the President

> to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force (AUMF), Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001). The Supreme Court in *Hamdi v. Rumsfeld* interpreted "necessary and appropriate force" to include the authority to detain individuals, 542 U.S. 507, 518 (2004) (plurality opinion), and that detention authority was affirmed in the National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 1021(a), 125 Stat. 1298, 1562 (2011).

Petitioner Khalid Ahmed Qassim was detained pursuant to that authority, and he is currently in the custody of the United States at Naval Station Guantanamo Bay. Pet'r's

Mot. for Summ. J. ("Mot.") [Dkt. #1197] at 1. In a summary judgment motion, he claims that, because U.S. troops have withdrawn from Afghanistan, the active combat operations that justified his detention have likewise concluded. *Id.* at 2–3. That argument relies on *Hamdi*, in which the Supreme Court noted the "clearly established principle of the law of war that detention may last no longer than active hostilities" and thus understood the AUMF's detention authority to last "for the duration of the relevant conflict." 542 U.S. at 520–21. "If the record establishes that United States troops are still involved in active combat in Afghanistan, those detentions are part of the exercise of 'necessary and appropriate force,' and therefore are authorized by the AUMF." *Id.* at 521. But active combat in Afghanistan has ended, says Qassim, so his detention is no longer authorized. Mot. at 2–3.

The problem with Qassim's argument, however, is that the AUMF's grant of authority does *not* extend to conflict only in Afghanistan; it extends to "conflict between the United States and the Taliban and al Qaeda." *Al-Alwi v. Trump*, 901 F.3d 294, 299 (D.C. Cir. 2018); *see* AUMF § 2(a); *see also Husayn v. Austin*, 2022 WL 2093067, at *2 (D.D.C. June 10, 2022) (Sullivan, J.) ("[T]he AUMF contains no geographical limitation."). The withdrawal of troops from Afghanistan therefore does not necessarily mark the conclusion of detention authority granted by the AUMF. *See Gul v. Biden*, 2021 WL 5206199, at *3 (D.D.C. Nov. 9, 2021) (Mehta, J.) ("The end of the United States' ground war in Afghanistan marks the end of just one aspect of the United States' hostilities with al Qaeda.").

Qassim reads too much into *Hamdi*'s note that troops' involvement "in active combat in Afghanistan" justified continued detention under the AUMF. 542 U.S. at 521. The Supreme Court framed troop involvement in Afghanistan as a sufficient, but not necessary, condition to detention authority. *See id.* And nowhere else did the Court "provide any analysis that would support the proposition that the 2001 AUMF is limited to 'hostilities in Afghanistan.'" *Cf. Gul*, 2021 WL 5206199, at *3 (rejecting similar argument based on "passing reference to 'in Afghanistan'" in *Al-Bihani v. Obama*, 590 F.3d 866 (D.C. Cir. 2010)). *Hamdi* therefore did not, as Qassim argues, call for the end of detention authority upon U.S. troops' withdrawal from Afghanistan.

It is instead "a political act" to call for the termination of hostilities. *Al-Alwi*, 901 F.3d at 299 (quoting *Ludecke v. Watkins*, 335 U.S. 160, 168–69 (1948)). "The determination of when hostilities have ceased is a political decision, and [courts] defer to the Executive's opinion on the matter, at least in the absence of an authoritative congressional declaration purporting to terminate the war." *Al-Bihani*, 590 F.3d at 874. And according to the Executive, those hostilities did not cease with the withdrawal of U.S. troops on August 31, 2021. *See Paracha v. Biden*, 2022 WL 2952493, at *4 (D.D.C. July 26, 2022) (Friedman, J.).

On September 9, 2021, President Biden observed that "[t]he terrorist threat that led to the declaration on September 14, 2001, of a national emergency continues." Letter to Congressional Leaders on the Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 2021 Daily Comp. Pres. Doc. 728 (Sept. 9, 2021) [Dkt. #1198-11]. Later that month, in a hearing before the Senate Armed Services Committee on

September 28, General Mark A. Milley, chairman of the Joint Chiefs of Staff, testified not only that al Qaeda was still in Afghanistan and still "at war with the United States" but also that it "displaced to other parts of the world" and that its affiliates "definitely have aspirations to attack the United States." *Hearing to Receive Testimony on the Conclusion of Military Operations in Afghanistan and Plans for Future Counterterrorism Operations Before the S. Comm. on Armed Servs.* ("*SASC Hearing*") [Dkt. #1198-5] at 70, 93; *see Paracha*, 2022 WL 2952493, at *5 (citing Gen. Milley's testimony). Similarly, General Kenneth F. McKenzie, Jr., then commander of U.S. Central Command, testified that al Qaeda "maintains a presence in Afghanistan" and "aspire[s] to attack us in our own land." *SASC Hearing* at 91; *see Husayn*, 2022 WL 2093067, at *5 (citing Gen. McKenzie's testimony). The Government also submitted a redacted declaration from then–Major General Dagvin R.M. Anderson, then the vice director for operations for the Office of the Chairman of the Joint Chiefs of Staff, who explained that "U.S. Armed Forces remain engaged in active hostilities with Al-Qaeda and associated forces in a number of different theaters and countries." Anderson Decl. [Dkt. #1198-2] ¶ 7; *see Gul*, 2021 WL 5206199, at *4 (citing Anderson declaration). Indeed, days before the Government filed its opposition brief in October 2021, U.S. troops conducted an airstrike that killed a senior al Qaeda leader in Syria. Statement, U.S. Cent. Command, U.S. Strike in the Vicinity of Suluk, Syria (Oct. 22, 2021) [Dkt. #1198-6]. Thus, notwithstanding President Biden's April 2021 call to end the war, *see* Remarks on United States Military Operations in Afghanistan, 2021 Daily Comp. Pres. Doc. 313 (Apr. 14, 2021), the political branches have not yet decided it's at an end.

Because "the 'relevant conflict' has not ended[, t]he Government's authority to detain [Qassim] pursuant to the AUMF has not terminated." *Al-Alwi*, 901 F.3d at 300 (quoting *Hamdi*, 542 U.S. at 521). And because the Government still has authority to detain Qassim, it is hereby

**ORDERED** that Qassim's Motion for Summary Judgment [Dkt. #1197] is **DENIED**.

**SO ORDERED**.

_____
RICHARD J. LEON
United States District Judge