**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KHALID AHMED QASSIM, | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | Civil No. 04-cv-01194 (RJL) |
| v. | ) | |
| | ) | |
| JOSEPH R. BIDEN, JR., et al., | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

**REPLY TO GOVERNMENT OPPOSITION TO PETITIONER'S
MOTION FOR JUDGMENT ON THE RECORD**

Anthony G. Amsterdam (D.C. No. 105528)
New York University Law School
245 Sullivan Street
New York, NY 10012
Telephone: (631) 287-4395
agamsterdam68@gmail.com

*Of Counsel*

Thomas B. Wilner (D.C. No. 173807)
Neil H. Koslowe (D.C. No. 361792)
ALLEN OVERY SHEARMAN
STERLING US LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Telephone: (202) 352-7314
twilner@aoshearman.com
nkoslowe@potomaclaw.com

*Counsel for Khalid Ahmed Qassim*

# TABLE OF CONTENTS

**Page**

THE GOVERNMENT HAS NO LAWFUL AUTHORITY TO DEPRIVE PETITIONER
OF HIS LIBERTY ................................................................................................2

    1.    The Undisputed Facts. .........................................................................2

    2.    The Supreme Court Decision...............................................................3

    3.    The Statute. ...........................................................................................5

    4.    The Laws of War. .................................................................................6

THIS CASE PRESENTS A QUINTESSENTIALLY LEGAL QUESTION THAT THE
COURTS HAVE THE COMPETENCE AND THE DUTY TO DECIDE.......................8

THE GOVERNMENT IS ATTEMPTING TO REWRITE THE STATUTE TO CREATE
ITS OWN DETENTION AUTHORITY .........................................................11

THIS COURT HAS THE DUTY TO EXERCISE ITS RESPONSIBILITY UNDER THE
GREAT WRIT OF HABEAS CORPUS AND ORDER PETITIONER'S RELEASE
FROM UNLAWFUL DETENTION ..............................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Al-Alwi v. Trump*,
   901 F. 3d 294 (2018)......................................................................................4, 8, 10

*Ankenbrandt v. Richards*,
   504 U.S. 689 (1992)...................................................................................................5

*Boumediene v. Bush*,
   553 U.S. 723 (2008).................................................................................................14

*Building Owners and Managers Assoc. Int'l. v. F.C.C.*,
   254 F.3d 89 (D.C. Cir. 2001)......................................................................................5

*Ex parte Burford*,
   3 Cranch 448 (1806) ...............................................................................................11

*Forest Grove School District v. T.A.*,
   557 U.S. 230 (2009)...................................................................................................5

*Gordon v. U.S. Capitol Police*,
   778 F.3d 158 (D.C. Cir. 2015)....................................................................................5

*In re Guantánamo Bay Detainee Litig.*,
   No. 08-mc-442 ..........................................................................................................6

*Hamdi v. Rumsfeld*,
   542 U.S. 507 (2004)....................................................................................... *passim*

*Harris v. Nelson*,
   394 U.S. 286 (1069)................................................................................................14

*Lindahl v. Office of Pers. Mgmt.*,
   470 U.S. 768 (1985)...................................................................................................5

*Lorillard v. Pons*,
   434 U.S. 575 (1978)...................................................................................................5

*Smith v. Bennett*,
   365 U.S. 708 (1961)................................................................................................14

*Sunglory Maritime Ltd. v. PHI, Inc.*,
   2016 WL 9414283 (E.D. La., March 15, 2016).........................................................7

**Statutes**

National Defense Authorization Act for Fiscal Year 2012 §1021(d),
Pub. L. No.112-81, 125 Stat. 1298, 1562 ...................................................................................5

Authorization for Use of Military Force,
Pub. L. 107-40, 115 Stat. 224 (2001)............................................................................3, 5, 11

**Legitative Authorities**

H.R. Conf. Rep. No. 112-329 – The Joint Explanatory Statement of the
Committee of Conference, at 695 (2011) ...................................................................................5

**Other Authorities**

Carol Rosenberg, *The U.S. Was Resettling Guantánamo Prisoners. The Hamas
Attack Halted Those Plans*, NEW YORK TIMES, May 21, 2024 ...............................................13

Eric M. Freedman, *Making Habeas Work, A Legal History* (2018) .........................................6, 15

It is now three years since the United States withdrew all troops from combat operations in Afghanistan thereby, in the words of President Biden, ending "the longest war in American history."[1] Yet, three years later, our government continues to detain petitioner and others like him not because they are alleged to be terrorists -- because they are not -- but because they were allegedly foot soldiers more than twenty years ago in that armed conflict that is now over. The government asserts that it has the authority to do so, but it points to no provision in any statute, or to any principle of international law or to any ruling by the Supreme Court that provides it with that authority. Indeed, it reaches its claim to that authority by disregarding the explicit language in the Supreme Court ruling that granted it detention authority in the first place, the express provisions of the congressionally enacted statute that later confirmed that authority and the long accepted and fundamental principles of the international laws of war that Congress incorporated into the government's detention authority.

Petitioner's motion is based on the undisputed facts in the record, the clear language in both the controlling Supreme Court decision and the congressionally enacted statute, and on long accepted principles of the laws of war, all of which the government has chosen to ignore. Neither this nor any other court has yet addressed the points made in this motion. They confirm that the government lacks lawful authority to continue depriving petitioner of his liberty.

For too long, the courts have deferred to the Executive Branch's assertion that it has authority to continue detaining these men, effectively allowing the Executive to define its own detention authority. It is the federal judiciary and not the Executive that has the primary responsibility under our Constitution for safeguarding the liberty of individuals. The judiciary has no greater responsibility under our system of separated powers than to exercise its authority under the Great Writ of Habeas

---

[1]  *Remarks by President Biden on the End of the War in Afghanistan,* Aug. 31, 2021.

1

Corpus to ensure that individuals are not deprived of their liberty without lawful authority. It is time for the courts to act and carry out that responsibility.

## THE GOVERNMENT HAS NO LAWFUL AUTHORITY TO DEPRIVE PETITIONER OF HIS LIBERTY

Petitioner's motion is simple and straightforward. As mentioned, it is based on the explicit language of the Supreme Court ruling that granted the government detention authority in the first place, the express provisions of the congressionally enacted statue that confirmed that authority, and the long accepted and fundamental principles of the international laws of war that Congress incorporated into the government's detention authority.

### 1. The Undisputed Facts.

Petitioner, Khalid Qassim, has been detained by the United States government at the Guantánamo Bay prison for more than 22 years. He has never been charged with engaging in or supporting any act of terrorism or with any other crime. He has also not been determined by the government to be an "Al-Qaeda terrorist," as that term is defined by statute. Rather, he is detained as a "law of war detainee" because he was allegedly part of or supported armed forces engaged in combat against U.S. and allied troops in Afghanistan more than 20 years ago.[2] He denies those

---

[2] In its Response to Petitioner's Statement of Material Facts, the government quibbles a bit with this characterization. It says that petitioner is being detained for allegedly having been part of or having provided support for al-Qaeda, and that petitioner's alleged service as part of the armed forces aligned against U.S. troops at Tora Bora is evidence of that. But the only activity petitioner is alleged to have engaged in, and the only support he is alleged to have provided al-Qaeda, is by allegedly serving as a foot soldier (or, more particularly, by standing as a guard) alongside Taliban and al-Qaeda forces in combat against U.S. and coalition forces. There is not a single allegation in the government's entire return, or in the mountain of evidence it presented in its more recent Motion for Judgment on the Record, that petitioner ever engaged in or provided support for any terrorist activity by al-Qaeda or any other organization. He is not a terrorist and has never been alleged to be one.

allegations and will dispute them vigorously, should it be too necessary to do so, in any future proceeding.

On February 29, 2020, at the direction of President Trump, the government entered into a peace agreement with the Taliban to withdraw all U.S. forces and end the war in Afghanistan. On April 14, 2021, President Biden declared an end to that "forever war" and ordered the withdrawal of all U.S. troops. The withdrawal of U.S. troops was completed on August 30, 2022.

## 2. The Supreme Court Decision.

Following the 9/11 attacks, Congress passed a resolution authorizing the executive to use all "necessary and appropriate force" against those responsible for the attacks. Authorization for Use of Military Force (the "AUMF").[3] The AUMF itself is silent on the authority to detain. In *Hamdi v. Rumsfeld*,[4] the Supreme Court confirmed that the executive had the authority it was seeking under the AUMF to detain individuals who it alleged were "'part of or supporting forces hostile to the United States or coalition partners'" and who "'engaged in an armed conflict against the United States.'"[5] But the Court carefully defined the scope and duration of that authority.

The Court inferred lawful authority for the detentions from "longstanding," "fundamental and accepted" principles of the international law of war. It concluded that detention of "individuals who fought against the United States . . . for the duration of the particular conflict in which they were captured is so fundamental and accepted an incident to war as to be an exercise

---

[3]  Pub. L. 107-40, 115 Stat. 224 (2001).

[4]  542 U.S. 507 (2004).

[5]  *Id.* at 516, (quoting Respondent's brief, (quoting Drp't of Defense Fact Sheet)). That decision has provided the legal basis for the detention of all the prisoners at Guantánamo, other than those few who have been charged with criminal conduct for allegedly engaging in terrorist activities.

of the 'necessary and appropriate force' Congress has authorized the President to use."[6] The Court emphasized, however, that these detentions could only be "temporary"; their purpose was not penal but solely to prevent the individuals "from returning to the field of battle and taking up arms once again" during "the ongoing conflict."[7] The Court emphasized that "[i]t is a clearly established principle of the law of war that detention may last no longer than active hostilities."[8] And the Court made crystal clear that "active hostilities" meant "active combat operations" involving U.S. troops. It explained that U.S. detention authority over individuals like petitioner who may allegedly have supported combat operations against U.S. forces existed only because "[a]ctive combat operations against Taliban fighters apparently are ongoing."[9] The Court therefore concluded that the government's detentions could continue "*if the record establishes that United States troops are still involved in active combat in Afghanistan.*"[10]

There is no doubt that the detention authority the government now claims goes well beyond that authorized by the Supreme Court in *Hamdi*. What is the source for this claimed expanded detention authority? Certainly not any act of Congress.

---

[6]  *Id*. at 518.

[7]  *Id*. at 518-19.

[8]  *Id*. at 520.

[9]  *Id*. at 521.

[10]  *Id*. (emphasis added). Petitioner does not contend that there is a geographic limit on the government's authority and that the detentions may continue only if US troops remain involved in active combat in Afghanistan itself. The armed combat could spread to other countries, as was the case with the war in "Vietnam." The critical point is that combatants captured in armed combat against U.S. troops may be detained only so long as armed combat continues — that is, in the words of the Supreme Court, only so long as U.S. troops remain involved in active combat in the particular conflict in which they were captured. The Court of Appeals has followed that standard consistently, affirming the government's authority to continue the detentions "[i]f the record establishes that United States troops are still involved in active combat." *See Al-Alwi v. Trump*, 901 F. 3d 294, 300 (2018).

### 3. The Statute.

In 2012, Congress passed legislation confirming the government's detention authority under the AUMF and, in doing so, expressly refused to expand that authority. The legislation states explicitly:

> Nothing in this section is intended to limit *or expand* the authority of the President or the scope of the Authorization for Use of Military Force.[11]

In accord with the express language of the statute, the legislative history reflects that it was Congress's clear intent to enact a provision that, while affirming the government's detention authority under the AUMF, "would not affect existing law."[12] "Existing law" in this context is always understood to include judicial construction of a prior statute.[13] In other words, in passing the legislation in 2012, *Congress adopted the government's detention authority as it had been defined by the Supreme Court in Hamdi.* The continued detention of combatants after the end of combat is not a "necessary and appropriate" use of force under the Authorization for Use of Military Force. Persons taken into custody for allegedly participating or assisting in active combat against U.S. troops may continue to be lawfully detained only "*if the record establishes that United*

---

[11]  §1021(d), National Defense Authorization Act for Fiscal Year 2012, Pub. L. No.112-81, 125 Stat. 1298, 1562 (emphasis added). Sections 1021 and 1022 of the statute are attached as Appendix A to Petitioner's motion.

[12]  See H.R. Conf. Rep. No. 112-329 – The Joint Explanatory Statement of the Committee of Conference, at 695 (2011).

[13]  See, e.g., *Lorillard v. Pons,* 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."); *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 782 & n.15 (1985); *Ankenbrandt v. Richards*, 504 U.S. 689, 700-01 (1992); *Forest Grove School District v. T.A.*, 557 U.S. 230, 239-40 (2009); *Building Owners and Managers Assoc. Int'l. v. F.C.C.*, 254 F.3d 89, 95 (D.C. Cir. 2001); *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015).

*States troops are still involved in active combat.*" That was the law at the time *Hamdi* was decided and, at Congress's direction, it remains the law today.

Significantly, the government never disputes this analysis.[14]

### 4. The Laws of War.

The 2012 legislation also provides the government with authority to detain captured combatants "pending their disposition under the law of war." It thus incorporates the laws of war, and the fundamental law-of-war principles articulated by the Supreme Court in *Hamdi*, directly into the government's detention authority. To prevail in this habeas proceeding, the government therefore bears the burden of demonstrating that, despite the absence of explicit congressional authorization, "longstanding," "fundamental and accepted" principles of the law of war provide it with the authority to continue detaining petitioner and others like him for as long as it continues to fight terrorism around the world, even though those men have never been accused of participating or supporting terrorist activities, and even though the particular armed conflict in which they are alleged to have engaged has ended.[15]

The government has never even attempted to meet its burden and make that argument. Rather, it spends a good portion of its opposition brief objecting to the affidavit submitted by three law professors expert in the law of war pointing out that the government's continued detention of

---

[14]  In fairness, the government never disputes the analysis because it never addresses the fact that, when Congress confirmed the government's detention authority in 2012, it expressly refused to expand that authority beyond what then existed. The government simply ignores subsection 1021(d) of the legislation, not mentioning it once in its entire brief. That is not a unique way of dealing with an argument one cannot answer.

[15]  See e.g., *In re Guantánamo Bay Detainee Litig.*, No. 08-mc-442 (Case Management Order II, at II.A (ECF 940) (D.D.C. Nov. 6, 2008) ("The government bears the burden of proving by a preponderance of the evidence that the petitioner's detention is lawful."); Eric M. Freedman*, Making Habeas Work, A Legal History* 74 (2018) ("the burden [is] on the jailer to demonstrate a right to detain the subject, not on the subject to demonstrate a right to freedom.").

these men, after the end of the combat operations in which they are alleged to have participated, is unprecedented and finds no support in settled principles of the law of war.[16] As the professors state, the *Hamdi* opinion correctly sets the limits on the government's detention authority under longstanding, fundamental, and accepted law-of-war principles.

Petitioner will not spend time here responding to the government's arguments objecting to the experts' Affidavit. Suffice it to say, they have all been soundly rejected by the courts.[17] The more interesting and consequential question is: why has the government done nothing itself to demonstrate that the detention authority it claims is authorized by the international law of war? As pointed out, Congress directly incorporated the law of war into the government's detention authority under section 1021 of the NDAA; detentions under that section must conform to the law of war. The government therefore bears the burden in this habeas proceeding of demonstrating that the law of war authorizes it to continue detaining individuals allegedly involved in combat against U.S. and allied troops in the war in Afghanistan, now that that war has ended and only targeted strikes against Al-Qaeda and other terrorist groups continue.

The government could introduce its own expert affidavit countering the one introduced by petitioner in an attempt to demonstrate its lawful authority under the law of war. Or, even without an expert affidavit, it could make its own arguments on the basis of international treaties and conventions, and whatever other material it thinks relevant, that it has lawful authority under the law of war for these detentions. It has had no hesitation making such arguments in the past when

---

[16]  The Affidavit is attached as Appendix B to Petitioner's motion.

[17]  See, e.g., *Sunglory Maritime Ltd. v. PHI, Inc*. No. 15-896, 2016 WL 9414283 (E.D. La., March 15, 2016).

it believed it had authority under the law of war for its detentions.[18] But it has chosen not to do so here. It has simply objected to admission of the affidavit submitted by petitioner and made no substantive argument itself to justify its detentions under the law of war. The reason, we believe, is because it cannot in good faith make such an argument. Whatever the reason, by choosing not to address the international law of war at all, the government has failed to carry its burden of proof of the legality of petitioner's continued detention and has forfeited its right to prevail in this habeas proceeding.

## THIS CASE PRESENTS A QUINTESSENTIALLY LEGAL QUESTION THAT THE COURTS HAVE THE COMPETENCE AND THE DUTY TO DECIDE

The government's principal argument, relying primarily on the Circuit's decision in *Al-Alwi v. Trump*, is that the Court should defer to the political branches of the government on these questions affecting national security.[19] It repeats the Circuit's statement in *Al-Alwi*: "If the 'life of

---

[18]  See Brief for the Respondents, at pp.28-29, *Hamdi v. Rumsfeld*, No.03-6696, 2004 WL 724020, (S.Ct. March 29, 2004): "Indeed, even if Hamdi had not been armed when he surrendered, he still would qualify as an enemy combatant. It is settled under the law of war that the military's authority to detain individuals extends to non-combatants who enter the theater of battle with the enemy force, including clerks, laborers, and other 'civil[ian] persons engaged in military duty or in immediate connection with an army." Winthrop, *supra*, at 789; see William E.S. Flow, *Prisoners of War* 35 (1942) ('The American orders of 1863 provided that persons who accompany an army may be made prisoners of war.'); GPW art. 4(A)(4), 6 U.S.T. at 3320 ('[p]ersons who accompany the armed forces without actually being members thereof, such as civilian members of military aircraft crews, war correspondents, supply contractors, members of labour units or of services responsible for the welfare of the armed forces,' may be detained); Hague Convention of 1907, art. 3, 36 Stat. 2277 ('The armed forces of the belligerent parties may consist of combatants and non combatants [sic]' who in 'case of capture' may be detained as prisoners of war.); Ingrid Detter, *The Law of War* 135-136 (2d ed. 2000)."

[19]  Opposition Brief at 12-15. The government mischaracterizes the government's decision in *Al-Alwi*. The court in that case expressly adopted the *Hamdi* standard as the applicable standard. And rather than deferring to the government's broad claim that it was still at war, the court carefully examined the facts on the ground and found that the *Hamdi* standard was met: "Although United States troops are involved in combat with a different operation name, they nonetheless remain in active combat . . . Accordingly, the 'relevant conflict' has not ended. The Government's authority to detain Al-Alwi pursuant to the AUMF has not terminated." *Al-Alwi*, at 300.

a statute' conferring war powers on the Executive 'is defined by the existence of war, Congress leaves the determination of when a war is concluded to the usual political agencies of the Government.'"[20]

But those political agencies have spoken, and in the clearest possible operational terms. There is no dispute that the President of the United States has unequivocally declared an end to the war in which petitioner was allegedly involved. There is also no question that, despite the end of that war, the government continues to fight terrorism around the world through other more targeted means. Petitioner has always acknowledged that. And petitioner also acknowledges that those activities might be termed "hostilities" if the government takes the word out of context. But "hostilities" in the abstract is a broad and malleable term encompassing everything from frontline combat to air attacks, drone strikes, targeted killings, sabotage, cyber mischief, trade embargos, tariff barriers and other economic sanctions, and disinformation campaigns.

The relevant question is not whether the government continues to undertake generically hostile activities of one sort or another but whether the particular activities it is now undertaking to fight terrorism provide it with the lawful authority to continue detaining men who are not terrorists but were allegedly foot soldiers taken into custody long ago to prevent them from returning to combat against us in a war that is now over. That question, involving the legal requirements for depriving individuals of their liberty, is quintessentially a legal question that the judiciary has the responsibility to decide. While it might defer on the question whether the executive is engaging in activities that can be characterized as hostile in the broadest sense, it may not defer on the separate question whether those activities provide the executive with lawful authority to continue depriving individuals of their liberty. Deferring on the latter question would

---

[20] Opposition Brief at 12.

effectively delegate power to the executive to determine its own detention authority, turning habeas on its head and removing the judiciary as an independent check against unlawful executive detention.[21]

The Supreme Court has answered the question of what type of hostilities are required to justify continued detention of the men who were allegedly part of or supported armed forces aligned against us in the former war. They may be detained "if the record establishes that United Staes troops are still involved in active combat."[22]

Congress has expressly declined to expand the government's detention authority beyond that. The withdrawal of US troops from armed combat, therefore, terminated the government's authority to continue detaining these men.

---

[21]  As it does here, the government contended in *Hamdi* that, because of the tremendous security threat facing our nation, the Court should defer to the judgment of the executive on the individuals to be detained. The Court refused, pointing out that courts have a critical role to play where an individual's "interest in being free from physical detention" is at stake:

"While we accord the greatest respect and consideration to the judgments of military authorities in matters relating to the actual prosecution of a war . . . it does not infringe on the core role of the military for the courts to exercise their own time-honored and constitutionally mandated roles of reviewing and resolving claims like those presented here [involving the deprivation of liberty] . . ."

"[W]e necessarily reject the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts in such circumstances. . .. [E]ven the war power does not remove constitutional limitations safeguarding essential liberties."
*Hamdi*, at 535-37.

[22]  *Id.*   at   521; *Al-Alwi* at 300.

## THE GOVERNMENT IS ATTEMPTING TO REWRITE THE STATUTE TO CREATE ITS OWN DETENTION AUTHORITY

The government has the burden of demonstrating that Congress provided it with clear legal authority to continue detaining Petitioner.[23]

As discussed, the Supreme Court found that the congressionally passed AUMF provided the government with authority to detain persons who were allegedly part of or supported armed forces engaged in combat operations against United States troops, but that the AUMF provided that authority only so long as "United States troops are still involved in active combat." Continuing the detentions after the withdrawal of U.S. troops was not a necessary and appropriate use of the force authorized by the AUMF. Congress confirmed that detention authority in the 2012 NDAA and expressly refused to expand it.

The government argues that it may nevertheless continue to detain petitioner after the end of the armed conflict in Afghanistan and the withdrawal of U.S. troops because, it says, Petitioner was "part of or substantially supported al-Qaeda."[24] Even were that true, which it is not, it would not provide the government with the statutory authority to continue detaining Petitioner.[25] Indeed,

---

[23] *Ex parte Burford*, 3 Cranch 448, 452 (1806) (Marshall, C.J.) ("The question is, what authority has the jailor to detain him?").

[24] Opposition Brief at 1.

[25] It is important to understand that the government does not allege that Petitioner supported al-Qaeda by engaging in or supporting any terrorist activity; the government has never alleged that Petitioner ever engaged or participated in or supported any terrorist activity. Rather, according to the government, Petitioner supported al-Qaeda by allegedly fighting on the front lines or standing guard alongside members of al-Qaeda and Taliban forces in the armed combat then taking place in Afghanistan-- in other words, the government alleges that Petitioner was a combatant in that ongoing armed conflict. Those allegations do not convert Petitioner into a terrorist who may continue to be detained following the end of combat.

not only does the government lack statutory authority to continue detaining petitioner in these circumstances but, by doing so, it is violating the express requirements of the statute.

When it enacted the 2012 NDAA, Congress drew a clear distinction between those men detained for engaging in terrorist activity and those men, such as Mr. Qassim, held as "law-of-war" detainees to keep them from rejoining ongoing combat against U.S. troops. Terrorism is a criminal activity, and the end of combat does not prevent the government from charging, trying and continuing to incarcerate individuals who engaged in these criminal terrorist activities. In addition, in the 2012 legislation, Congress provided the government with authority to continue detaining another discrete category of individuals following the end of combat even without criminal charge, trial and conviction. Section 1022 of the 2012 NDAA provides the government with explicit authority to continue military detention of persons determined to be "Al-Qaeda terrorists," a term defined in the statute as someone determined  "(A) to be a member of, or part of, Al-Qaeda or an associated force that acts in coordination with or pursuant to the direction of Al-Qaeda; **and** (B) to have participated in the course of planning or carrying out an attack or attempted attack against the United States or its coalition partners."[26]

The government attempts to avoid the requirement of making that determination. But the government cannot rewrite the statute and create its own detention authority. The statute does not authorize the continued detention of someone the government alleges was "part of or supported al-Qaeda." It does authorize the continued detention of someone the government has determined **both** "(A) to be a member of, or part of, Al-Qaeda or an associated force that acts in coordination with or pursuant to the direction of Al-Qaeda; **and** (B) to have participated in the course of

---

[26]  Section 1022 (a) of 2012 NDAA (emphasis added). Set forth in Appendix A to Petitioner's motion.

planning or carrying out an attack or attempted attack against the United States or its coalition partners." *Id.* (emphasis added)].

The government has not made that determination with respect to Mr. Qassim. It cannot. It has no lawful authority to continue depriving him of his freedom.

## THIS COURT HAS THE DUTY TO EXERCISE ITS RESPONSIBILITY UNDER THE GREAT WRIT OF HABEAS CORPUS AND ORDER PETITIONER'S RELEASE FROM UNLAWFUL DETENTION

The courts have waited patiently for the Executive Branch to release petitioner and other cleared detainees from their imprisonment at Guantánamo. Most, if not, all agree that their release is long overdue. But recent events have made clear that the Executive, subject to political criticism for every action it takes, cannot be counted on to get that done. Both the Executive and Legislative Branches have other political priorities that, in their view, outweigh the liberty interests of the relatively few foreigners still stranded at Guantánamo. The rights and freedoms of these prisoners have been and will continue to be sacrificed to the political priorities of the political branches – unless the courts step in and act.

Recent events vividly demonstrate that. The government had found a country willing to accept petitioner and other cleared Guantánamo detainees. Plans were made for their transfer to that country, and then the government backed out at the last minute. News reports, first on NBC, then in most major media sources, told of the government's last-minute cancellation, with the plane already on the tarmac – of the transfer of 11 Guantánamo detains, including petitioner. As the New York Times reported, based on anonymous government sources, "the plan ran into opposition during a closed briefing in Congress."[27]

---

[27] Carol Rosenberg, *The U.S. Was Resettling Guantánamo Prisoners. The Hamas Attack Halted Those Plans*, NEW YORK TIMES, May 21, 2024.

It is possible that the members of Congress were able to convince State Department and other government officials that the transfers were unlawful. It is far more likely, however, that they expressed concern that the transfers would subject the administration and its allies in Congress to criticism jeopardizing other political priorities.

Members of the Executive and Legislative Branches, of course, are subject to political pressure, as they should be. But that is precisely why our Constitution does not make them primarily responsible for protecting the liberty interests of individuals. That job is too important to depend on political expediency. Our Constitution places responsibility for safeguarding those interests on the federal judiciary, which can review and protect those interest based solely on the facts and the law free from political pressure. The writ of habeas corpus is the primary vehicle under both the Common Law and our Constitution by which the judiciary exercises that responsibility. In the words of the Supreme Court, it is the "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action."[28] And, "there is no higher duty than to maintain it unimpaired."[29] As Justice Kennedy emphasized in *Boumediene*, the exercise by the courts of their responsibility under the writ of habeas corpus to order a petitioner's release from lawless detention is critical in maintaining the structure of separated powers established by our founders. It is not sufficient to stand by and wait until the political branches find it politically expedient to release someone unlawfully detained. Rather, "[t]he judicial branch

---

[28] *Harris v. Nelson*, 394 U.S. 286, 290-01 (1069).

[29] *Smith v. Bennett,* 365 U.S. 708, 713 (1961).

has not just the authority to 'protect[ ] the rights of the detained by calling the jailer to account, but *the 'duty' to do so* in order to uphold 'the essential design of the Constitution.'"[30]

Petitioner has moved this Court to order his release from unlawful detention under the writ of habeas corpus. He has pointed out that, when the wording of the relevant congressional statute is considered in conjunction with a Supreme Court decision in *Hamdi*, it is clear that the government's lawful authority to detain him expired three years ago with the withdrawal of United States troops from armed combat. The government has ignored those arguments and the statute upon which they are based. And no court has yet addressed them. Petitioner asks this Court to do so and to order his release from unlawful detention.

August 15, 2024                                        Respectfully submitted,

Anthony G. Amsterdam (D.C. No. 105528)          By: /s/ Thomas B. Wilner
New York University Law School                   Thomas B. Wilner (D.C. No. 173807)
245 Sullivan Street                              Neil H. Koslowe (D.C. No. 361792)
New York, NY 10012                               ALLEN OVERY SHEARMAN
Telephone: (631) 287-4395                        STERLING US LLP
agamsterdam68@gmail.com                          401 9th Street, N.W., Suite 800
                                                 Washington, DC 20004
*Of Counsel*                                     Telephone: (202) 352-7314
                                                 twilner@aoshearman.com
                                                 nkoslowe@potomaclaw.com

                                                 *Counsel for Khalid Ahmed Qassim*

---

[30] Eric M. Freedman, *Making Habeas Work: A Legal History* 108 (2018), quoting *Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (emphasis added).